1  GIBSON, DUNN & CRUTCHER LLP
   THEODORE J. BOUTROUS JR., SBN 132099
2     tboutrous@gibsondunn.com
   CATHERINE A. CONWAY, SBN 98366
3     cconway@gibsondunn.com
   JESSE A. CRIPPS, SBN 222285
4     jcripps@gibsondunn.com
   333 South Grand Avenue
5  Los Angeles, CA  90071-3197
   Telephone:     213.229.7000
6  Facsimile:     213.229.7520

7  MICHELE L. MARYOTT, SBN 191993
      mmaryott@gibsondunn.com
8  3161 Michelson Drive
   Irvine, CA 92612-4412
9  Telephone: 949.451.3800
   Facsimile: 949.451.4220

10
   Attorneys for Defendants CHEVRON CORPORATION
11 and CHEVRON U.S.A. INC.

12

13                 UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16 | Christopher McQueen, James O'Neal, and | CASE NO. 4:16-cv-02089-JSW
17 | Donnie Cummings on behalf of themselves
   | and others similarly situated and on behalf of | **DEFENDANTS CHEVRON CORPORATION**
18 | the general public, | **AND CHEVRON U.S.A. INC.'S**
   | | **OPPOSITION TO PLAINTIFFS' MOTION**
   |                           Plaintiffs, | **FOR CONDITIONAL CERTIFICATION**
19 | | **AND DISTRIBUTION OF JUDICIAL**
   |      v. | **NOTICE**
20 |
21 | Chevron Corporation, Chevron U.S.A., Inc., | Date:          September 16, 2016
   | and DOES 1-50, inclusive, | Time:          9:00 a.m.
22 | | Location:      Courtroom 5, 2nd Floor
   |                          Defendants.
23 | | Action Filed: April 20, 2016

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**

2

Page

3  I.      INTRODUCTION ................................................................................................. 1

4  I.      BACKGROUND FACTS .................................................................................... 2

5          A.     Overview of Chevron Corporation and Chevron U.S.A. Inc. ...................... 2

6          B.     Summary of Plaintiffs' Allegations and Declarations ................................. 3

7          C.     Plaintiffs' Contracts with Third-Party Contracting Companies ................... 4

8          D.     Plaintiffs' Motion for Conditional Certification ......................................... 6

9  II.     ARGUMENT ...................................................................................................... 6

10         A.     Legal Standard Governing Conditional Certification ................................. 6

11         B.     Plaintiffs Have Not Carried Their Burden of Proving that They Are Similarly
                  Situated to All Independent Contractor Drill Site and Well Site Managers in
12                the United States ...................................................................................... 7

13                1.     Plaintiffs Have Not Demonstrated that They and the Putative Collective
                         Members Were Subject to a "Single Decision, Policy, or Plan" ................... 9
14
                  2.     Plaintiffs Are Not Similarly Situated to All Well Site and Drill Site
15                       Managers Nationwide Based on Alleged Day Rate Payments ..................... 13

16         C.     The Court Should Not Authorize the Notice Requested by Plaintiffs ........................ 15

17 III.    CONCLUSION ................................................................................................... 15

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Akins v. Worley Catastrophe Response, LLC*,
2013 WL 1907486 (E.D. La. May 8, 2013) .................................................................14

*Bambgose v. Delta-T Grp., Inc.*,
684 F. Supp. 2d 660 (E.D. Pa. 2010) .......................................................................10

*Barrera v. US Airways Grp., Inc.*,
2013 WL 4654567 (D. Ariz. Aug. 30, 2013) ............................................................15

*Bonnette v. Cal. Health & Welfare Agency*,
704 F.2d 1465 (9th Cir. 1983).....................................................................................9

*Boucher v. Shaw*,
572 F.3d 1087 (9th Cir. 2009)......................................................................................8

*Colson v. Avnet, Inc.*,
687 F. Supp. 2d 914 (D. Ariz. 2010)..........................................7, 10, 12, 13, 15

*Donovan v. Sureway Cleaners*,
656 F.2d 1368 (9th Cir. 1981)....................................................................................11

*Espenscheid v. DirectSat USA, LLC*,
2010 WL 2330309 (W.D. Wis. June 7, 2010) ...........................................................15

*Fasanelli v. Heartland Brewery, Inc.*,
516 F. Supp. 2d 317 (S.D.N.Y. 2007).......................................................................15

*Gonzalez v. HCA, Inc.*,
2011 WL 3793651 (M.D. Tenn. Aug. 25, 2011) .........................................................9

*Grayson v. K Mart Corp*,
79 F.3d 1086 (11th Cir. 1996).....................................................................................6

*Guess v. U.S. Bancorp*,
2008 WL 544475 (N.D. Cal. Feb. 26, 2008)................................................................7

*Harris v. Vector Mktg. Corp.*,
716 F. Supp. 2d 835 (N.D. Cal. 2010) ................................................................12, 13

*Hoffman-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989)...................................................................................................15

*Hyman v. First Union Corp.*,
982 F. Supp. 1 (D.D.C. 1997) ......................................................................................7

Gibson, Dunn &
Crutcher LLP

ii

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152 (S.D.N.Y. 2014) ...................................................................................15

*Keen v. DXP Enters., Inc.*,
    2016 WL 3253895 (W.D. Tex. June 6, 2016).............................................................14

*Lewis v. Wells Fargo & Co.*,
    669 F. Supp. 2d 1124 (N.D. Cal. 2009) ....................................................................14

*Mateos v. Select Energy Servs., LLC*,
    977 F. Supp. 2d 640 (W.D. Tex. 2013) .....................................................................13

*McElmurry v. U.S. Bank Nat'l Ass'n*,
    2004 WL 1675925 (D. Or. July 27, 2004) ..................................................................3

*McPherson v. LEAM Drilling Sys., LLC*,
    2015 WL 1470554 (S.D. Tex. Mar. 30, 2015) ...........................................................13

*Sarviss v. Gen. Dynamics Info. Tech, Inc.*,
    663 F. Supp. 2d 883 (C.D. Cal. 2009)...............................................................2, 7, 9

*Severtson v. Phillips Beverage Co.*,
    137 F.R.D. 264 (D. Minn. 1991) .................................................................................8

*Sheffield v. Orius Corp.*,
    211 F.R.D. 411 (D. Or. 2002) ...................................................................................12

*Stubbs v. McDonald's Corp.*,
    227 F.R.D. 661 (D. Kan. Mar. 4, 2004) ...................................................................12

*Syed v. M-I, L.L.C.*,
    2014 WL 6685966 (E.D. Cal. Nov. 26, 2014) ..........................................................13

*Trinh v. JP Morgan Chase & Co.*,
    2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) .............................................................7

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009)....................................................................................10

*White v. Osmose, Inc.*,
    204 F. Supp. 2d 1309 (M.D. Ala. May 13, 2002) .......................................................8

*Wilson v. Atlas Oilfield Constr. Co., LLC*,
    2014 WL 4546954 (W.D. Tex. Step. 12, 2014).........................................................13

*Witteman v. Wis. Bell, Inc.*,
    2010 WL 446033 (W.D. Wis. Feb. 2, 2010)..............................................................15

*Wood v. TriVita, Inc.*,
    2009 WL 2046048 (D. Ariz. Jan. 22, 2009)..............................................................10

Gibson, Dunn &
Crutcher LLP

*Yaklin v. W-H Energy Servs., Inc.*,
    2008 WL 1989795 (S.D. Tex. May 2, 2008) ...............................................................................13

**Rules**

Fed. R. Evid. 403 ...............................................................................................................................3, 4

Fed. R. Evid. 602 ...............................................................................................................................3, 4

**Regulations**

29 C.F.R. § 541.100 ...............................................................................................................................14

29 C.F.R. § 541.200 ...............................................................................................................................14

29 C.F.R. § 541.601 ...............................................................................................................................14

29 C.F.R. § 541.602(a) ...........................................................................................................................14

29 C.F.R. § 541.604(b) .....................................................................................................................14, 15

Gibson, Dunn &
Crutcher LLP

# I.     INTRODUCTION

Named Plaintiffs ask this Court to conditionally certify a sweeping nationwide collective action comprised of "all persons who worked as Consultant Site Managers, and in other positions with similar job titles and/or job duties for Defendants, at any time from three years prior to the filing of this action," because "Plaintiffs intend to show they were misclassified and Chevron was their employer" and that they "did not receive overtime premiums."  But in their haste to seek conditional certification, named Plaintiffs offer nothing more than superficial evidence that they are "similarly situated."  And they gloss over a critical fact:  the well site and drill site managers they seek to represent worked for more than thirty different third-party contracting companies across multiple business units across at least ten different states while the named Plaintiffs worked *only* as well site managers and *only* for two of those companies.  Plaintiffs also fail to disclose another critical fact:  many of the well site and drill site managers furnished by those third-party contractors had their *own companies* through which they were doing business and contractually agreed to "be solely responsible and liable for the payment of salary and other compensation" to themselves.  *See, e.g.*, Maryott Decl. Ex. 2, at 12 (§ 5(d)).  Opt-in Plaintiff Charles Beaty, for example, provided drill site management services to Chevron U.S.A. Inc. ("Chevron U.S.A.") through his own company, Drilling Consultants, Inc., and was responsible for paying himself:  by contract, Beaty agreed to "properly classify" all of his employees, including himself, "and appropriately pay such employees applicable overtime if required."  *Id.* Ex. 2, at 55-56 (§ 5(d)).  As a result of these multi-layered arrangements to which Chevron U.S.A. and Chevron Corporation were not privy, Defendants do not know if each individual contractor was paid a day rate or by some other method.

In the few months since this action was filed, and without the benefit of any discovery, Defendants have uncovered only a handful of the contracts and arrangements among the would-be collective members and the companies for which they worked.  But already, those contracts have revealed stark differences among the individuals at issue:  some are subject to final and binding arbitration agreements; and some ran their own companies in which they agreed to indemnify the third-party contracting company's customers—*e.g.*, Chevron U.S.A.  *See id.* Ex. 2, at 5 (¶¶ 2, 7), 8-65.

Gibson, Dunn & Crutcher LLP

Given the utter paucity of information that Plaintiffs have offered, they cannot credibly claim that they and every well site and drill site manager nationwide are the "victims of a single [employer] decision, policy, or plan," as they must in order to obtain conditional certification. *Sarviss v. Gen. Dynamics Info. Tech, Inc.*, 663 F. Supp. 2d 883, 903 (C.D. Cal. 2009). Just by scratching the surface, Defendants have already confirmed that there are more complexities and differences between the members of the proposed collective than there are similarities. Plaintiffs have failed to meet the minimal requirements for conditional certification, and this Court should deny their motion.

## I.      BACKGROUND FACTS

### A.      Overview of Chevron Corporation and Chevron U.S.A. Inc.

Chevron Corporation is a multinational energy corporation headquartered in San Ramon, California. Maryott Decl. Ex. 1, at 2. Chevron U.S.A. is a wholly-owned subsidiary of Chevron Corporation. *Id.* Chevron U.S.A. explores, extracts, and produces crude oil, natural gas, and natural gas liquids. *Id.* Chevron U.S.A. also refines, markets, and distributes products, other than natural gas liquids, derived from petroleum. *Id.* There are five business units within Chevron North America Exploration and Production, a division of Chevron U.S.A.: Appalachian Mountain Business Unit ("AMBU"), Deepwater Exploration and Projects ("DWEP"), Gulf of Mexico Business Unit ("GOM"), Mid-Continent Business Unit ("MCBU"), and San Joaquin Valley Business Unit ("SJVBU"). *Id.* The nature of the operations at different sites within these different business units varies depending on the nature and permeability of the land formations at the sites, whether onshore or offshore. *Id.*

Both well site managers and drill site managers oversee the daily drilling and completion operations at Chevron U.S.A.'s oil and gas wells around the United States. *Id.* In managing daily operations, drill and well site managers are responsible for making hundreds of tactical decisions each day, troubleshooting, and coordinating directly with multiple vendors to ensure proper site operation and compliance with applicable safety and environmental regulations. *Id.* Ex. 1, at 3. While the job duties of drill site managers vary, drill site managers generally oversee the drilling and cementing of wells and the movement of rigs both on and off the well site. *Id.* Managing the drilling process requires different technical expertise and equipment than what well site managers require to

Gibson, Dunn & Crutcher LLP

2
Defendants' Opposition to Plaintiffs' Motion for Conditional Certification and Distribution of Judicial Notice – Case No. 4:16-cv-02089-JSW

oversee completions work. *Id.* The duties of well site managers also vary, but well site managers are generally responsible for managing well sites following the conclusion of drilling operations. *Id.* They oversee completion operations, which include the fracture treatment of all new drilling wells and the preparation of completion, testing, and workover procedures. *Id.* Within the GOM and DWEP business units, the well site managers oversee both drilling and completions work, in part because the nature of the operations differs from that of other units. *Id.*

Chevron U.S.A. contracts with more than thirty third-party companies that provide drilling, completion, workover, and other well-site and drill-site management services in the United States. *Id.* These companies provide well and drill site managers to numerous companies, not just to Chevron U.S.A. *Id.* In turn, those third-party companies often contract with subcontractors or other subcontracting companies to perform the services of well and drill site managers. *Id.*

The individuals that Plaintiffs seek to represent are the well site and drill site managers for these third-party companies and their subcontractors. ECF No. 46 at 1. These individuals worked at dozens of sites in more than ten states, ranging from California to Pennsylvania to the Gulf of Mexico. The proposed collective does not include any direct employees of Chevron. *Id.*

**B.    Summary of Plaintiffs' Allegations and Declarations**

The three named Plaintiffs worked as well site managers for two third-party contractors. ECF No. 46-5, at 3, 19, 23. None of them worked as a drill site manager. *Id.* Plaintiffs contend that they should have been classified as non-exempt employees of Chevron U.S.A. and Chevron Corporation because they were paid by the third-party contracting companies on a day-rate basis. SAC ¶ 54.

Plaintiffs filed seven declarations with their Motion, including three from the named Plaintiffs, large portions of which are identical, word-for-word.[1] ECF No. 46-5. In each boilerplate

---

[1] Plaintiffs' declarations fall far short of the admissible evidence required here. *McElmurry v. U.S. Bank Nat'l Ass'n*, 2004 WL 1675925, *10 (D. Or. July 27, 2004) (requiring "*admissible evidence*" establishing a "'reasonable basis'" for the claim (emphasis added)). Plaintiffs fail to lay any foundation establishing personal knowledge relating to putative collective action members in other business units, at other sites, or in other positions. *See* Fed. R. Evid. 403, 602. For example, each declaration states: "I understand that other well site and drill site managers . . . were also paid a day rate[.] I know this through my observations and interactions at the job site." ECF NO. 46-5 at ¶ 6. But the declarants do not specify what "observations" would make them privy to the manner by which any third-party contracting company paid any other

Gibson, Dunn & Crutcher LLP

3

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

declaration, the declarant represents that he performed work for "Chevron" through a third-party contracting company, that he was paid a "day rate," that he "was never guaranteed a set amount of pay on a weekly, biweekly, or monthly basis," and that he was "paid nothing for the days that I did not work." *Id.* (¶¶ 3-5). Six declarants state that they worked a set schedule of "14 days on and 14 days off," but Cummings states he had a varied schedule that was sometimes "14 days on and 14 days off" but could also be "5 days on and 2 days off" or "14 days on and 7 days off." *Id.* (¶ 9).

Four declarants admit that they worked for third-party contractor Eagle Consulting ("Eagle"), two admit that they worked for Cenergy International Services ("Cenergy"), and one admits that he worked for Total Energy Services ("Total Energy"). *Id.* (¶ 3). Yet none provides any information about his relationship or contractual obligations with Eagle, Cenergy, or Total Energy: there is no information about how they were hired, whether they continue to work for the companies, how those companies classified them (*e.g.*, as employees or independent contractors), or how much those companies paid them. Other than listing the names of a handful of other individuals whom Plaintiffs believe to have worked for Eagle, Cenergy, or Total Energy, Plaintiffs' declarations are also devoid of details about any other workers from these three companies. Plaintiffs submit no evidence about any other third-party contractors, and they submit no evidence whatsoever about the relationship between Chevron U.S.A. and other third-party contractors.

Each declarant refers to the Defendants collectively as "Chevron." *Id.* Plaintiffs do not submit any specific evidence about either Chevron U.S.A. or Chevron Corporation. *Id.* Five state that they worked for the business unit "MCBU," one states that he worked for "AMBU," and one states that he worked for the "SJVBU," but none has submitted any evidence about these business units or any other in the United States. *Id.* (¶ 7).

## C.   Plaintiffs' Contracts with Third-Party Contracting Companies

Perhaps most significantly, Plaintiffs have failed to disclose whether they were directly engaged by the third-party contractors as individuals or through other corporate entities. For

---

individual, nor do the declarants explain why or how that information was available "at the [unspecified] job site." Plaintiffs also fail to lay foundation for personal knowledge about either Chevron Corporation or Chevron U.S.A., and use the vague, combined term "Chevron" to make sweeping statements about Defendants throughout their declarations. *See* Fed. R. Evid. 403, 602.

Gibson, Dunn &
Crutcher LLP

example, Plaintiffs fail to disclose that Cummings and three other opt-ins from Cenergy had their *own* companies with Contractor Master Service Agreements with Cenergy.  In a 2014 agreement between Cenergy and Cummings Consulting LLC (signed by "CEO" Donnie Cummings), Cummings



Consulting agreed to "be solely responsible and liable for the payment of salary and other compensation to its employees[.]"  Maryott Decl. Ex. 2, at 12 (§ 5(d)).  In other words, as an employee of his *own* limited liability company, Cummings *determined how to pay himself*.  And in another 2014 agreement with Cenergy, opt-in Plaintiff Charles Beaty's company, Drilling Consultants, Inc., expressly agreed to "properly classify all of its employees"—including Beaty— "and appropriately pay such employees applicable overtime if required."  *Id.* at 52 (§ 5(d)).  It is the height of hypocrisy for someone who runs a company with its own payroll—and who contractually agreed to pay overtime to himself—to now claim that he was not paid overtime.

There is also a potpourri of other provisions in these various agreements that put these individuals on different footing.  Some, for example, contain binding arbitration agreements requiring these individuals to arbitrate any claims or disputes relating to their well- and drill-site services, *e.g.*, *id.* at 34 (§ 21), and some contain indemnity clauses, which obligate them to "indemnify and hold harmless . . . [Cenergy's] Customers" against any such claim, *e.g. id.* at 33 (§ 15).  Some of those agreements even require indemnity for any improper payroll practices used by Plaintiffs' own companies:  agreements in which the companies "agree[d] to defend, indemnify, and hold [Cenergy] and its Customers [*e.g.*, Chevron] harmless for any claims for overtime . . . as well as any claims for penalties or attorney fees, and costs, that might be associated therewith, pursuant to overtime issues."  *Id.* at 56 (§ 5(d)).  And some contain choice-of-law provisions electing to be governed by the laws of

Gibson, Dunn &
Crutcher LLP

5

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

1   various states.  *Id.* at 19 ("California"), 48 ("Texas").  These are just a few of many contractual

2   arrangements that Cenergy alone had with its contractors.  *Id.* at 5 (¶ 2).

3          But it does not stop there.  For example, based on a public record search, Plaintiff O'Neal

4   appears to have provided services to Eagle and Chevron U.S.A. through his own company, SKAI

5   Consulting, Inc.  *Id.* Ex. 3, at 66-71.  But Plaintiffs have failed to disclose the existence of this entity,

6   and Defendants expect that discovery will reveal many more complexities that preclude any finding

7   that the collective is similarly situated.

8   **D.    Plaintiffs' Motion for Conditional Certification**

9          Against this backdrop, Plaintiffs seek to serve "judicial notice" on a sprawling class of "all

10  persons who worked as Consultant Site Managers, and in other positions with similar job titles and/or

11  job duties for Defendants, at any time from three years prior to the filing of this action."  ECF No. 46

12  at 12.  Plaintiffs fail to clearly define "Consultant Site Managers" or to define "other positions with

13  similar job titles," much less establish how they are "similarly situated."  Plaintiffs further demand

14  that, in the short span of just ten days, the Court order Chevron Corporation and Chevron U.S.A. to

15  provide a class list with personal contact information—despite having no evidence whatsoever that

16  either company has such information for the drill site and well site managers of over thirty third-party

17  contracting companies.  *Id.*  Indeed, because these individuals were not Defendants' employees,

18  neither Defendant actively maintains this information or has it readily available.  Maryott Decl. Ex. 1,

19  at 3 (¶ 4).

## II.    ARGUMENT

**A.    Legal Standard Governing Conditional Certification**

22         Plaintiffs must establish that they are "similarly situated" to the individuals they seek to

23  represent before conditional certification and the creation of an opt-in class under section 216(b) can

24  be permitted.  *See Grayson v. K Mart Corp*, 79 F.3d 1086, 1096-97 (11th Cir. 1996).  Although the

25  FLSA does not expressly define the term "similarly situated," and the Ninth Circuit has not

26  definitively construed that term, district courts within California have generally used a "two-tiered

27  approach," requiring a court at this first stage to make an initial determination as to whether the

28  plaintiffs are similarly situated based upon the pleadings and affidavits submitted by the parties.  *See*

Gibson, Dunn &
Crutcher LLP

6

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

1    *Guess v. U.S. Bancorp*, 2008 WL 544475, at *3-4 (N.D. Cal. Feb. 26, 2008) (denying conditional

2    certification using the two-tier approach).

3            Under the two-tiered approach, Plaintiffs must first demonstrate that they are the "victims of a

4    single [employer] decision, policy, or plan." *Sarviss*, 663 F. Supp. 2d at 903.  This determination is

5    fact-specific.  *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, at *3 (S.D. Cal. Apr. 22, 2008).

6    In making this determination, courts look at several factors, including: (1) whether there is evidence

7    that the alleged activity was part of an institution-wide practice; (2) the extent of the similarities

8    among the members of the proposed collective action, in particular whether the members all are

9    challenging the same employment practice; and (3) the extent to which the members of the proposed

10   action will rely on common evidence.  *Id.* at *8 (citing *Hyman v. First Union Corp.*, 982 F. Supp. 1,

11   3-5 (D.D.C. 1997)).  "As a matter of both sound public policy and basic common sense, the mere

12   classification of a group of employees—even a large or nationwide group—as exempt under the

13   FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or

14   practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Colson*

15   *v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010).

16   **B.     Plaintiffs Have Not Carried Their Burden of Proving that They Are Similarly Situated
             to All Independent Contractor Drill Site and Well Site Managers in the United States**

17           Plaintiffs' superficial assessment that they are similarly situated to all well site and drill site

18   managers that provided services to Chevron U.S.A. through third-party contracting companies omits

19   the crucial fact that—even among the limited information before this Court—there are varying

20   relationships and contractual obligations that create major fissures among the collective.  Plaintiffs

21   omit the existence of these important relationships and contracts, many of which include terms that

22   condemn the overtime claims that Plaintiffs assert here.  The contracts underscore the lack of

23   similarity among well and drill site managers, the individualized assessments that would be

24   necessary, and the lack of common evidence to assess their claims.  *See Trinh*, 2008 WL 1860161, at

25   *3 (discussing factors for a similarly situated finding).

26           For example, Plaintiff Donnie Cummings, as the CEO of his own company, Cummings

27   Consulting LLC, contractually agreed that the company would "be solely responsible and liable for

28

Gibson, Dunn &
Crutcher LLP

7

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

the payment of salary and other compensation" to the employees of Cummings Consulting even though he now attempts to sue Chevron U.S.A. and Chevron Corporation for alleged unpaid overtime. Maryott Decl. Ex. 2, at 12 (§ 5(d)). This agreement puts Cummings at odds with his own proposed collective because Cummings Consulting and Cummings could face liability for unpaid wages as an employer. *See Boucher v. Shaw*, 572 F.3d 1087, 1090-91 (9th Cir. 2009) (holding that individuals can be held liable for unpaid wages under the FLSA's expansive definition of employer). This is an insurmountable conflict of interest. *See White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. May 13, 2002) (finding "an inherent conflict of interest between two groups" where "foremen may be held individually responsible for the potential claims of crew men"). Moreover, Cummings Consulting agreed to "indemnify and hold harmless" Cenergy's customers (*e.g.*, Chevron U.S.A.) "from and against any loss, cost, claim, obligation to indemnify another, suit judgment, award or damage (including reasonable attorney's fees and costs)" for any claims arising out of any injury to Cummings, Maryott Decl. Ex. 2, at 17 (§ 15), which at a minimum severely curtails any recovery that Cummings could hope to have in this lawsuit. At worst, it is fatal to the merits of Cummings' individual claims, begging the question of how this case could proceed more broadly as a collective action. *See Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) ("[T]his court feels a responsibility to assure that there is some factual basis for plaintiffs' claims of class-wide discrimination before judicial approval of the sending of notice is granted."). In any event, this is not the proper forum for whatever remains of Cummings' dispute because he agreed to mediate and arbitrate "[a]ll claims, disputes or controversies arising out of, in connection with or in relation to" his agreement with Cenergy and the services that he provided to Cenergy's customers.[2] Maryott Decl. Ex. 2, at 18 (§ 21). Cummings' contract with Cenergy is just one example of the various relationships and contractual terms that put the collective action members on very different footing.

Although the Court need not consider whether the evidence submitted by Plaintiffs meets the standard for conditional certification because Plaintiffs cannot prove as much in light of the contracts

---

[2] Defendants only this week learned of the arbitration agreements in some third-party contracts and reserve all rights to move to compel Cummings—and others like him—to arbitrate their claims.

discussed above, Plaintiffs' argument that they are similarly situated to all proposed collective action members should be analyzed against Plaintiffs' two theories of liability. The first theory is that Plaintiffs and the putative collective action members were misclassified as independent contractors. Plaintiffs *must* demonstrate this separately as to both Chevron Corporation and Chevron U.S.A. to proceed because only an employer can be liable for damages under the FLSA.[3] *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). If Plaintiffs can overcome that threshold question, they will then need to prove their second theory: that they and the rest of the collective action members should have been classified as *non-exempt* employees who are entitled to overtime because they were paid based on a day rate. Each theory is addressed in turn below.

> **1.     Plaintiffs Have Not Demonstrated that They and the Putative Collective Members Were Subject to a "Single Decision, Policy, or Plan"**

Plaintiffs' contention that Chevron U.S.A. and Chevron Corporation classified all well and drill site managers in the putative collective as "independent contractors or consultants," ECF 46 at 1, falls well short of establishing that all such managers were "the victims of a single decision, policy, or plan" justifying conditional certification. *Sarviss*, 663 F. Supp. 2d at 903.

First, while plaintiffs contend that "Consultant Site Managers have been universally classified as independent contractors," ECF No. 46 at 8, they have not offered any *evidence* that such a uniform policy exists. Plaintiffs' unsupported contention of a uniform classification policy ignores the complexity of the circumstances here. There are more than *thirty* third-party contracting companies that provide well- and drill-site services for Chevron U.S.A. Maryott Decl. Ex. 1, at 3 (¶ 4). Plaintiffs and their declarants collectively have worked for just *three* of these companies—Eagle, Cenergy and Total Energy. *See* ECF No. 46-5. And all Plaintiffs and their declarants say about these third-party companies is that they (or more accurately, the companies that they themselves ran) received payments from them. Plaintiffs have not proffered any evidence about their relationship with these entities, including how these entities classified them (if they did at all), who or what

---

[3] Plaintiffs fail to distinguish between Chevron U.S.A. and Chevron Corporation but are required to separately demonstrate why each or either entity should be deemed an employer. *See, e.g., Gonzalez v. HCA, Inc.*, 2011 WL 3793651, at *14 (M.D. Tenn. Aug. 25, 2011) (denying motion for conditional certification for parent corporation where plaintiffs failed to show how the parent corporation could be deemed their employer).

Gibson, Dunn &
Crutcher LLP

1    entities actually contracted with the third-party companies (including Plaintiffs' own companies), or

2    the nature of the contractual arrangements to which they were subject, nor have they proffered any

3    evidence about the relationship between these entities and Defendants.  In light of these variables, it

4    is untenable for Plaintiffs to contend that their factually light, cookie-cutter declarations constitute

5    sufficient evidence to support any finding that they are "similarly situated" to all members of the

6    putative collective.

7            Second, the mere classification of workers as independent contractors rather than employees

8    does not justify conditional certification.  That is because the practice of engaging workers as non-

9    employee contractors is not, in and of itself, unlawful, and thus cannot be the "nexus" that "binds

10   together the various claims of the class members."  *See Colson*, 687 F. Supp. 2d at 925, 927.  It is for

11   this same reason that courts in this circuit have rejected the notion that a uniform practice of

12   classifying workers as exempt may serve as a policy justifying conditional certification.  *Id.* at 927

13   ("[M]ere classification of a group of employees as exempt does not automatically dictate, as a matter

14   of law, whether collective action notification is appropriate."); *Wood v. TriVita, Inc.*, 2009 WL

15   2046048, at *5 (D. Ariz. Jan. 22, 2009) (rejecting argument "that the Defendants' alleged decision to

16   classify all non-management employees as exempt constitutes a single policy or plan").  To establish

17   liability here, each well and drill site manager must prove that he or she was *misclassified* as an

18   independent contractor.  Focusing on an allegedly "uniform [classification] policy alone does little to

19   further the . . . assessment of the relationship between individual and common issues" necessary to

20   that determination.  *Colson*, 687 F. Supp. 2d at 927 (quoting *Vinole v. Countrywide Home Loans,*

21   *Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)).

22           Accordingly, rather than simply alleging the universal classification of well and drill site

23   managers as independent contractors, Plaintiffs must present evidence that they and the proposed

24   collective are "similarly situated with respect to the analysis [the court] would engage in to determine

25   whether the workers are employees or independent contractors."  *Bambgose v. Delta-T Grp., Inc.*,

26   684 F. Supp. 2d 660, 668 (E.D. Pa. 2010) (denying motion for conditional certification).  Courts in

27   the Ninth Circuit apply the "economic reality" test for this purpose, weighing the following factors:

28

Gibson, Dunn &
Crutcher LLP

10

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981).  "Neither the presence nor the absence of any individual factor is determinative."  *Id.*

Other than boilerplate statements that they were provided with certain equipment and unspecified training by "Chevron," Plaintiffs present no evidence as to whether collective members across the country are similarly situated with respect to each of these factors—issues the Court must examine in order to determine whether any well site or drill site manager was indeed misclassified. Nor could they, as Plaintiffs and their declarants do not purport to have any knowledge of the working conditions at the dozens of sites around the country where they never worked.  *See* ECF No. 46-5.  And this Court will need to consider the individual contractual relationships between well site and drill site managers and third-party contracting companies when analyzing whether a valid independent contractor relationship exists.  For example, whether any well site manager agreed, like Cummings, to retain sole control over "the means, manner and method by which the Services shall be performed" and was able to "perform professional services for other customers," Maryott Decl. Ex. 2, at 11-12, will weigh against a finding that Cummings was misclassified.

Moreover, Plaintiffs are three former well site managers who performed work for just two of Chevron U.S.A.'s business units in a handful of locations, yet they seek to represent all "Consultant Site Managers" nationwide—a group that consists of well site managers, drill site managers, and "other positions with similar job titles and/or job duties for Defendants."  ECF No. 46 at 12.  But much like the rest of their Motion, Plaintiffs have glossed over the details on how they can be "similarly situated" to a loosely defined nationwide group that they have lumped together as "Consultant Site Managers."  Absent from Plaintiffs' Motion is any description of the job duties of well site managers, drill site managers, or "other positions with similar job titles and/or job duties," or any information regarding Chevron U.S.A.'s business units or its well and drill site locations across the United States.  *See generally* ECF Nos. 46, 46-5.  Plaintiffs argue that "Chevron consistently set

Gibson, Dunn & Crutcher LLP

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

Consultant Site Managers' job duties," but they never attempt to describe those duties. *Id*. at 4. Given the lack of evidence, they have not met even the initial burden to show that they are similarly situated to or have standing to represent any drill site managers (none of the named Plaintiffs performed this job) or any well site managers outside of the business units or locations where they performed work. *See Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 665 (D. Kan. Mar. 4, 2004) (finding that the second assistant manager plaintiff did not have standing to represent a broad class including first assistant managers). This is particularly important here, where Plaintiffs have broadly asserted that the sweeping group of "Consultant Site Managers" nationwide have been misclassified, because "whether an employee has been exempted under the FLSA necessitates a fact specific inquiry." *Colson*, 687 F. Supp. 2d at 927-28 (denying conditional certification where plaintiff's declaration failed to establish that all putative class members "performed similar tasks"); *see also Sheffield v. Orius Corp.*, 211 F.R.D. 411, 417 (D. Or. 2002) (denying conditional certification where plaintiffs' "affidavits and declarations represent[ed] a much smaller set of injured workers" than the proposed collective consisting of workers who were "employed by numerous" employers, "held a variety of job classifications, and did not work at the same job site").

Plaintiffs' reliance on *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 841 (N.D. Cal. 2010) is misplaced. ECF No. 46 at 8. *Harris* did not hold that the uniform classification of workers as independent contractors, without more, constitutes a "single decision, policy, or plan" justifying conditional certification. Rather, the court emphasized that certification was appropriate because the parties *did not dispute* that the putative plaintiffs all had "*the same duties*." *Id.* at 840-41 (emphasis added). Nor does *Harris* support the sweeping proposition that Plaintiffs can be similarly situated to individuals who work at different sites across the nation, who are employed by dozens of different companies, and for whom Plaintiffs have not submitted any evidence. The plaintiff in *Harris* sought to represent independent contractors in California—not nationwide—and, importantly, the members of the proposed collective action performed work as independent contractors for a *single* defendant. *Id.* at 841. That is not the case here.

Plaintiffs also contend that "numerous other district courts have granted conditional certification to oilfield workers in cases like this one." ECF No. 46 at 7-8. But the two cases they

Gibson, Dunn &
Crutcher LLP

cite demonstrate why conditional certification is *not* appropriate here.  In *Syed v. M-I, L.L.C.*, the Court granted conditional certification of a collective action class of mud engineers who worked for a *single* company.  *See* 2014 WL 6685966, at *1 (E.D. Cal. Nov. 26, 2014).  And in *McPherson v. LEAM Drilling Sys., LLC*, the collective action was limited to employees of just *two* companies.[4]  *See* 2015 WL 1470554, at *1 (S.D. Tex. Mar. 30, 2015).  Plaintiffs do not cite *any* case that supports the conditional certification of the expansive collective proposed in this case.

> ### 2.   Plaintiffs Are Not Similarly Situated to All Well Site and Drill Site Managers Nationwide Based on Alleged Day Rate Payments

Plaintiffs contend that all site managers are similarly situated because they were all paid a day rate.  Their sweeping contention fails to support certification for two independent reasons.

First, Plaintiffs have not proffered any evidence supporting their contention that all members of the putative collective were paid a day rate.  Indeed, the declarations Plaintiffs submitted in support of their motion say *nothing* about how the overwhelming majority of well site and drill site managers were paid, whether by day rate or otherwise.  *See* ECF No. 46-5.  Plaintiffs' "day rate" argument fails for this reason alone.  *Colson*, 687 F. Supp. 2d at 928 ("To satisfy [their] burden, plaintiff[s] must provide the court with 'detailed allegations supported by' affidavits," and "those affidavits must constitute admissible evidence.").

Second, Plaintiffs are wrong that "[p]ayment of a day rate will be significant on the merits of [their] claims."  ECF No. 46, at 9.  A plaintiff cannot satisfy the "similarly situated" requirement by demonstrating that she is similarly situated to the putative collective in a way that is not highly relevant to the resolution of her claims.  Rather, the FLSA requires a "legal nexus [that] binds together the various claims of the class members."  *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).  A similarity that is not apt to drive the resolution of the collective

---

[4]   Likewise, none of the cases described in *McPherson* conditionally certify a nationwide class of workers for a multitude of companies.  *See, e.g., Wilson v. Atlas Oilfield Constr. Co., LLC*, 2014 WL 4546954 (W.D. Tex. Step. 12, 2014) (conditionally certifying collective action of employees who worked for single company); *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640 (W.D. Tex. 2013) (same, as to seventy safety employees at a single company); *Yaklin v. W-H Energy Servs., Inc.*, 2008 WL 1989795 (S.D. Tex. May 2, 2008) (same as to single facility).

Gibson, Dunn &
Crutcher LLP

13

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

claims is insufficient to justify conditional certification.  Despite Plaintiffs' assertion to the contrary, the fact that well and drill site managers allegedly earned a day rate, without more, is irrelevant.

Plaintiffs argue that whether drill and well site managers earned a day rate matters because, they contend, a "day rate *may* not satisfy the FLSA's salary basis test."[5]  ECF No. 46, at 9 (emphasis added).  The Department of Labor regulations implementing the FLSA provide that an employee must be paid on a "salary basis" in order to qualify for one of the white collar exemptions to the overtime requirement.  29 C.F.R. §§ 541.100, 541.200, 541.601.  But the regulations do not disqualify an employee from the overtime exemptions simply because the employee is paid a day rate.  On the contrary, the regulations expressly permit the use of a day rate for exempt employees:

> An exempt employee's earnings may be computed on an hourly, *a daily or a shift basis, without losing the exemption or violating the salary basis requirement*, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

29 C.F.R. § 541.604(b) (emphasis added).[6]  A pre-determined day rate that is regularly paid to well and drill site managers regardless of the quality or quantity of work that they perform in a day thus plainly satisfies the salary basis test.  As such, whether well and drill site managers earn a day rate, without more, will have little bearing on the resolution of the class overtime claim.  The more relevant question under the governing regulations is whether they earned a fixed amount each week.  *See* 29 C.F.R. § 541.604(b).  Plaintiffs have not proffered any evidence to answer this question with regard to the bulk of their proposed class.  Moreover, six out of seven declarants admitted to working schedules of fourteen days on and fourteen days off, meaning that their pay over any four-week

---

[5]  Plaintiffs' attempted analogy to *Keen v. DXP Enters., Inc.* falls flat.  In *Keen*, a single-plaintiff case, the "Plaintiff's pay *varied considerably from week to week*," and his rate of pay varied depending on his job duties.  2016 WL 3253895, at *1 (W.D. Tex. June 6, 2016) (emphasis added).  In contrast, six of seven declarants here admit to working fixed schedules of fourteen days on / fourteen days off, establishing that their pay over any four-week period did not vary.

[6]  *See also Akins v. Worley Catastrophe Response, LLC*, 2013 WL 1907486, at *4 (E.D. La. May 8, 2013) ("[M]erely because an employee's earnings are computed on a daily rate basis does not mean that the employee is not paid on a salary basis[.]"); s*ee also* 29 C.F.R. § 541.602(a) ("salary basis"  applies to those who "regularly receive[] each pay period on a weekly, *or less frequent basis, a predetermined amount*" not subject to reduction because of variations in the "quality *or quantity of the work performed*") (emphasis added).

Gibson, Dunn & Crutcher LLP

period *did not vary*.  ECF No. 46-5.  Plaintiffs have thus failed to meet their burden of demonstrating that they and the proposed class are similarly situated in any meaningful way—*i.e.*, one that "binds together the various claims of the class members."  *Colson*, 687 F. Supp. 2d at 925.

**C.     The Court Should Not Authorize the Notice Requested by Plaintiffs**

Because Plaintiffs failed to demonstrate that they are similarly situated to all well site and drill site managers nationwide, the Court should deny Plaintiffs' request to distribute a classwide "judicial notice."  But if the Court decides to "facilitate[e] notice to potential plaintiffs," then it should consider the following examples of Defendants' objections because it must ensure that the notice is an "accurate and timely notice concerning the pendency of the collection action, so that [potential opt-in plaintiffs] can make informed decisions about whether to participate," *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989):

- The heading and footer improperly imply judicial endorsement of this action because they state that the notice is "court authorized." *Id*. at 174.
- The proposed notice lacks any information regarding plaintiffs' counsel's fees.  *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007).
- The proposed notice does not include the required description of the legal effect of joining this case, including that opt-in plaintiffs will be required to participate in discovery, *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 169 (S.D.N.Y. 2014), and could be liable for costs if Defendants prevail, *Barrera v. US Airways Grp., Inc.*, 2013 WL 4654567, at *9 (D. Ariz. Aug. 30, 2013).
- Plaintiffs' proposed reminder notice is both unnecessary and potentially improper.  *Witteman v. Wis. Bell, Inc.*, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010).
- Plaintiffs' proposal to send notice via email is objectionable "because of the potential for recipients to modify and re-distribute email messages."  *Espenscheid v. DirectSat USA, LLC*, 2010 WL 2330309, *14 (W.D. Wis. June 7, 2010).

These are just a few of the problems with Plaintiffs' proposed notice, which does not meet the minimum standards under *Hoffman-La Roche*.  In the event that the Court orders notice, then Defendants request that the Court direct the parties to meet and confer regarding the contents of any notice as well as the process for distributing the notice.

### III.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion for Conditional Certification in all respects.

Gibson, Dunn & Crutcher LLP

15

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND DISTRIBUTION OF JUDICIAL NOTICE – CASE NO. 4:16-CV-02089-JSW

1    Dated:  August 26, 2016

2

3                                                      GIBSON, DUNN & CRUTCHER LLP

4                                             By:   */s/ Catherine A. Conway*

5                                                        Catherine A. Conway

6                               Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28