GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., SBN 132099
 tboutrous@gibsondunn.com
CATHERINE A. CONWAY, SBN 98366
 cconway@gibsondunn.com
JESSE A. CRIPPS, SBN 222285
 jcripps@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

MICHELE L. MARYOTT, SBN 191993
 mmaryott@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Defendants CHEVRON CORPORATION
and CHEVRON U.S.A. INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher McQueen, James O'Neal, and Donnie Cummings on behalf of themselves and others similarly situated and on behalf of the general public,<br><br>         Plaintiffs,<br><br>   v.<br><br>Chevron Corporation, Chevron U.S.A., Inc., and DOES 1-50, inclusive,<br><br>         Defendants. | CASE NO. 4:16-cv-02089-JSW<br><br>**DECLARATION OF MICHELE L. MARYOTT IN SUPPORT OF DEFENDANTS CHEVRON CORPORATION AND CHEVRON U.S.A. INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND DISTRIBUTION OF JUDICIAL NOTICE**<br><br>Date:         September 16, 2016<br>Time:        9:00 a.m.<br>Location:    Courtroom 5, 2nd Floor<br><br>Action Filed: April 20, 2016 |

1      I, Michele L. Maryott, declare as follows:

2      1.     I am an attorney admitted to practice law before this Court. I am a partner in the law

3 firm of Gibson, Dunn & Crutcher LLP, and I am one of the attorneys responsible for the

4 representation of Defendants Chevron U.S.A. Inc. and Chevron Corporation (collectively,

5 Defendants) in the above-captioned action. I submit this declaration in support of Defendants'

6 Opposition to Plaintiffs' Motion for Conditional Certification and Distribution of Judicial Notice.

7 The following facts are within my personal knowledge and, if called and sworn as a witness, I would

8 testify competently to these facts.

9      2.     Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of Scott

10 Nash, the Drilling and Completions Operations Manager for Chevron U.S.A. Inc., dated August 26,

11 2016.

12      3.     Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Eydie

13 Eschete, the Operations Manager of Cenergy International Services, LLC, dated August 26, 2016.

14      4.     Attached hereto as **Exhibit 3** is a true and correct copy of various public-record filings

15 of Skai Consulting, Inc. with the Texas Secretary of State. Gibson Dunn attorneys, at my direction,

16 obtained these public-record filings by downloading them from the public website of the Texas

17 Secretary of State.

18      I declare under penalty of perjury under the laws of the United States and the State of

19 California that the foregoing is true and correct, and that I executed this Declaration on the 26th day

20 of August, 2016 in San Juan Capistrano, California.

21

22                                Michele L. Maryott

23

24

25

26

27

28

1

# EXHIBIT 1

## DECLARATION OF SCOTT NASH

I, Scott Nash, certify and declare as follows:

1.      I am currently employed as a Drilling and Completions Operations Manager for Chevron U.S.A. Inc. ("Chevron U.S.A.").  I have worked for Chevron U.S.A. since 1998, and have held various other positions throughout my eighteen-year tenure with the Company, including Drilling Engineer, Drill Site Manager, Drilling Superintendent, and Drilling Engineering Advisor.  In my position as Drilling and Completion Operations Manager for Chevron U.S.A., I am familiar with and have personal knowledge of Chevron U.S.A.'s corporate organization, drill and well site operations, various contracts for the provision of well-site and drill-site services at the Company's well sites around the United States, contracting practices, invoicing procedures and data, and general business affairs.  Through my work at Chevron U.S.A., I have access to and personal knowledge of the matters and information set forth in this declaration, and, if called upon to testify thereto, can and would competently do so.  The data from which the information set forth in this declaration was determined is maintained in the regular course of Chevron U.S.A.'s business.

2.      Chevron Corporation is a multinational energy corporation headquartered in San Ramon, California.  Chevron U.S.A. is a wholly-owned subsidiary of Chevron Corporation.  Chevron U.S.A. explores, extracts, and produces crude oil, natural gas, and natural gas liquids.  Chevron U.S.A. also refines, markets and distributes products, other than natural gas liquids, derived from petroleum.  There are five business units within Chevron North America Exploration and Production, a division of Chevron U.S.A.  They are Appalachian Mountain Business Unit ("AMBU"), Deepwater Exploration and Projects ("DWEP"), Gulf of Mexico Business Unit ("GOM"), Mid-Continent Business Unit ("MCBU"), and San Joaquin Valley Business Unit ("SJVBU").  The nature of the operations at different sites within these different business units varies depending on the nature and permeability of the land formations at the sites, whether onshore or offshore.

3.      Drill Site Managers and Well Site Managers oversee the daily drilling and completion operations at Chevron's oil and gas wells around the United States.  In managing daily operations, Drill Site Managers and Well Site Managers are responsible for making hundreds of tactical decisions each day, troubleshooting, and coordinating directly with multiple vendors to ensure proper

Exhibit 1 - Page 2

site operation and compliance with applicable safety and environmental regulations.  While the job duties of Drill Site Managers vary, Drill Site Managers generally oversee the drilling and cementing of wells and the movement of rigs both on and off the well site.  Managing the drilling process requires a different technical expertise and different equipment than what Well Site Managers require to oversee completions work.  The duties of Well Site Managers also vary, but Well Site Managers are generally responsible for managing well sites following the conclusion of drilling operations.  Well Site Managers oversee completion operations, which include the fracture treatment of all new drilling wells and the preparation of completion, testing, and workover procedures.  Within the GOM and DWEP business units, the Well Site Managers oversee both drilling and completions work, in part because the nature of the operations differs due to differences in land formations.  Drill Site Managers and Well Site Managers may work a variety of different work schedules.   For example, some work fourteen days on and fourteen days off, while others work five days on and two days off.

4.     Based on my review of Company records, Chevron U.S.A. contracts with more than thirty, third-party companies that provide drilling, completion, workover, and other well-site and drill-site services in the United States.  I have observed in my position as Drilling and Completions Operations Manager that these third-party contracting companies provide Well Site Managers and Drill Site Managers to numerous companies, not just to Chevron U.S.A.  In turn, those third-party contracting companies often contract with subcontractors or other subcontracting companies to perform the services of Well Site Managers and Drill Site Managers.  Because the independent contractor Well Site Managers and Drill Site Managers are not employees of Chevron U.S.A. or Chevron Corporation, neither Chevron U.S.A. nor Chevron Corporation actively maintains, or has readily available, personal contact information for consultants.

5.     In the course of managing drill sites and well sites, Well Site Managers and Drill Site Managers make frequent tactical decisions concerning site operations.  Well Site Managers and Drill Site Managers are expected to and do exercise their judgment and discretion in carrying out their responsibilities.  In some cases, this includes determining when to employ various resources to inform their analyses and problem-solving.

///

2

Exhibit 1 - Page 3

1    I declare under penalty of perjury under the laws of the United States that the foregoing is true

2    and correct, and that this declaration was executed on this 26th day of August, 2016, in Houston,

3    Texas.

4

5                                            _/S/ Scott Nash_____

6                                                        Scott Nash

7

8

9

10                                    **Attestation**

11    I hereby attest that I have on file all holographic signatures corresponding to any signatures

12    indicated by a conformed signature (/S/) within this e-filed document.

13

14

15                                          _/S/ Michele L. Maryott_____

16                                            Michele L. Maryott

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

## DECLARATION OF EYDIE ESCHETE

I, Eydie Eschete, certify and declare as follows:

1.      I am currently employed as the Operations Manager of Cenergy International Services, LLC ("Cenergy").  Through my work as Operations Manager, I have gained personal knowledge of Cenergy's contracting policies, contracts with independent contractors and clients, invoicing procedures, and general business operations.  Unless otherwise stated, the following facts are within my personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      Cenergy engages in the business of furnishing professional service companies and professional service personnel to its customers in the petroleum exploration and production industry. As part of that business, Cenergy has furnished professional service companies and personnel to its client Chevron U.S.A. Inc. ("Chevron") for the purpose of performing services as Well Site Managers and Drill Site Managers (collectively, "Site Managers") at Chevron sites.  Chevron is just one of the many energy companies to which Cenergy furnishes contractors who manage well and drill sites.  Certain of the Site Managers that Cenergy has furnished to Chevron have engaged with Cenergy as independent contractors.  These Site Managers are corporations or limited liability companies ("LLCs"), though Cenergy has contracted with some Site Managers in their capacities as unincorporated individuals.

3.      Cummings Consulting LLC ("Cummings Consulting") and Cenergy entered into a contractor master service agreement, dated January 14, 2014, in which Cummings Consulting agreed to provide professional services to Cenergy's customers.  Donnie Cummings signed the agreement on behalf of Cummings Consulting as the company's "CEO."  As an employee of Cummings Consulting, Donnie Cummings provided services to Chevron as a Well Site Manager under this Agreement.  I am familiar with and have access to this Agreement in my capacity as Operations Manager.  A true and correct copy of this January 14, 2014, Agreement is attached hereto as Exhibit A.

4.      A. Ayon Consulting, LLC ("Ayon Consulting") and Cenergy entered into a contractor master service agreement, dated January 6, 2014, in which Ayon Consulting agreed to provide

Exhibit 2 - Page 5

professional services to Cenergy's customers.  Arturo Ayon signed the Agreement on behalf of Ayon Consulting as an "authorized officer or other representative" of the company.  As an employee of Ayon Consulting, Arturo Ayon provided services to Chevron as a Well Site Manager under this Agreement.  I am familiar with and have access to this Agreement in my capacity as Operations Manager.  A true and correct copy of this January 6, 2014, Agreement is attached hereto as <u>Exhibit B</u>.

5.      Christopher Jones DSM, LLC ("Jones DSM") and Cenergy entered into a consultant agreement, dated November 1, 2013, in which Jones DSM agreed to provide professional services as a Drill Site Manager to Cenergy's customers.  Christopher Jones signed the Agreement on behalf of Jones DSM as an "authorized officer or other representative" of the company.  As an employee of Jones DSM, Christopher Jones provided services to Chevron as a Drill Site Manager under this Agreement.  I am familiar with and have access to this Agreement in my capacity as Operations Manager.  A true and correct copy of this November 1, 2013 Agreement is attached hereto as <u>Exhibit C</u>.

6.      Drilling Consultants, Inc. ("Drilling Consultants") and Cenergy entered into a contractor master service agreement, dated April 28, 2014, in which Drilling Consultants agreed to provide professional services to Cenergy's customers.  Charles Patrick Beaty signed the agreement on behalf of Drilling Consultants as an "authorized officer or other representative" of the company.  As an employee of Drilling Consultants, Charles Patrick Beaty provided services to Chevron as a Drill Site Manager under this Agreement.  I am familiar with and have access to this Agreement in my capacity as Operations Manager.  A true and correct copy of this April 28, 2014, Agreement is attached hereto as <u>Exhibit D</u>.

7.      In the contracting agreements described in paragraphs 3 through 7 above, each of the Site Managers ("Contractors") agreed to perform their services "in accordance with state, federal and local laws, rules and regulations."  More specifically, each Contractor agreed to "be solely responsible and liable for the payment of salary and other compensation to its employees."  Charles Beaty's company Drilling Consultants, for example, expressly agreed to "properly classify all of its employees, and appropriately pay such employees applicable overtime if required."  Each Contractor further agreed to submit any claim or dispute relating to the provision of services under the

2

Exhibit 2 - Page 6

1   agreement to mandatory and binding arbitration in the event they could not be settled through

2   mediation.  The agreements also contain indemnity clauses.  Cummings Consulting, for example

3   agreed that it "shall be liable for any claim arising out of any . . . injury . . . to Contractor employees

4   . . . [and] to defend, protect, indemnify and hold harmless . . . [Cenergy's] Customers from and

5   against any loss, cost, claim, obligation to indemnify another, suit, judgment, award, or damage

6   (including reasonable attorney's fees and costs) on account of such illness, injury, death, loss or

7   damage."  And Drilling Consultants specifically agreed to "defend, indemnify, and hold [Cenergy]

8   and its Customers harmless for any claims for overtime from Contractor's employees or personnel."

9   The agreements also provide that they are "non-exclusive."  The November 1, 2013, agreement with

10  Jones DSM, for example, states that Jones DSM "may perform professional services for other

11  customers and clients."

12          I declare under penalty of perjury under the laws of the United States that the foregoing is true

13  and correct, and that this declaration was executed on this 26th day of August, 2016, in Houston,

14  Texas.

15

16                                                    _____

17                                                            Lydie Eschete

18

19

20

21

22

23

24

25

26

27

28

3

Exhibit 2 - Page 7

# EXHIBIT A

Exhibit 2 - Page 8



### CENERGY INTERNATIONAL SERVICES, LLC
### CONTRACTOR MASTER SERVICE AGREEMENT

This Master Service Agreement (hereafter "Agreement") is made and entered into this **14th day of January, 2014** by and between **Cenergy International Services, L.L.C.** (hereafter "CIS") and **"Cummings Consulting LLC."**(hereafter "Contractor").

### Recitals

Whereas CIS is engaged in the business of identifying and furnishing professional service companies to its Customers in the petroleum exploration and production industry;

Whereas CIS desires to contract with Contractor as an independent contractor to provide certain professional services (hereinafter the "Services") as may be requested by its customers (hereinafter "Customer" or "Customers") from time to time pursuant to certain master service agreements (hereinafter "MSA") between CIS and it Customers;

The parties hereby agree as follows:

### Initial Representations

1.     Contractor represents and warrants to CIS, as of the Effective Date, that:

(a) Contractor is a corporation or LLC duly organized, validly existing and in good standing under the laws or the jurisdiction of its organization.

(b) Contractor has full corporate or company power and authority to enter into and perform this Contract, and has taken all actions necessary to authorize its execution and delivery of this Contract

(c) This Contract has been duly executed and delivered by its authorized officer or other representative and constitutes its legal, valid and binding obligation enforceable in accordance with its terms, and no consent or approval of any other Person is required in connection with its execution, delivery and performance.

(d) Contractor understands the nature and scope of the Services required by this Contract and all relevant matters which may affect or govern the provision of the Services, including all of the matters listed below:

(i) The geographic, climatic, weather, economic, security, political and cultural conditions prevailing in the area in which the Services are to be provided.

| CIS-QF-278

Exhibit 2 - Page 9

(ii)   The availability and quality of third-party services, labor, material, transportation, equipment and facilities in the area in which the Services are to be provided.

(iii)   The rules, regulations, statutory guidelines, orders, ordinances, codes, policies and laws which have legal force to this Agreement and     to the provision of the Services.

### Continuing Representations

2.     Contractor represents and warrants to CIS all of the following, as of the Effective Date and on a continuing basis during the effectiveness of this Contract:

(a.) Contractor and Contractor personnel have the technical competence, financial capacity, management skills, resources and equipment necessary to perform their obligations under this Contract.

(b.) Contractor personnel to be used to perform the Services are competent, qualified, fit for duty and skilled for the purpose of performing the Services as required by this Contract.

(c.) Contractor and Contractor personnel are at all relevant times in compliance with all requirements of this Contract, and have obtained all necessary licenses, permits, consents, approvals and other authorizations.

(d.) Contractor is responsible for securing his/her own health, life, retirement and other benefits and understands and agrees that he/she is not eligible to participate in any CIS employee benefit plans.

(e.)   As a self-employed, independent contractor, Contractor understands and agrees that he/she is not eligible to receive unemployment insurance benefits in the event that a work assignment for a CIS Customer is terminated or in the event this Agreement is terminated.

### Term of Engagement and Termination

3.     The initial term of this Agreement shall be a period of one (1) year starting from the date of the execution of this Agreement by both parties.  The Agreement shall automatically renew for an additional one (1) year period upon the expiration of the initial term, or any renewal thereof, unless either party provides written notice to the other party 30 days before the expiration of the initial term, or any renewal term, that the Agreement shall not be renewed.

Either party may terminate this Agreement immediately and without advance notice for cause in the event of a breach of this Agreement by the other party by providing written notice to the other party.

- 2 -

Exhibit 2 - Page 10

Either party may terminate this Agreement without cause by providing 30 days written notice of their intent to terminate this Agreement to the other party.

### Services to be Performed by Contractor

4.       Contractor is hereby engaged as an independent contractor for the purpose of performing the Services, which shall generally consist of performing professional services for which it and its personnel are qualified and trained  and as may be  requested by CIS Customers at job sites and locations requested by Customers. Contractor is not required to accept any particular opportunity offered by CIS, but if Contractor agrees to perform certain Services Contractor shall be required to complete the Services required to the satisfaction of the Customer.  CIS may offer certain Work Order assignments to Contractor but nothing in this Agreement shall require CIS to offer Contractor any specific number of assignments.    The parties acknowledge that this Agreement is non-exclusive, such that Contractor may perform professional services for other customers and clients and CIS may engage other Contractors to perform professional services for its Customers.

Contractor agrees that while engaged in work for CIS Customers Contractor will perform the Services to the best of Contractor's ability, on a timely basis and in accordance with generally accepted industry and professional standards.   In performing the Services Contractor is responsible for producing results that are satisfactory to the Customers of CIS. Notwithstanding the foregoing, the means, manner and method by which the Services shall be performed shall be within the sole control of Contractor, and CIS expressly does not and shall not assume responsibility for such control.

Contractor is solely responsible, at its own expense, for providing all materials, equipment (including vehicles and vessels), other services, personnel, supervision and expertise necessary to perform the Services as required by this Contract, unless otherwise agreed by the Parties.

### Independent Contractor Status

5.       Contractor hereby certifies that its employee(s) are properly trained and qualified and that its employee(s) hold all required training, licensure or other certifications and has the necessary work experience required for the performance of services in their profession, trade or occupation. CIS and Contractor hereby agree that Contractor has been contracted by CIS as an independent contractor to perform the Services pursuant to this Agreement. In this regard, CIS and Contractor acknowledge and agree to the following:

(a) CIS is only interested in the results obtained under this Agreement and the performance of the Services by Contractor to the satisfaction of its Customers.  Contractor shall have control over the means, manner and method by which the Services are to be performed. CIS shall not be responsible for directing the day-to-day activities of Contractor while performing the Services.  The means, manner and method by which the Services are to be performed shall be determined in accordance with Contractor's independent professional judgment.

- 3 -

Exhibit 2 - Page 11

(b)  Contractor shall furnish all necessary personal tools and equipment to be used in the performance of the Services.

(c)  This Agreement shall be non-exclusive, such that Contractor shall have the right to perform professional services for other principals and clients during the term of this Agreement.

(d)  As an independent contractor, Contractor shall be responsible for the payment of all state and federal income tax, social security, F.I.C.A., Medicare and other applicable taxes with respect to any compensation paid by CIS to Contractor pursuant to this Agreement. CIS will not make any tax withholdings from these payments.  Contractor shall be solely responsible for the filing of his corporate tax return, and payment of all taxes owed with respect to these payments. Contractor shall be solely responsible and liable for the payment of salary and other compensation to its employees and for all associated payroll and related taxes, including specifically W-2 payments.  Contractor agrees to defend, indemnify, and hold CIS and its Customers harmless from and against any and all claims by local, state or federal government authorities for any taxes owed or claimed to be owed as a result of or arising under this Agreement or the Services provided, as well any claims for penalties or attorney fees and costs that might be associated therewith.

(e)  Contractor warrants and represents to CIS that Contractor is fully compliant with the tax reporting requirements of all local, state and federal agencies, and that Contractor is timely filing and paying all associated such obligations as they are being accrued.  In the event of an audit or any type of formal request or inquiry of CIS or its Customers by any local, state or federal agency, Contractor agrees to promptly provide, upon reasonable notice, all filings and documentation evidencing Contractor's compliance with any such filing and payment obligations.  Contractor agrees to maintain all documentation associated with such filing and payment obligations for a period of not less than 7 (seven) years following the termination of this Agreement.   All costs associated with the production of such documentation shall be the responsibility of Contractor.

(f) Contractor is responsible for maintaining and updating at Contractor's own cost any required licensure, continuing education, technical certification and training, safety training and other certifications for it and its employee(s) as may be required by federal, state or local law or by CIS Customers in order for the Contractor employee(s) to perform the Services.  Upon request Contractor will provide CIS with documentation verifying that Contractor and/or its employee(s) are in compliance with any such required licensure, training or other certification requirements. If additional training is provided to Contractor or its employee(s) by CIS Customer and Contractor voluntarily terminates the its services or the services of a "trained" employee, within 90 days of receiving Customer training, Contractor will be responsible for such training fees if demand is made by CIS Customers.

(g)  Neither Contractor nor its employee(s) shall be considered an agent of CIS or its Customers for any purpose whatsoever and has no authority to assume or create any obligation or liability on behalf of CIS or its Customers or to legally bind CIS or its Customers in any manner whatsoever.

- 4 -

Exhibit 2 - Page 12

### Requirements of Contractor

6.      Contractor is responsible, at its own expense, for providing its employee(s) any required life saving and personal protective equipment (PPE) required to perform the job.

### Compliance with HSE and Drug Testing Policies/Programs

7.      Contractor warrants that it and its employee(s) will comply with and perform the Services consistent with the health, safety and environment ("HSE") policies, procedures and requirements of the Customers.  Contractor further warrants that prior to commencement of any Services it will obtain from the Customer all applicable health, safety and environment ("HSE") policies, procedures and requirements of the Customer, and familiarize itself and its employee(s) with them.

8.      Contractor warrants that it and its employees will comply with and perform the Services consistent with the drug, alcohol, drug/alcohol testing and worker search policies and procedures of the Customers ("Drug/Alcohol Program").  Contractor agrees to join, and to have its employees join, and shall at all times during the term of this Agreement remain enrolled in, CIS' drug and alcohol compliance program.  By executing this Agreement, Contractor hereby agrees to require any of its employee(s) providing Services hereunder, to consent to any drug or alcohol testing and searches of his/her person and property as may be requested by CIS or its Customers from time to time pursuant to the applicable Alcohol and Controlled Substances and Customer Policy Drug/Alcohol Programs.

### Compliance with Law and Ethics Requirements

9.      Contractor warrants that it shall at all times perform the Services in accordance with state, federal and local laws, rules and regulations that are applicable or that may become applicable to the work being performed by Contractor, including, but not limited to, all laws pertaining to health, safety and environmental protection.  Contractor further represents and warrants that Contractor has knowledge of and experience with such state, federal and local laws, rules and regulations applicable to taxation of Independent Contractors, and the filing and payment requirements associated therewith, as applicable to Independent Contractors providing similar services.

10.      Contractor acknowledges and agrees that Contractor shall be bound and abide by and strictly comply with both the letter and the spirit of the United States Foreign Corrupt Practices Act of 1977 and all amendments thereto as the same is from time to time in force in the United States of America; the Organization for Economic Cooperation and Development Anti-Bribery Convention and all other applicable anti-bribery and anti-corruption laws.  Without limiting the foregoing, Contractor and its employee(s) shall at all times perform the Services in an ethical manner and shall not accept money, gifts, favor or any other compensation for personal or professional gain for performance of the Services other than the compensation provided for in Paragraphs 12-13 of this Agreement. Contractor further agrees to refrain from making any payments, commission or kickbacks or giving any thing of value to any representative of the Customers, government officials or any other person for the purpose of influencing any decision, determination or other matter related to the Services performed for the Customers of CIS, including, but not limited to assignment of work to CIS or Contractor or approval of the Services performed by Contractor.

- 5 -

Exhibit 2 - Page 13

**Data Privacy**

11.    Contractor will comply with all reasonable requests of CIS and Customer with respect to protecting personal data of  Customer employees, customers, and suppliers it receives in connection with its performance of the Services, including following Customer's instructions in connection with processing such personal data; implementing adequate security measures to protect such personal data; not disclosing such personal data to any third party without Customer's written permission; and complying with all applicable data privacy laws.

**Confidential Information**

12.    In the course of performing Services under this Agreement, Contractor will become knowledgeable with respect to confidential information regarding the operations, processes and procedures of CIS and its Customers which if revealed to the competitors of CIS and its Customers would cause irreparable harm.  Accordingly, Contractor hereby agrees as follows:

     (a)     **Trade Secrets and Confidential Information**.  Contractor hereby agrees not to disclose to anyone the trade secrets and/or confidential information of CIS or the Customers which are learned or acquired as a result of engagement of Contractor pursuant to this Agreement.  Such trade secrets and/or confidential information include, but is not limited to, technical and design information regarding any Services or Customer project, Customer information (e.g., customer names, contact persons, addresses, requirements, credit information, pricing information and purchasing histories), customer lists, market studies and research, logs, well reports, seismic data, business opportunities and transactions, materials, drawings, designs, photographs, processes of manufacture, financial data, information regarding any CIS or Customer employees, marketing techniques, marketing strategies, business plans, sales methods, operating methods and techniques, operating and pricing policies, supplier information (e.g., supplier names, contact persons, addresses, pricing and supply histories), information regarding personnel and equipment used, business records of any type and any other information regarding CIS or Customer business or the Customer project or Services which is not known to the general public.  Such confidential information or trade secrets may be written or unwritten and may be in electronic format and specifically includes, but is not limited to, any writings, reports or memoranda or documents of any kind prepared or received by Contractor in connection with his engagement to perform the Services.

     (b)     **Obligation to Maintain Confidentiality of Information.**  Contractor will not at any time, both during and after the term of this Agreement, publish or disclose to any person, firm, corporation or other entity or use for Contractor's or its employees own benefit or that of any other person, firm or corporation or other entity, any trade secret or confidential information of CIS or the Customers and shall return to CIS and/or the Customers all such confidential information in its or its employees possession immediately upon the termination of the engagement by the Customer**.**  If at any time Contractor or one or more of its employees is served with any subpoena or other legal demand or request to produce documents or testimony

- 6 -

Exhibit 2 - Page 14

relating to any such trade secrets or confidential information, Contractor shall immediately notify CIS of such demand or request. Upon termination of this Agreement, all confidential information regarding CIS or its Customers held by the Contractor must be collected and returned to CIS. This includes all electronic and print versions of confidential information.

(c)     **Intellectual Property Rights**.   Unless otherwise expressly agreed by and between Contractor and the CIS Customer for whom the Services shall be provided, all ideas, improvements, new uses, know-how and inventions, whether patentable or un-patentable, that Contractor or its employee(s) may make, conceive, invent or produce or reduce to practice while engaged in performing Services for the Customers ("Inventions") shall be the sole and exclusive property of the CIS Customer for whom the Services shall be provided. Contractor and its employees will sign and execute all papers and do all acts necessary to assign and transfer to the CIS customer all rights, title and interest to said Inventions applications for patents or copyrights in the United States or in foreign countries and thereafter Contractor will do all things necessary to sustain such applications, patents and assignments as may be directed by the CIS Customer.

(d)     **Individual Pay Rates are Confidential**.  Contractor agrees to hold in confidence all information related to compensation rates including allowances, premiums, and compensation packages. Contractor agrees not to share such information with anyone except employee(s) assigned to administer the applicable work order.

(e)     **Remedies.**   Contractor acknowledges and agrees that any breach of the obligations set forth in this Paragraph 12 will cause CIS and its Customers to suffer irreparable harm not compensable through monetary damages alone and that CIS and its Customers may seek and obtain a temporary restraining order, preliminary and/or permanent injunction from a court requiring Contractor to abide by the terms of this Agreement, in addition to recovery of any monetary damages caused by any such breach.  Contractor also agrees to pay the litigation costs, including reasonable attorney fees, incurred by CIS or its Customer in enforcing a breach of such proprietary information obligations in the event that any court or arbitrator determines that Contractor has breached these obligations.

(f)     **Confidentiality of Contract Information.**   Contractor shall treat Contract Information as valuable, proprietary and confidential information and shall not disclose, and shall ensure that all employees of Contractor do not disclose, any Contract Information to any other Person without the prior written consent of CIS.

### Contractor Compensation and Expenses

**CONTRACTOR ACKNOWLEDGES AND AGREES THAT INVOICES SUBMITTED TO CENERGY FOR TIME MORE THAN 85 DAYS AFTER THE SERVICES WERE RENDERED FOR WHATEVER REASON WILL NOT BE PAID UNDER ANY CIRCUMSTANCES.**

13.     Subject to the terms and conditions of this Contract, CIS shall pay Contractor as full compensation for the Services performed by Contractor in accordance with Exhibit A and the applicable Service Order. Contractor shall only be paid for actual hours worked by Contractor

- 7 -

Exhibit 2 - Page 15

employee(s) and for Services that produce results that are satisfactory to the Customer, as verified by timesheets signed by an authorized representative of the Customer. Payment for actual Services performed by Contractor employees and approved by the Customer shall be the sole and exclusive compensation owed to Contractor and no other compensation of any kind shall be owed to Contractor. CIS will not withhold or pay any federal, state or local income or payroll tax of any kind on the Contractor payments. In order to receive payment for Services performed Contractor must submit approved field service tickets timely.

(a) **Contractor's Invoices.** Contractor shall deliver paper invoices to the address set out in a Service Order or as otherwise provided by CIS Electronic invoices shall be submitted by Contractor, if requested by CIS, in accordance with CIS' electronic invoicing process and include the required information necessary for processing and payment of each invoice.

To the extent requested by CIS (subject to applicable laws and regulations), Contractor shall separately state, re-phrase, combine or separately invoice items in order to minimize the amount of value-added tax, goods and services tax, sales tax     or     other     taxes     which Contractor is required by law to collect or for which it will seek reimbursement from CIS (including any tax that may be assessed against CIS but collected by Contractor) applicable to any transaction under this Contract.

Contractor, by delivering an invoice, represents and warrants that its invoice and all documents submitted in support of its invoice (including third party invoices, vouchers, financial settlements, billings and reports) are true and correct.

(b) **Invoices Shall Include**.

      (i).    The title and number of this Contract and/or the applicable Service Order.

      (ii).    The amount due.

      (iii).    Contractor's work ticket signed by a Customer Representative evidencing performance of the Services.

      (iv).    Contractor's tax registration number.

      (v).    If applicable, Contractor shall provide to CIS' satisfaction a detailed explanation to support its charges, including hours worked, itemized expense accounts (with support vouchers), third party invoices, specific details of all other reimbursable costs incurred and any other requested information.

(c) **Payment Timing.** CIS shall pay undisputed invoice amounts within thirty days from CIS, receipt of the invoice. Additional terms concerning an accelerated payment program may be set out in Exhibit "A".

(d) **Right to Withhold Payments.** If CIS disputes all or part of an invoice, CIS shall notify Contractor of the Dispute and pay the undisputed portion. If CIS notifies Contractor of a

- 8 -

Exhibit 2 - Page 16

Dispute in relation to part of an invoice, CIS may withhold the disputed portion until the Dispute is resolved.

(e) **No Waiver of CIS' Rights**. The payment of, objection to or failure to object to any invoice, or any payment or settlement in resolution of any Dispute, or any combination of these matters does not constitute acceptance by CIS of the accuracy or justification of Contractor's invoices. Any payment by CIS is made on the condition that CIS reserves the right to challenge, at a later time, the validity of any invoiced amount.

(f) **Expenses and overpayment.** CIS shall reimburse Contractor for expenses incurred by Contractor in the performance of the Services as authorized by the Customer under the terms of the attached Exhibit "A" for each Customer (hereinafter "Authorized Expenses"). Notwithstanding the foregoing, Contractor expressly acknowledges and agrees that Contractor is solely responsible for all expenses incurred during performance of the Services except as set forth above.  If inadvertent overpayment to Contractor occurs by CIS, Contractor agrees to notify CIS and promptly arrange to repay CIS the overage.

## Insurance

14.      CIS will be responsible for carrying insurance coverages that may be required by the Customer pursuant to the terms of the MSA covering the Services performed by Contractor pursuant to this Agreement, including worker's compensation, and agrees to name and waive Contractor as an additional insured under these policies of insurance. Contractor agrees to carry automobile liability insurance in the minimum amount of $25,000/$50,000/$25,000 and to furnish a certificate to CIS evidencing such insurance coverage.

## Indemnity

15.      Contractor shall be liable for any claim arising out of any illness, injury or death to Contractor employees, agents or vendors, or for any claim arising out of any loss or damage to the property of Contractor, its employees agents or vendors arising out of or relating to the Agreement or the performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS or CIS CUSTOMER's NEGLIGENCE OR FAULT (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE OR STRICT LIABILITY** and Contractor shall defend, protect, indemnify and hold harmless CIS, its parent, subsidiary and affiliated companies and all of their officers, directors, employees and representatives and Customers from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees and costs) on account of such illness, injury, death, loss or damage.

## Merger of Negotiations

16. **Entire Agreement**.  This Agreement and its attachments constitute the entire agreement between Contractor and CIS.  There is no statement, promise, agreement or obligation in

- 9 -

Exhibit 2 - Page 17

existence that may conflict with the terms of this Agreement or may modify, enlarge, or invalidate this Agreement or any provisions hereof.

### Assignment

17.    **Assignment by Contractor.**  The parties agree that this Agreement cannot be assigned by Contractor without the written consent of CIS.

18.    **Assignment by CIS.**  CIS may assign this Agreement to any of its affiliated companies without the consent of Contractor.  CIS shall provide written notice to Contractor advising of any such assignment.

### Amendment and Waiver

19.    **General Amendment.**  The provisions of this Agreement may be amended only by a written document signed by both Contractor and an authorized representative of CIS setting forth such alteration or amendment.

20.    **Waiver of Breach.**  CIS and Contractor agree that the failure to enforce any provision or obligation under this Agreement shall not constitute a waiver thereof or serve as a bar to the subsequent enforcement of such provision or obligation under this Agreement.

### Dispute Resolution

21.    **Arbitration.** All claims, disputes or controversies arising out of, in connection with or in relation to this Agreement or the Services, including any and all issues of arbitration of such claim, dispute or controversy (hereinafter "Dispute"), and regardless of whether the Dispute is based or claimed to be based in whole or in part on a claim by either Party of breach of this Agreement shall be subject to the following dispute resolution procedure:

(a) Notice.  In the event that a Dispute arises between Contractor and CIS, and/or between Contractor and a CIS Customer, Contractor shall immediately notify CIS of such Dispute in writing in order to provide CIS an opportunity to informally resolve the Dispute.

(b) Mediation.  In the event that the informal dispute resolution efforts set out in 21 (a) above fail to settle the Dispute between Contractor and CIS within 30-days of such written notice the parties shall submit the Dispute to formal mediation which shall be conducted by the American Arbitration Association ("AAA") in Houston, Texas  in accordance with the AAA Energy Industry Rules for Mediation then in effect.

(c) Arbitration. In the event that the mediation fails to settle the Dispute, then, subject to Article 20 (d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect. Such arbitration shall be conducted before a single arbitrator in Houston Texas.  The arbitration shall be conducted in accordance with the International Institute for Conflict

- 10 -

Exhibit 2 - Page 18

Prevention and Resolutions Rules at present in force, exclusive of its principles of conflicts of laws for the determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue. The Arbitrator shall have the power to award reasonable attorneys fees, costs and expenses to the prevailing party in any such arbitration proceeding.

(d) <u>Joinder</u>. Contractor expressly agrees to be joined as a party in any arbitration between CIS and a CIS Customer or to have any arbitration between Contractor and CIS consolidated with any arbitration between CIS and a CIS Customer that arises out of, relates to or is in connection with any Services provided by Contractor and Contractor hereby waives any objection to such joinder or consolidation. In the event of such consolidation or joinder, the parties agree that such arbitration shall be conducted in accordance with the arbitration rules set forth in the applicable MSA and shall be governed by the choice of law set forth in the applicable MSA.

## Survival of Covenants

22.     This Agreement shall be binding upon any successors or heirs or representatives of the parties hereto. The covenants and promises of the Contractor contained in this Agreement shall survive any termination of this Agreement by either party regardless of whether such termination is with or without cause.

## Governing Law

23.     To the extent that maritime activities are involved in the performance of this Agreement, then this Agreement shall be interpreted and construed in accordance with United States General Maritime law excluding any conflicts of laws principles which would direct the substantive law of another jurisdiction to apply. To the extent that Maritime Law is inapplicable, the laws of the State of California, exclusive of its principles of conflicts of laws, shall control the validity, construction and interpretation of this Agreement.

## Severability

24.     If any provision of this Agreement is determined to be invalid by any court or arbitrator in a final decision from which no appeal is or can be taken such provision shall be deemed modified to eliminate the invalid element, and as so modified such provision shall be deemed a part of this Agreement. If it is not possible to modify any such provision to eliminate the invalid element, such provision shall be deemed eliminated from this Agreement. The invalidity of any provision of the Agreement shall not affect the force and effect of the remaining provisions.

## Notices and Written Consents

25.     All written notices and consents to be given by CIS to Contractor pursuant to this Agreement may be made either by personal delivery, by registered or certified mail, express mail delivery, facsimile or e-mail using the information provided by Contractor below. All written notice to CIS shall be made either by personal delivery, registered, certified or express mail, or facsimile as follows:

- 11 -

Exhibit 2 - Page 19

Cenergy International Services
Attn: June Ressler
12650 Crossroads Park Drive
Houston, TX 77065
Fax: 713-965-6204

Notice shall be considered communicated as of the date it is actually received.  Contractor shall be responsible for providing CIS with current address and other contact information. By signing below, Contractor admits that he/she is free to enter into this contract.

Agreed to this 14th day of January, 2014

IN WITNESSES WHEREOF, the undersigned parties have executed this Cenergy International Services Contractor Agreement on the date first written above.

| | |
|---|---|
| CONTRACTOR SIGNATURE | Cummings Consulting LLC |
| | LLC NAME |
| Donnie Cummings    CEO | 1 - 14 - 14 |
| BY: Print Name    ITS | Date |
| | ▇▇▇▇▇ |
| | EIN# |

| | |
|---|---|
| Contractor License# (If Applicable) | State of Issuance |
| 3507 Herndon St | Bakersfield CA 93312 |
| LLC Address | City, State, Zip |
| N/A | ▇▇▇▇▇ |
| Home # of Contractor Representative | Mobile # of Contractor Representative |

▇▇▇▇▇
Contractor's Email Address

- 12 -

Exhibit 2 - Page 20

**CENERGY INTERNATIONAL SERVICES,**

BY: June Ressler, President                          Date          1-14-14

Exhibit 2 - Page 21

### CENERGY INTERNATIONAL SERVICES, L.L.C.
### CONTRACTOR AGREEMENT
### EXHIBIT A

Contractor hereby agrees to the terms of this Agreement and acknowledges that additional expenses not mentioned in this exhibit must be agreed to by a Customer supervisor in writing.  Contractor further acknowledges and agrees that the expenses and pay rate(s) on the Rate Card are subject to change pursuant to supervisor mandate.

_____     1-14-14
Signature of Contractor Representative          Date

**Donnie Cummings**
Print Name

**WSM**                                         **Chevron SJVBU**
Grid Job                                         Company

### RATE CARD

| Contractor Employee Pay Rate | Onshore Rate | See page #15 for rate | |
|---|---|---|---|
| | | | |
| | | | |
| Contractor Employee Allowable Expenses | Expense | Y/N | Amount/Unit |
| | | | |
| | | | |
| | | | |
| | | | |
| Special Instances | Contractor will be paid every other week upon CIS' receipt of correctly submitted time sheets. | | |

- 14 -

Exhibit 2 - Page 22

1. **Basis of Compensation to be amended when changes are made to rotation or location**

(A) 5x2 or 9x80 schedule = $902/day
   $50/day fuel allowance while working in MWSS, Cymric, McKittrick, Lost Hills and Kern River
   No additional expenses unless written approval from Chevron Supply chain

(B) If consultant is working a rotational schedule and staying on site (not returning home) $1,145/day
   $100/day per diem
   No Fuel Allowance
   No additional expenses unless written approval from Chevron Supply chain

(C) WSM rotating consultants that travel to a California location from outside the state of California will be paid 1 additional day per rotation per 14 day hitch to offset the cost of travel expenses. In the event the consultant relocates to California the travel day would become no longer valid and it is the consultants' responsibility to inform Cenergy.

(D) If consultant is working in San Ardo , Coalinga or Kettleman the following applies:
   Mon-Thur (away days/ not returning home) = $1,145/day
   Fri (the day consultant returns home) = $902/day
   $100/day per diem
   $60/day trailer allowance OR will be reimbursed for the cost of a hotel expense at cost w/receipts.
   No Fuel Allowance
   No additional expenses unless written approval from Chevron Supply chain

(E) WSM working 12 hour tour on a 24x5 operations = $1,100/day
   $50/day fuel allowance while working in MWSS, Cymric, McKittrick, Lost Hills and Kern River
   No additional expenses unless written approval from Chevron Supply chain

It is imperative that Cenergy is immediately informed of any contractor schedule change. Contractor must invoice the proper amount according to his/her schedule. Contractor WILL be held liable for repayment of any improper invoiced amount. Contractors are responsible for their own PPE including: H2S monitors, Safety Glasses, Hard Hats, Steel Toe Boots and FRC's. Contractors are also responsible for keeping their well control, passport training and Fit test Certifications current and providing such current certifications to Cenergy.

   FR guidelines:
   Contractors will be required to supply their own CAT 2 FR clothing including; long sleeve shirt, long pants and jacket.
   Outer most garments must be FR CAT 2 minimum.

- 15 -

Exhibit 2 - Page 23

# EXHIBIT B

Exhibit 2 - Page 24



**CENERGY INTERNATIONAL SERVICES, LLC**
**CONTRACTOR MASTER SERVICE AGREEMENT**

This Master Service Agreement (hereafter "Agreement") is made and entered into this **6th day of January, 2014** by and between **Cenergy International Services, L.L.C.** (hereafter "CIS") and **"A. Ayon Consulting, LLC."**(hereafter "Contractor").

## Recitals

Whereas CIS is engaged in the business of identifying and furnishing professional service companies to its Customers in the petroleum exploration and production industry;

Whereas CIS desires to contract with Contractor as an independent contractor to provide certain professional services (hereinafter the "Services") as may be requested by its customers (hereinafter "Customer" or "Customers") from time to time pursuant to certain master service agreements (hereinafter "MSA") between CIS and it Customers;

The parties hereby agree as follows:

## Initial Representations

1.      Contractor represents and warrants to CIS, as of the Effective Date, that:

(a) Contractor is a corporation or LLC duly organized, validly existing and in good standing under the laws or the jurisdiction of its organization.

(b) Contractor has full corporate or company power and authority to enter into and perform this Contract, and has taken all actions necessary to authorize its execution and delivery of this Contract

(c) This Contract has been duly executed and delivered by its authorized officer or other representative and constitutes its legal, valid and binding obligation enforceable in accordance with its terms, and no consent or approval of any other Person is required in connection with its execution, delivery and performance**.**

(d) Contractor understands the nature and scope of the Services required by this Contract and all relevant matters which may affect or govern the provision of the Services, including all of the matters listed below:

(i)  The geographic, climatic, weather, economic, security, political and cultural conditions prevailing in the area in which the Services are to be provided.

**CIS-QF-278**

Exhibit 2 - Page 25

(ii)   The availability and quality of third-party services, labor, material, transportation, equipment and facilities in the area in which the Services are to be provided.

(iii)   The rules, regulations, statutory guidelines, orders, ordinances, codes, policies and laws which have legal force to this Agreement and       to the provision of the Services.

### Continuing Representations

2.   Contractor represents and warrants to CIS all of the following, as of the Effective Date and on a continuing basis during the effectiveness of this Contract:

(a.) Contractor and Contractor personnel have the technical competence, financial capacity, management skills, resources and equipment necessary to perform their obligations under this Contract.

(b.) Contractor personnel to be used to perform the Services are competent, qualified, fit for duty and skilled for the purpose of performing the Services as required by this Contract.

(c.) Contractor and Contractor personnel are at all relevant times in compliance with all requirements of this Contract, and have obtained all necessary licenses, permits, consents, approvals and other authorizations.

(d.) Contractor is responsible for securing his/her own health, life, retirement and other benefits and understands and agrees that he/she is not eligible to participate in any CIS employee benefit plans.

(e.)   As a self-employed, independent contractor, Contractor understands and agrees that he/she is not eligible to receive unemployment insurance benefits in the event that a work assignment for a CIS Customer is terminated or in the event this Agreement is terminated.

### Term of Engagement and Termination

3.   The initial term of this Agreement shall be a period of one (1) year starting from the date of the execution of this Agreement by both parties.  The Agreement shall automatically renew for an additional one (1) year period upon the expiration of the initial term, or any renewal thereof, unless either party provides written notice to the other party 30 days before the expiration of the initial term, or any renewal term, that the Agreement shall not be renewed.

Either party may terminate this Agreement immediately and without advance notice for cause in the event of a breach of this Agreement by the other party by providing written notice to the other party.

Either party may terminate this Agreement without cause by providing 30 days written notice of their intent to terminate this Agreement to the other party.

## Services to be Performed by Contractor

4.      Contractor is hereby engaged as an independent contractor for the purpose of performing the Services, which shall generally consist of performing professional services for which it and its personnel are qualified and trained  and as may be  requested by CIS Customers at job sites and locations requested by Customers. Contractor is not required to accept any particular opportunity offered by CIS, but if Contractor agrees to perform certain Services Contractor shall be required to complete the Services required to the satisfaction of the Customer.  CIS may offer certain Work Order assignments to Contractor but nothing in this Agreement shall require CIS to offer Contractor any specific number of assignments.   The parties acknowledge that this Agreement is non-exclusive, such that Contractor may perform professional services for other customers and clients and CIS may engage other Contractors to perform professional services for its Customers.

Contractor agrees that while engaged in work for CIS Customers Contractor will perform the Services to the best of Contractor's ability, on a timely basis and in accordance with generally accepted industry and professional standards.  In performing the Services Contractor is responsible for producing results that are satisfactory to the Customers of CIS.  Notwithstanding the foregoing, the means, manner and method by which the Services shall be performed shall be within the sole control of Contractor, and CIS expressly does not and shall not assume responsibility for such control.

Contractor is solely responsible, at its own expense, for providing all materials, equipment (including vehicles and vessels), other services, personnel, supervision and expertise necessary to perform the Services as required by this Contract, unless otherwise agreed by the Parties.

## Independent Contractor Status

5.      Contractor hereby certifies that its employee(s) are properly trained and qualified and that its employee(s) hold all required training, licensure or other certifications and has the necessary work experience required for the performance of services in their profession, trade or occupation. CIS and Contractor hereby agree that Contractor has been contracted by CIS as an independent contractor to perform the Services pursuant to this Agreement. In this regard, CIS and Contractor acknowledge and agree to the following:

(a) CIS is only interested in the results obtained under this Agreement and the performance of the Services by Contractor to the satisfaction of its Customers.  Contractor shall have control over the means, manner and method by which the Services are to be performed. CIS shall not be responsible for directing the day-to-day activities of Contractor while performing the Services.  The means, manner and method by which the Services are to be performed shall be determined in accordance with Contractor's independent professional judgment.

- 3 -

Exhibit 2 - Page 27

(b)  Contractor shall furnish all necessary personal tools and equipment to be used in the performance of the Services.

(c)  This Agreement shall be non-exclusive, such that Contractor shall have the right to perform professional services for other principals and clients during the term of this Agreement.

(d)  As an independent contractor, Contractor shall be responsible for the payment of all state and federal income tax, social security, F.I.C.A., Medicare and other applicable taxes with respect to any compensation paid by CIS to Contractor pursuant to this Agreement. CIS will not make any tax withholdings from these payments.  Contractor shall be solely responsible for the filing of his corporate tax return, and payment of all taxes owed with respect to these payments. Contractor shall be solely responsible and liable for the payment of salary and other compensation to its employees and for all associated payroll and related taxes, including specifically W-2 payments.  Contractor agrees to defend, indemnify, and hold CIS and its Customers harmless from and against any and all claims by local, state or federal government authorities for any taxes owed or claimed to be owed as a result of or arising under this Agreement or the Services provided, as well any claims for penalties or attorney fees and costs that might be associated therewith.

(e)  Contractor warrants and represents to CIS that Contractor is fully compliant with the tax reporting requirements of all local, state and federal agencies, and that Contractor is timely filing and paying all associated such obligations as they are being accrued.  In the event of an audit or any type of formal request or inquiry of CIS or its Customers by any local, state or federal agency, Contractor agrees to promptly provide, upon reasonable notice, all filings and documentation evidencing Contractor's compliance with any such filing and payment obligations.  Contractor agrees to maintain all documentation associated with such filing and payment obligations for a period of not less than 7 (seven) years following the termination of this Agreement.  All costs associated with the production of such documentation shall be the responsibility of Contractor.

(f) Contractor is responsible for maintaining and updating at Contractor's own cost any required licensure, continuing education, technical certification and training, safety training and other certifications for it and its employee(s) as may be required by federal, state or local law or by CIS Customers in order for the Contractor employee(s) to perform the Services.  Upon request Contractor will provide CIS with documentation verifying that Contractor and/or its employee(s) are in compliance with any such required licensure, training or other certification requirements. If additional training is provided to Contractor or its employee(s) by CIS Customer and Contractor voluntarily terminates the its services or the services of a "trained" employee, within 90 days of receiving Customer training, Contractor will be responsible for such training fees if demand is made by CIS Customers.

(g)  Neither Contractor nor its employee(s) shall be considered an agent of CIS or its Customers for any purpose whatsoever and has no authority to assume or create any obligation or liability on behalf of CIS or its Customers or to legally bind CIS or its Customers in any manner whatsoever.

- 4 -

Exhibit 2 - Page 28

**Requirements of Contractor**

6.      Contractor is responsible, at its own expense, for providing its employee(s) any required life saving and personal protective equipment (PPE) required to perform the job.

## Compliance with HSE and Drug Testing Policies/Programs

7.     Contractor warrants that it and its employee(s) will comply with and perform the Services consistent with the health, safety and environment ("HSE") policies, procedures and requirements of the Customers.  Contractor further warrants that prior to commencement of any Services it will obtain from the Customer all applicable health, safety and environment ("HSE") policies, procedures and requirements of the Customer, and familiarize itself and its employee(s) with them.

8.     Contractor warrants that it and its employees will comply with and perform the Services consistent with the drug, alcohol, drug/alcohol testing and worker search policies and procedures of the Customers ("Drug/Alcohol Program").  Contractor agrees to join, and to have its employees join, and shall at all times during the term of this Agreement remain enrolled in, CIS' drug and alcohol compliance program.  By executing this Agreement, Contractor hereby agrees to require any of its employee(s) providing Services hereunder, to consent to any drug or alcohol testing and searches of his/her person and property as may be requested by CIS or its Customers from time to time pursuant to the applicable Alcohol and Controlled Substances and Customer Policy Drug/Alcohol Programs.

## Compliance with Law and Ethics Requirements

9.     Contractor warrants that it shall at all times perform the Services in accordance with state, federal and local laws, rules and regulations that are applicable or that may become applicable to the work being performed by Contractor, including, but not limited to, all laws pertaining to health, safety and environmental protection.  Contractor further represents and warrants that Contractor has knowledge of and experience with such state, federal and local laws, rules and regulations applicable to taxation of Independent Contractors, and the filing and payment requirements associated therewith, as applicable to Independent Contractors providing similar services.

10.     Contractor acknowledges and agrees that Contractor shall be bound and abide by and strictly comply with both the letter and the spirit of the United States Foreign Corrupt Practices Act of 1977 and all amendments thereto as the same is from time to time in force in the United States of America; the Organization for Economic Cooperation and Development Anti-Bribery Convention and all other applicable anti-bribery and anti-corruption laws.  Without limiting the foregoing, Contractor and its employee(s) shall at all times perform the Services in an ethical manner and shall not accept money, gifts, favor or any other compensation for personal or professional gain for performance of the Services other than the compensation provided for in Paragraphs 12-13 of this Agreement. Contractor further agrees to refrain from making any payments, commission or kickbacks or giving any thing of value to any representative of the Customers, government officials or any other person for the purpose of influencing any decision, determination or other matter related to the Services performed for the Customers of CIS, including, but not limited to assignment of work to CIS or Contractor or approval of the Services performed by Contractor.

- 5 -

Exhibit 2 - Page 29

## Data Privacy

11.    Contractor will comply with all reasonable requests of CIS and Customer with respect to protecting personal data of  Customer employees, customers, and suppliers it receives in connection with its performance of the Services, including following Customer's instructions in connection with processing such personal data; implementing adequate security measures to protect such personal data; not disclosing such personal data to any third party without Customer's written permission; and complying with all applicable data privacy laws.

## Confidential Information

12.    In the course of performing Services under this Agreement, Contractor will become knowledgeable with respect to confidential information regarding the operations, processes and procedures of CIS and its Customers which if revealed to the competitors of CIS and its Customers would cause irreparable harm.  Accordingly, Contractor hereby agrees as follows:

(a)    **Trade Secrets and Confidential Information**.  Contractor hereby agrees not to disclose to anyone the trade secrets and/or confidential information of CIS or the Customers which are learned or acquired as a result of engagement of Contractor pursuant to this Agreement.  Such trade secrets and/or confidential information include, but is not limited to, technical and design information regarding any Services or Customer project, Customer information (e.g., customer names, contact persons, addresses, requirements, credit information, pricing information and purchasing histories), customer lists, market studies and research, logs, well reports, seismic data, business opportunities and transactions, materials, drawings, designs, photographs, processes of manufacture, financial data, information regarding any CIS or Customer employees, marketing techniques, marketing strategies, business plans, sales methods, operating methods and techniques, operating and pricing policies, supplier information (e.g., supplier names, contact persons, addresses, pricing and supply histories), information regarding personnel and equipment used, business records of any type and any other information regarding CIS or Customer business or the Customer project or Services which is not known to the general public.  Such confidential information or trade secrets may be written or unwritten and may be in electronic format and specifically includes, but is not limited to, any writings, reports or memoranda or documents of any kind prepared or received by Contractor in connection with his engagement to perform the Services.

(b)    **Obligation to Maintain Confidentiality of Information.**  Contractor will not at any time, both during and after the term of this Agreement, publish or disclose to any person, firm, corporation or other entity or use for Contractor's or its employees own benefit or that of any other person, firm or corporation or other entity, any trade secret or confidential information of CIS or the Customers and shall return to CIS and/or the Customers all such confidential information in its or its employees possession immediately upon the termination of the engagement by the Customer**.**  If at any time Contractor or one or more of its employees is served with any subpoena or other legal demand or request to produce documents or testimony

- 6 -

Exhibit 2 - Page 30

relating to any such trade secrets or confidential information, Contractor shall immediately notify CIS of such demand or request. Upon termination of this Agreement, all confidential information regarding CIS or its Customers held by the Contractor must be collected and returned to CIS. This includes all electronic and print versions of confidential information.

(c)     **Intellectual Property Rights**.    Unless otherwise expressly agreed by and between Contractor and the CIS Customer for whom the Services shall be provided, all ideas, improvements, new uses, know-how and inventions, whether patentable or un-patentable, that Contractor or its employee(s) may make, conceive, invent or produce or reduce to practice while engaged in performing Services for the Customers ("Inventions") shall be the sole and exclusive property of the CIS Customer for whom the Services shall be provided. Contractor and its employees will sign and execute all papers and do all acts necessary to assign and transfer to the CIS customer all rights, title and interest to said Inventions applications for patents or copyrights in the United States or in foreign countries and thereafter Contractor will do all things necessary to sustain such applications, patents and assignments as may be directed by the CIS Customer.

(d)     **Individual Pay Rates are Confidential**.   Contractor agrees to hold in confidence all information related to compensation rates including allowances, premiums, and compensation packages. Contractor agrees not to share such information with anyone except employee(s) assigned to administer the applicable work order.

(e)     **Remedies.**    Contractor acknowledges and agrees that any breach of the obligations set forth in this Paragraph 12 will cause CIS and its Customers to suffer irreparable harm not compensable through monetary damages alone and that CIS and its Customers may seek and obtain a temporary restraining order, preliminary and/or permanent injunction from a court requiring Contractor to abide by the terms of this Agreement, in addition to recovery of any monetary damages caused by any such breach.  Contractor also agrees to pay the litigation costs, including reasonable attorney fees, incurred by CIS or its Customer in enforcing a breach of such proprietary information obligations in the event that any court or arbitrator determines that Contractor has breached these obligations.

(f)     **Confidentiality of Contract Information.**    Contractor shall treat Contract Information as valuable, proprietary and confidential information and shall not disclose, and shall ensure that all employees of Contractor do not disclose, any Contract Information to any other Person without the prior written consent of CIS.

### <u>Contractor Compensation and Expenses</u>

**CONTRACTOR ACKNOWLEDGES AND AGREES THAT INVOICES SUBMITTED TO CENERGY FOR TIME MORE THAN 85 DAYS AFTER THE SERVICES WERE RENDERED FOR WHATEVER REASON WILL NOT BE PAID UNDER ANY CIRCUMSTANCES.**

13.     Subject to the terms and conditions of this Contract, CIS shall pay Contractor as full compensation for the Services performed by Contractor in accordance with Exhibit A and the applicable Service Order. Contractor shall only be paid for actual hours worked by Contractor

- 7 -

Exhibit 2 - Page 31

employee(s) and for Services that produce results that are satisfactory to the Customer, as verified by timesheets signed by an authorized representative of the Customer. Payment for actual Services performed by Contractor employees and approved by the Customer shall be the sole and exclusive compensation owed to Contractor and no other compensation of any kind shall be owed to Contractor.  CIS will not withhold or pay any federal, state or local income or payroll tax of any kind on the Contractor payments. In order to receive payment for Services performed Contractor must submit approved field service tickets timely.

(a) **Contractor's Invoices.**  Contractor shall deliver paper invoices to the address set out in a Service Order or as otherwise provided by CIS Electronic invoices shall be submitted by Contractor, if requested by CIS, in accordance with CIS' electronic invoicing process and include the required information necessary for processing and payment of each invoice.

To the extent requested by CIS (subject to applicable laws and regulations), Contractor shall separately state, re-phrase, combine or separately invoice items in order to minimize the amount of value-added tax, goods and services tax, sales tax        or     taxes     which Contractor is required by law to collect or for which it will seek reimbursement from CIS (including any tax that may be assessed against CIS but collected by Contractor) applicable to any transaction under this Contract.

Contractor, by delivering an invoice, represents and warrants that its invoice and all documents submitted in support of its invoice (including third party invoices, vouchers, financial settlements, billings and reports) are true and correct.

(b) **Invoices Shall Include**.

(i).     The title and number of this Contract and/or the applicable Service Order.

(ii).    The amount due.

(iii).   Contractor's work ticket signed by a Customer Representative evidencing performance of the Services.

(iv).    Contractor's tax registration number.

(v).     If applicable, Contractor shall provide to CIS' satisfaction a detailed explanation to support its charges, including hours worked, itemized expense accounts (with support vouchers), third party invoices, specific details of all other reimbursable costs incurred and any other requested information.

(c) **Payment Timing.** CIS shall pay undisputed invoice amounts within thirty days from CIS, receipt of the invoice.  Additional terms concerning an accelerated payment program may be set out in Exhibit "A".

(d) **Right to Withhold Payments.** If CIS disputes all or part of an invoice, CIS shall notify Contractor of the Dispute and pay the undisputed portion. If CIS notifies Contractor of a

- 8 -

Exhibit 2 - Page 32

Dispute in relation to part of an invoice, CIS may withhold the disputed portion until the Dispute is resolved.

(e) **No Waiver of CIS' Rights**. The payment of, objection to or failure to object to any invoice, or any payment or settlement in resolution of any Dispute, or any combination of these matters does not constitute acceptance by CIS of the accuracy or justification of Contractor's invoices. Any payment by CIS is made on the condition that CIS reserves the right to challenge, at a later time, the validity of any invoiced amount.

(f) **Expenses and overpayment.** CIS shall reimburse Contractor for expenses incurred by Contractor in the performance of the Services as authorized by the Customer under the terms of the attached Exhibit "A" for each Customer (hereinafter "Authorized Expenses"). Notwithstanding the foregoing, Contractor expressly acknowledges and agrees that Contractor is solely responsible for all expenses incurred during performance of the Services except as set forth above.  If inadvertent overpayment to Contractor occurs by CIS, Contractor agrees to notify CIS and promptly arrange to repay CIS the overage.

## Insurance

14.     CIS will be responsible for carrying insurance coverages that may be required by the Customer pursuant to the terms of the MSA covering the Services performed by Contractor pursuant to this Agreement, including worker's compensation, and agrees to name and waive Contractor as an additional insured under these policies of insurance. Contractor agrees to carry automobile liability insurance in the minimum amount of $25,000/$50,000/$25,000 and to furnish a certificate to CIS evidencing such insurance coverage.

## Indemnity

15.     Contractor shall be liable for any claim arising out of any illness, injury or death to Contractor employees, agents or vendors, or for any claim arising out of any loss or damage to the property of Contractor, its employees agents or vendors arising out of or relating to the Agreement or the performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS or CIS CUSTOMER's NEGLIGENCE OR FAULT (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE OR STRICT LIABILITY** and Contractor shall defend, protect, indemnify and hold harmless CIS, its parent, subsidiary and affiliated companies and all of their officers, directors, employees and representatives and Customers from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees and costs) on account of such illness, injury, death, loss or damage.

## Merger of Negotiations

16.  **Entire Agreement**.  This Agreement and its attachments constitute the entire agreement between Contractor and CIS.  There is no statement, promise, agreement or obligation in

- 9 -

Exhibit 2 - Page 33

existence that may conflict with the terms of this Agreement or may modify, enlarge, or invalidate this Agreement or any provisions hereof.

## Assignment

17.    **Assignment by Contractor.**  The parties agree that this Agreement cannot be assigned by Contractor without the written consent of CIS.

18.    **Assignment by CIS.**  CIS may assign this Agreement to any of its affiliated companies without the consent of Contractor.  CIS shall provide written notice to Contractor advising of any such assignment.

## Amendment and Waiver

19.    **General Amendment.**  The provisions of this Agreement may be amended only by a written document signed by both Contractor and an authorized representative of CIS setting forth such alteration or amendment.

20.    **Waiver of Breach.**  CIS and Contractor agree that the failure to enforce any provision or obligation under this Agreement shall not constitute a waiver thereof or serve as a bar to the subsequent enforcement of such provision or obligation under this Agreement.

## Dispute Resolution

21.    **Arbitration.** All claims, disputes or controversies arising out of, in connection with or in relation to this Agreement or the Services, including any and all issues of arbitration of such claim, dispute or controversy (hereinafter "Dispute"), and regardless of whether the Dispute is based or claimed to be based in whole or in part on a claim by either Party of breach of this Agreement shall be subject to the following dispute resolution procedure:

(a) Notice.  In the event that a Dispute arises between Contractor and CIS, and/or between Contractor and a CIS Customer, Contractor shall immediately notify CIS of such Dispute in writing in order to provide CIS an opportunity to informally resolve the Dispute.

(b) Mediation.  In the event that the informal dispute resolution efforts set out in 21 (a) above fail to settle the Dispute between Contractor and CIS within 30-days of such written notice the parties shall submit the Dispute to formal mediation which shall be conducted by the American Arbitration Association ("AAA") in Houston, Texas  in accordance with the AAA Energy Industry Rules for Mediation then in effect.

(c) Arbitration. In the event that the mediation fails to settle the Dispute, then, subject to Article 20 (d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect.  Such arbitration shall be conducted before a single arbitrator in Houston Texas.  The arbitration shall be conducted in accordance with the International Institute for Conflict

- 10 -

Exhibit 2 - Page 34

Prevention and Resolutions Rules at present in force, exclusive of its principles of conflicts of laws for the determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue. The Arbitrator shall have the power to award reasonable attorneys fees, costs and expenses to the prevailing party in any such arbitration proceeding.

(d)  Joinder.  Contractor expressly agrees to be joined as a party in any arbitration between CIS and a CIS Customer or to have any arbitration between Contractor and CIS consolidated with any arbitration between CIS and a CIS Customer that arises out of, relates to or is in connection with any Services provided by Contractor and Contractor hereby waives any objection to such joinder or consolidation.  In the event of such consolidation or joinder, the parties agree that such arbitration shall be conducted in accordance with the arbitration rules set forth in the applicable MSA and shall be governed by the choice of law set forth in the applicable MSA.

## Survival of Covenants

22.    This Agreement shall be binding upon any successors or heirs or representatives of the parties hereto.  The covenants and promises of the Contractor contained in this Agreement shall survive any termination of this Agreement by either party regardless of whether such termination is with or without cause.

## Governing Law

23.    To the extent that maritime activities are involved in the performance of this Agreement, then this Agreement shall be interpreted and construed in accordance with United States General Maritime law excluding any conflicts of laws principles which would direct the substantive law of another jurisdiction to apply. To the extent that Maritime Law is inapplicable, the laws of the State of California, exclusive of its principles of conflicts of laws, shall control the validity, construction and interpretation of this Agreement.

## Severability

24.    If any provision of this Agreement is determined to be invalid by any court or arbitrator in a final decision from which no appeal is or can be taken such provision shall be deemed modified to eliminate the invalid element, and as so modified such provision shall be deemed a part of this Agreement.  If it is not possible to modify any such provision to eliminate the invalid element, such provision shall be deemed eliminated from this Agreement.  The invalidity of any provision of the Agreement shall not affect the force and effect of the remaining provisions.

## Notices and Written Consents

25.    All written notices and consents to be given by CIS to Contractor pursuant to this Agreement may be made either by personal delivery, by registered or certified mail, express mail delivery, facsimile or e-mail using the information provided by Contractor below.  All written notice to CIS shall be made either by personal delivery, registered, certified or express mail, or facsimile as follows:

- 11 -

Exhibit 2 - Page 35

**Cenergy International Services**
**Attn: June Ressler**
**12650 Crossroads Park Drive**
**Houston, TX 77065**
**Fax: 713-965-6204**

Notice shall be considered communicated as of the date it is actually received.  Contractor shall be responsible for providing CIS with current address and other contact information. By signing below, Contractor admits that he/she is free to enter into this contract.

Agreed to this 2nd day of January, 2014

IN WITNESSES WHEREOF, the undersigned parties have executed this Cenergy International Services Contractor Agreement on the date first written above.

| | |
|---|---|
| *[signature]* | A. Ayon Consulting, LLC |
| CONTRACTOR SIGNATURE | LLC NAME |
| Arturo Ayon | |
| BY: Print Name     ITS | Date |
| | ▮▮▮▮ |
| | EIN# |
| | |
| Contractor License# (If Applicable) | State of Issuance |
| 12710 Reina Rd | Bakersfield, CA 93312 |
| LLC Address | City, State, Zip |
| N/A | ▮▮▮▮ |
| Home # of Contractor Representative | Mobile # of Contractor Representative |
| ▮▮▮▮     ▮▮▮▮ | |
| Contractor's Email Address | |

- 12 -

Exhibit 2 - Page 36

**CENERGY INTERNATIONAL SERVICES,**

_____

**BY: June Ressler, President**                          **Date**

**CENERGY INTERNATIONAL SERVICES, L.L.C.**
**CONTRACTOR AGREEMENT**
**EXHIBIT A**

Contractor hereby agrees to the terms of this Agreement and acknowledges that additional expenses not mentioned in this exhibit must be agreed to by a Customer supervisor in writing. Contractor further acknowledges and agrees that the expenses and pay rate(s) on the Rate Card are subject to change pursuant to supervisor mandate.

_____

Signature of Contractor Representative                    Date


Arturo Ayon
Print Name


WSM                                        Chevron SJVBU
Grid Job                                   Company

### RATE CARD

| Contractor Employee Pay Rate | Onshore Rate | See page #15 for rate | |
|---|---|---|---|
| | | | |
| | | | |
| Contractor Employee Allowable Expenses | Expense | Y/N | Amount/Unit |
| | | | |
| | | | |
| | | | |
| | | | |
| Special Instances | Contractor will be paid every other week upon CIS' receipt of correctly submitted time sheets. | | |

- 14 -

Exhibit 2 - Page 38

1. **Basis of Compensation to be amended when changes are made to rotation or location**

(A) 5x2 or 9x80 schedule = $902/day
$50/day fuel allowance while working in MWSS, Cymric, McKittrick, Lost Hills and Kern River
No additional expenses unless written approval from Chevron Supply chain

(B) If consultant is working a rotational schedule and staying on site (not returning home)
$1,145/day
$100/day per diem
No Fuel Allowance
No additional expenses unless written approval from Chevron Supply chain

(C) WSM rotating consultants that travel to a California location outside the state of California will be paid 1 additional day per rotation per 14 day hitch to offset the cost of travel expenses. In the event the consultant relocates to California the travel day would become no longer valid and it is the consultants responsibility to inform Cenergy.

(D) If  consultant is working in San Ardo , Coalinga or Kettleman the following applies:
Mon- Thur (away days/ not returning home) = $1,145/day
Fri ( the day consultant returns home) = $902/day
$100/day per diem
$60/day trailer allowance OR will be reimbursed for the cost of a hotel expense at cost w/receipts.
No Fuel Allowance
No additional expenses unless written approval from Chevron Supply chain

(E) WSM working 12 hour tour on a 24x5 operations = $1,100/day
$50/day fuel allowance while working in MWSS, Cymric, McKittrick, Lost Hills and Kern River
No additional expenses unless written approval from Chevron Supply chain

It is imperative that Cenergy is immediately informed of any contractor schedule change. Contractor must invoice the proper amount according to his/her schedule. Contractor WILL be held liable for repayment of any improper invoiced amount. Contractors are responsible for their own PPE including: H2S monitors, Safety Glasses, Hard Hats, Steel Toe Boots and FRC's. Contractors are also responsible for keeping their well control, passport training and Fit test Certifications current and providing such current certifications to Cenergy.

FR guidelines:
Contractors will be required to supply their own CAT 2 FR clothing including; long sleeve shirt, long pants and jacket.
Outer most garments must be FR CAT 2 minimum.

# EXHIBIT C

Exhibit 2 - Page 40

 Cenergy International Services, LLC Consultant Agreement

This Agreement is made and entered into this __1st__ day of __November__ , 2013 by and between **Cenergy International Services, L.L.C.** (hereinafter "CIS" or the "Company") and **Chris Jones DSM, LLC** (hereinafter "Consultant").

**Recitals**

Whereas CIS is engaged in the business of furnishing professional service personnel to its customers in the petroleum exploration and production industry;

Whereas CIS desires to engage Consultant as an independent contractor to provide certain professional services (hereinafter the "Services") as may be requested by its customers (hereinafter "Customer"or "Customers") from time to time pursuant to certain master service agreements (hereinafter "MSA") between CIS and it Customers;

The parties hereby agree as follows:

**INDEPENDENT CONTRACTOR ACKNOWLEDGES AND AGREES THAT TIME SUBMITTED TO CENERGY MORE THAN 85 DAYS AFTER THE SERVICES WERE RENDERED FOR WHATEVER REASON WILL NOT BE PAID UNDER ANY CIRCUMSTANCES.**

<u>**Independent Contractor Status**</u>

1.      Consultant hereby certifies that he/she is a properly trained and qualified **Drill Site Manager** and that he/she holds all required training, licensure or other certifications and has the necessary work experience required for the performance of services in this profession, trade or occupation.   CIS and Consultant hereby agree that Consultant is engaged by CIS as an independent contractor to perform the Services pursuant to this Agreement. In this regard, CIS and Consultant acknowledge and agree to the following:

(a.)  CIS is only interested in the results obtained under this Agreement and the performance of the Services by Consultant to the satisfaction of its Customers.  Consultant shall have control over the means, manner and method by which the Services are to be performed. CIS shall not be responsible for directing the day-to-day activities of Consultant while performing the Services.  The means, manner and method by which the Services are to be performed shall be determined in accordance with Consultant's independent professional judgment.   However, Consultant shall at all times be subject to the compliance obligations set forth in Paragraphs 7-11 below.

(b.) Consultant shall furnish all necessary personal tools and equipment to be used in the performance of the Services.

CIS-QF-15 REV 5.0

Exhibit 2 - Page 41

(c.) This Agreement shall be non-exclusive, such that Consultant shall have the right to perform professional services for other principals and clients during the term of this Agreement.

(d.) As an independent contractor Consultant shall be responsible for the payment of all state and federal income tax, social security, F.I.C.A., Medicare and other applicable taxes with respect to any compensation paid by CIS to Consultant pursuant to this Agreement. CIS will not make any tax withholdings from these payments and will issue an IRS Form 1099 to Consultant reflecting these payments. Consultant shall be solely responsible for the payment of all taxes owed with respect to these payments. Consultant agrees to defend, indemnify, and hold CIS harmless from any claims by local, state or federal government authorities for any taxes owed as a result of the compensation payments made under this Agreement.

(e.) Consultant warrants and represents to CIS that Consultant is fully compliant with the tax reporting requirements of all local, state and federal agencies, and that Consultant is timely filing and paying all associated such obligations as they are being accrued. In the event of an audit or any type of formal request or inquiry of CIS by any local, state or federal agency, Consultant agrees to promptly provide, upon reasonable notice, all filings and documentation evidencing Consultant's compliance with any such filing and payment obligations. Consultant agrees to maintain all documentation associated with such filing and payment obligations for a period of not less than 7 (seven) years following the termination of this Agreement. All costs associated with the production of such documentation shall be the responsibility of Consultant.

(f.) Consultant is responsible for maintaining and updating at consultant's own cost any required licensure, continuing education, technical certification and training, safety training and other certifications as may be required by federal, state or local law or by CIS Customers in order for the Consultant to perform the Services. Upon request Consultant will provide CIS with documentation verifying that Consultant is in compliance with any such required licensure, training or other certification requirements. If additional training is provided to consultant by CIS Customer, and consultant voluntarily terminates his/her services within 90 days of receiving Customer training, Consultant may be responsible for such training fees if demand is made by CIS Customers.

(g.) Consultant shall not be considered an agent of CIS for any purpose whatsoever and has no authority to assume or create any obligation or liability on behalf of CIS or to legally bind CIS in any manner whatsoever.

(h.) As an independent contractor Consultant is responsible for securing his/her own health, life, retirement and other benefits and understands and agrees that he/she is not eligible to participate in any CIS employee benefit plans.

(i) As a self-employed, independent contractor, Consultant understands and agrees that he/she is not eligible to receive unemployment insurance benefits in the event that a work assignment for a CIS Customer is terminated or in the event this Agreement is terminated.

## Term of Engagement and Termination

Exhibit 2 - Page 42

2. **Initial Term and Renewal**. The initial term of this Agreement shall be a period of one (1) year starting from the date of the execution of this Agreement by both parties. The Agreement shall automatically renew for an additional one (1) year period upon the expiration of the initial term, or any renewal thereof, unless either party provides written notice to the other party 30 days before the expiration of the initial term, or any renewal term, that the Agreement shall not be renewed.

3. **Termination for Cause**. Either party may terminate this Agreement immediately and without advance notice for cause in the event of a breach of this Agreement by the other party by providing written notice to the other party.

4. **Termination Without Cause**.   Either party may terminate this Agreement without cause by providing 30 days written notice of their intent to terminate this Agreement to the other party.

### Services to be Performed by Contractor

5. **Nature of Consultant Services**. Consultant is hereby engaged as an independent contractor for the purpose of performing the Services, which shall generally consist of performing professional services as a **Drill Site Manager** as requested by CIS Customers at job sites and locations requested by Customers. Consultant is not required to accept any particular opportunity offered by CIS, but if Consultant agrees to perform certain Services Consultant shall be required to complete the Services required to the satisfaction of the Customer. CIS may offer certain Work Order assignments to Consultant but nothing in this Agreement shall require CIS to offer Consultant any specific number of assignments.   The parties acknowledge that this Agreement is non-exclusive, such that Consultant may perform professional services for other customers and clients and CIS may engage other consultants to perform professional services for its Customers.

6. **Consultant Performance**. Consultant agrees that while engaged in work for CIS Customers Consultant will perform the Services to the best of Consultant's ability, on a timely basis and in accordance with generally accepted industry and professional standards. In performing the Services Consultant is responsible for producing results that are satisfactory to the Customers of CIS. Notwithstanding the foregoing, the means, manner and method by which the Services shall be performed shall be within the sole control of Consultant, and CIS expressly does not and shall not assume responsibility for such control.

### Compliance with HSE and Drug Testing Policies/Programs.

7. **HSE Compliance**.   Consultant is required to perform the Services consistent with the health, safety and environment ("HSE") policies, procedures and requirements of the Customers.   CIS has developed HS&E policies and procedures that incorporate the HSE requirements of its Customers and provides guidance for the safe completion of the Services.

8. **Controlled Substances Policy Compliance**. Consultant is required to perform the Services consistent with the drug, alcohol, drug/alcohol testing and worker search policies and procedures of the Customers ("Drug/Alcohol Program"). CIS has developed policies and procedures

Exhibit 2 - Page 43

that incorporate the requirements of the Drug/Alcohol Programs of its Customers (CIS Alcohol and Controlled Substances Policy)." Consultant agrees to join, and shall at all times during the term of this Agreement remain enrolled in, Company's drug and alcohol compliance program. By executing this Agreement Consultant hereby agrees to submit to any drug or alcohol testing and searches of his/her person and property as may be requested by CIS or its Customers from time to time pursuant to the CIS Alcohol and Controlled Substances and Customer Policy Drug/Alcohol Programs.

## Compliance with Law and Ethics Requirements

9.      **Compliance with Laws**. Consultant shall at all times perform the Services in accordance with state, federal and local laws, rules and regulations that are applicable or that may become applicable to the work being performed by Consultant, including, but not limited to, all laws pertaining to health, safety and environmental protection. Consultant further represents and warrants that Consultant has knowledge of and experience with such state, federal and local laws, rules and regulations applicable to taxation of Independent Contractors, and the filing and payment requirements associated therewith, as applicable to Independent Contractors providing similar services.

10.      **Ethics Compliance**. Consultant acknowledges and agrees that Consultant shall be bound and abide by and strictly comply with both the letter and the spirit of the United States Foreign Corrupt Practices Act of 1977 and all amendments thereto as the same is from time to time in force in the United States of America; the Organization for Economic Cooperation and Development Anti-Bribery Convention and all other applicable anti-bribery and anti-corruption laws. Without limiting the foregoing, Consultant shall at all times perform the Services in an ethical manner and shall not accept money, gifts, favor or any other compensation for personal or professional gain for performance of the Services other than the compensation provided for in Paragraphs 12-13 of this Agreement. Consultant further agrees to refrain from making any payments, commission or kickbacks or giving any thing of value to any representative of the Customers, government officials or any other person for the purpose of influencing any decision, determination or other matter related to the Services performed for the Customers of CIS, including, but not limited to assignment of work to CIS or Consultant or approval of the Services performed by Consultant.

## Confidential Information

11.      In the course of performing Services under this Agreement, Consultant will become knowledgeable with respect to confidential information regarding the operations, processes and procedures of CIS and its Customers which if revealed to the competitors of CIS and its Customers would cause irreparable harm. Accordingly, Consultant hereby agrees as follows:

a.  **Trade Secrets and Confidential Information**. Consultant hereby agrees not to disclose to anyone the trade secrets and/or confidential information of CIS or the Customers which are learned or acquired as a result of engagement Consultant pursuant to this Agreement. Such trade secrets and/or confidential information include, but is not limited to, technical and design information regarding any Services or customer project, Customer information (e.g., customer names, contact persons, addresses, requirements,

Exhibit 2 - Page 44

credit information, pricing information and purchasing histories), customer lists, market studies and research, logs, well reports, seismic data, business opportunities and transactions, materials, drawings, designs, photographs, processes of manufacture, financial data, information regarding any CIS or Customer employees, marketing techniques, marketing strategies, business plans, sales methods, operating methods and techniques, operating and pricing policies, supplier information (e.g., supplier names, contact persons, addresses, pricing and supply histories), information regarding personnel and equipment used, business records of any type and any other information regarding CIS or Customer business or the Customer project or Services which is not known to the general public. Such confidential information or trade secrets may be written or unwritten and may be in electronic format and specifically includes, but is not limited to, any writings, reports or memoranda or documents of any kind prepared or received by Consultant in connection with his engagement to perform the Services.

b. **Obligation to Maintain Confidentiality of Information.** Consultant will not at any time, both during and after the term of this Agreement, publish or disclose to any person, firm, corporation or other entity or use for Consultant's own benefit or that of any other person, firm or corporation or other entity, any trade secret or confidential information of CIS or the Customers and shall return to CIS and/or the Customers all such confidential information in his/her possession immediately upon the termination of the engagement by the Customer. If at any time Consultant is served with any subpoena or other legal demand or request to produce documents or testimony relating to any such trade secrets or confidential information, Consultant shall immediately notify CIS of such demand or request. Upon termination of this Agreement, all confidential information regarding CIS or its Customers held by the Consultant must be collected and returned to CIS. This includes all electronic and print versions of confidential information.

c. **Intellectual Property Rights.** Unless otherwise expressly agreed by and between Consultant and the CIS customer for whom the Services shall be provided, all ideas, improvements, new uses, know-how and inventions, whether patentable or unpatentable, that Consultant may make, conceive, invent or produce or reduce to practice while engaged in performing Services for the Customers ("Inventions") shall be the sole and exclusive property of the CIS Customer for whom the Services shall be provided. Consultant will sign and execute all papers and do all acts necessary to assign and transfer to the CIS customer all rights, title and interest to said Inventions applications for patents or copyrights in the United States or in foreign countries and thereafter Consultant will do all things necessary to sustain such applications, patents and assignments as may be directed by the CIS customer.

d. **Individual Pay Rates are Confidential.** Consultant agrees to hold in confidence all information related to compensation rates including allowances, premiums, and compensation packages. Consultant agrees not to share such information with anyone except personnel assigned to administer the applicable work order.

e. **Remedies.** Consultant acknowledges and agrees that any breach of the obligations set forth in this Paragraph 11 will cause CIS and its Customers to suffer irreparable harm not compensable through monetary damages alone and that CIS and its Customers may seek and obtain a temporary restraining order, preliminary and/or permanent injunction from a court requiring Consultant to abide by the terms of this Agreement, in addition to

CIS-QF-15 REV 5.0

Exhibit 2 - Page 45

recovery of any monetary damages caused by any such breach. Consultant also agrees to pay the litigation costs, including reasonable attorney fees, incurred by CIS or its Customer in enforcing a breach of such proprietary information obligations in the event that any court or arbitrator determines that Consultant has breached these obligations.

## Consultant Compensation and Expenses

12.   **Compensation.** CIS shall pay Consultant the daily or hourly rate of pay set by each Customer as reflected on Exhibit "A" attached to this Agreement. Consultant's rate of pay may be amended from time to time by CIS at the request of the Customer. Consultant shall only be paid for actual hours worked by the Consultant and for Services that produce results that are satisfactory to the Customer, as verified by a timesheet signed by an authorized representative of the Customer.    Payment for actual Services performed by Consultant and approved by the Customer shall be the sole and exclusive compensation owed to Consultant and no other compensation of any kind shall be owed to Consultant. CIS will not withhold or pay any federal, state or local income or payroll tax of any kind on the Consultant payments. In order to receive payment for Services performed Consultant must submit an approved field service ticket timely.

13.   **Expenses and overpayment.** CIS shall reimburse Consultant for expenses incurred by Consultant in the performance of the Services as authorized by the Customer under the terms of the attached Exhibit "A" for each Customer (hereinafter "Authorized Expenses"). Notwithstanding the foregoing, Consultant expressly acknowledges and agrees that Consultant is solely responsible for all expenses incurred during performance of the Services except as set forth above.  If inadvertent overpayment to consultant occurs by CIS, consultant agrees to notify CIS and promptly arrange to repay CIS the overage.

## Insurance

14.   **Insurance.**   CIS will be responsible for carrying worker's compensation insurance coverage and any other insurance coverage that is required by the Customer pursuant to the terms of the MSA covering the Services performed by Consultant pursuant to this Agreement. Consultant agrees to carry automobile liability insurance in the minimum amount of $25,000/$50,000/$25,000 and to furnish a certificate to CIS evidencing such insurance coverage.

## Merger of Negotiations

15.   **Entire Agreement.**   This Agreement and its attachments constitute the entire agreement between Consultant and CIS. There is no statement, promise, agreement or obligation in existence that may conflict with the terms of this Agreement or may modify, enlarge, or invalidate this Agreement or any provisions hereof.

## Assignment

16.   **Assignment by Consultant.** The parties agree that this Agreement is personal to Consultant and cannot be assigned by without the written consent of CIS.

CIS-QF-15 REV 5.0

Exhibit 2 - Page 46

17.     **Assignment by CIS.**  CIS may assign this Agreement to any of its affiliated companies without the consent of Consultant.  CIS shall provide written notice to Consultant advising of any such assignment.

## Amendment and Waiver

18.     **General Amendment.**  The provisions of this Agreement may be amended only by a written document signed by both Consultant and an authorized representative of CIS setting forth such alteration or amendment.

19.     **Waiver of Breach.**  CIS and Consultant agree that the failure to enforce any provision or obligation under this Agreement shall not constitute a waiver thereof or serve as a bar to the subsequent enforcement of such provision or obligation under this Agreement.

## Dispute Resolution

20.     **Arbitration.**  All claims, disputes or controversies arising out of, in connection with or in relation to this Agreement or the Services, including any and all issues of arbitration of such claim, dispute or controversy (hereinafter "Dispute"), and regardless of whether the Dispute is based or claimed to be based in whole or in part on a claim by either Party of breach of this Agreement shall be subject to the following dispute resolution procedure:

a.  Notice.  In the event that a Dispute arises between Consultant and CIS, and/or between Consultant and a CIS Customer, Consultant shall immediately notify CIS of such Dispute in writing in order to provide CIS an opportunity to informally resolve the Dispute.

b.  Mediation.  In the event that the informal dispute resolution efforts set out in 20 (a) above fail to settle the Dispute between Consultant and CIS within 30-days of such written notice the parties shall submit the Dispute to formal mediation which shall be conducted by the American Arbitration Association ("AAA") in Houston, Texas in accordance with the AAA Construction Industry Rules for Mediation then in effect.

c.  Arbitration.  In the event that the mediation fails to settle the Dispute, then, subject to Article 20 (d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect. Such arbitration shall be conducted before a single arbitrator in Houston, Texas.  The arbitrator shall apply Texas law, exclusive of its principles of conflicts of laws for the determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue.  The Arbitrator shall have the power to award reasonable attorneys fees, costs and expenses to the prevailing party in any such arbitration proceeding.

d.  Joinder.  Consultant expressly agrees to be joined as a party in any arbitration between CIS and a CIS Customer or to have any arbitration between Consultant and CIS

Exhibit 2 - Page 47

consolidated with any arbitration between CIS and a CIS Customer that arises out of, relates to or is in connection with any Services provided by Consultant and Consultant hereby waives any objection to such joinder or consolidation.  In the event of such consolidation or joinder, the parties agree that such arbitration shall be conducted in accordance with the arbitration rules set forth in the applicable MSA and shall be governed by the choice of law set forth in the applicable MSA.

## Survival of Covenants

21.     This Agreement shall be binding upon any successors of heirs or representatives of the parties hereto.  The covenants and promises of the Consultant contained in this Agreement shall survive any termination of this Agreement by either party regardless of whether such termination is with or without cause, including the provisions contained in Articles 6, 11, 20, 22 and 23.

## Governing Law

22.     To the extent that maritime activities are involved in the performance of this Agreement, then this Agreement shall be interpreted and construed in accordance with United States General Maritime law excluding any conflicts of laws principles which would direct the substantive law of another jurisdiction to apply. To the extent that Maritime Law is inapplicable, the laws of the State of Texas, exclusive of its principles of conflicts of laws, shall control the validity, construction and interpretation of this Agreement.

## Indemnity

23.     Consultant shall be liable in any case of illness, injury or death to Consultant in any case of loss or damage to Consultant's property arising out of or relating to the Agreement or the performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS or CIS CUSTOMER's NEGLIGENCE (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE OR STRICT LIABILITY** and Consultant shall defend, protect, indemnify and hold harmless CIS, its parent, subsidiary and affiliated companies and all of their officers, directors, employees and representatives and Customers from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees) on account of such illness, injury, death, loss or damage.

## Severability

Exhibit 2 - Page 48

24.     If any provision of this Agreement is determined to be invalid by any court or arbitrator in a final decision from which no appeal is or can be taken such provision shall be deemed modified to eliminate the invalid element, and as so modified such provision shall be deemed a part of this Agreement.  If it is not possible to modify any such provision to eliminate the invalid element, such provision shall be deemed eliminated from this Agreement.   The invalidity of any provision of the Agreement shall not affect the force and effect of the remaining provisions.

## Notices and Written Consents

25.     All written notices and consents to be given by CIS to Consultant pursuant to this Agreement may be made either by personal delivery, by registered or certified mail, express mail delivery, facsimile or e-mail using the information provided by Consultant below.  All written notice to CIS shall be made either by personal delivery, registered, certified or express mail, or facsimile as follows:

Exhibit 2 - Page 49

Cenergy International Services
Attn: June Ressler
12650 Crossroads Park Drive
Houston, TX 77065
Fax: 713-965-6204

Notice shall be considered communicated as of the date it is actually received.  Consultant shall be responsible for providing CIS with current address and other contact information. By signing below, consultant admits that he/she is free to enter into this contract.

Agreed to this __1st__ day of __November__ __2013__

IN WITNESSES WHEREOF, the undersigned parties have executed this Cenergy International Services Consultant Agreement on the date first written above.

_____          01 NOV 2013
Signature of Consultant                          Date

Chris Jones
Print Name

Chris Jones DSM, LLC                         ███████████
Incorporated Name (if applicable)            FIN# (if applicable)

███████████                                  Missouri
Consultant's Drivers License#                State of Issuance

███████████                                  Arnold, Missouri 63010
Consultant's Address                         City, State, Zip

███████████                                  ███████████
Consultant's Home #                          Mobile #

███████████
Consultant's Email Address

_____          _____
June Ressler                                     Date
President / Cenergy International Services, LLC

CIS-QF-15  REV 5.0

Exhibit 2 - Page 50

## CENERGY INTERNATIONAL SERVICES, L.L.C.
## CONSULTANT AGREEMENT

### EXHIBIT A

I hereby agree to the terms of the contract and understand that additional expenses not mentioned in this exhibit must be agreed to by a company supervisor in writing. I also agree that the expenses and pay rate(s) on the Rate Card are subject to change pursuant to supervisor mandate.

_____          01 NOV 2018
Signature of Consultant                            Date

Chris Jones
Print Name

Drilling & Completions                Chevron
Grid Job                                        Company

### RATE CARD

| Consultant Pay Rate | Onshore Rate | $1,324.24/day | |
|---|---|---|---|
| | Offshore Rate | $XXX | |
| | Office Rate | $XXX | |
| | Expense | Y/N | Amount/Unit |
| Allowable Expenses | Hotel | Yes:☒  No:☐ | Reimbursed at cost with Supervisor approval and receipts when required to stay overnight for training or meeting purposes. |
| | Per Diem | Yes:☒  No:☐ | $25/day |
| | Airfare | Yes:☒  No:☐ | For Chevron required travel. Reimbursed at cost with receipts and advance supervisor approval. Must use lowest fare/class. Must book two weeks in advance. |
| | Mileage | Yes:☒  No:☐ | $0.87/mile |
| Special Instances | | | |

CIS-QF-15 REV 5.0

Exhibit 2 - Page 51

# EXHIBIT D

Exhibit 2 - Page 52



**CENERGY INTERNATIONAL SERVICES, LLC**
**CONTRACTOR MASTER SERVICE AGREEMENT**

This Master Service Agreement (hereafter "Agreement") is made and entered into this **28th** day of **April**, **2014** by and between **Cenergy International Services, L.L.C.** (hereafter "CIS") and **"[Drilling Consultants, Inc.]**(hereafter "Contractor").

## Recitals

Whereas CIS is engaged in the business of identifying and furnishing professional service companies to its Customers in the petroleum exploration and production industry;

Whereas CIS desires to contract with Contractor as an independent contractor to provide certain professional services (hereinafter the "Services") as may be requested by its customers (hereinafter "Customer" or "Customers") from time to time pursuant to certain master service agreements (hereinafter "MSA") between CIS and it Customers;

The parties hereby agree as follows:

## Initial Representations

1. Contractor represents and warrants to CIS, as of the Effective Date, that:

(a) Contractor is a corporation or LLC duly organized, validly existing and in good standing under the laws or the jurisdiction of its organization.

(b) Contractor has full corporate or company power and authority to enter into and perform this Contract, and has taken all actions necessary to authorize its execution and delivery of this Contract

(c) This Contract has been duly executed and delivered by its authorized officer or other representative and constitutes its legal, valid and binding obligation enforceable in accordance with its terms, and no consent or approval of any other Person is required in connection with its execution, delivery and performance.

(d) Contractor understands the nature and scope of the Services required by this Contract and all relevant matters which may affect or govern the provision of the Services, including all of the matters listed below:

(i) The geographic, climatic, weather, economic, security, political and cultural conditions prevailing in the area in which the Services are to be provided.

Exhibit 2 - Page 53

(ii)   The availability and quality of third-party services, labor, material, transportation, equipment and facilities in the area in which the Services are to be provided.

(iii)   The rules, regulations, statutory guidelines, orders, ordinances, codes, policies and laws which have legal force to this Agreement and    to the provision of the Services.

## Continuing Representations

2.   Contractor represents and warrants to CIS all of the following, as of the Effective Date and on a continuing basis during the effectiveness of this Contract:

(a.) Contractor and Contractor personnel have the technical competence, financial capacity, management skills, resources and equipment necessary to perform their obligations under this Contract.

(b.) Contractor personnel to be used to perform the Services are competent, qualified, fit for duty and skilled for the purpose of performing the Services as required by this Contract.

(c.) Contractor and Contractor personnel are at all relevant times in compliance with all requirements of this Contract, and have obtained all necessary licenses, permits, consents, approvals and other authorizations.

## Term of Engagement and Termination

3.   The initial term of this Agreement shall be a period of one (1) year starting from the date of the execution of this Agreement by both parties.  The Agreement shall automatically renew for an additional one (1) year period upon the expiration of the initial term, or any renewal thereof, unless either party provides written notice to the other party 30 days before the expiration of the initial term, or any renewal term, that the Agreement shall not be renewed.

Either party may terminate this Agreement immediately and without advance notice for cause in the event of a breach of this Agreement by the other party by providing written notice to the other party.

Either party may terminate this Agreement without cause by providing 30 days written notice of their intent to terminate this Agreement to the other party.

## Services to be Performed by Contractor

4.   Contractor is hereby engaged as an independent contractor for the purpose of performing the Services, which shall generally consist of performing professional services for which it and its personnel are qualified and trained  and as may be  requested by CIS Customers at job sites and locations requested by Customers. Contractor is not required to accept any particular opportunity offered by CIS, but if Contractor agrees to perform certain Services Contractor shall be required to complete the Services required to the satisfaction of the Customer.  CIS may offer

Exhibit 2 - Page 54

certain Work Order assignments to Contractor but nothing in this Agreement shall require CIS to offer Contractor any specific number of assignments. The parties acknowledge that this Agreement is non-exclusive, such that Contractor may perform professional services for other customers and clients and CIS may engage other Contractors to perform professional services for its Customers.

Contractor agrees that while engaged in work for CIS Customers Contractor will perform the Services to the best of Contractor's ability, on a timely basis and in accordance with generally accepted industry and professional standards. In performing the Services Contractor is responsible for producing results that are satisfactory to the Customers of CIS. Notwithstanding the foregoing, the means, manner and method by which the Services shall be performed shall be within the sole control of Contractor, and CIS expressly does not and shall not assume responsibility for such control.

Contractor is solely responsible, at its own expense, for providing all materials, equipment (including vehicles and vessels), other services, personnel, supervision and expertise necessary to perform the Services as required by this Contract, unless otherwise agreed by the Parties.

### Independent Contractor Status

5. Contractor hereby certifies that its employee(s) are properly trained and qualified and that its employee(s) hold all required training, licensure or other certifications and has the necessary work experience required for the performance of services in their profession, trade or occupation. CIS and Contractor hereby agree that Contractor has been contracted by CIS as an independent contractor to perform the Services pursuant to this Agreement. In this regard, CIS and Contractor acknowledge and agree to the following:

(a) CIS is only interested in the results obtained under this Agreement and the performance of the Services by Contractor to the satisfaction of its Customers. Contractor shall have control over the means, manner and method by which the Services are to be performed. CIS shall not be responsible for directing the day-to-day activities of Contractor while performing the Services. The means, manner and method by which the Services are to be performed shall be determined in accordance with Contractor's independent professional judgment.

(b) Contractor shall furnish all necessary personal tools and equipment to be used in the performance of the Services.

(c) This Agreement shall be non-exclusive, such that Contractor shall have the right to perform professional services for other principals and clients during the term of this Agreement.

(d) As an independent contractor, Contractor shall be responsible for the payment of all state and federal income tax and other applicable taxes with respect to any compensation paid by CIS to Contractor pursuant to this Agreement. CIS will not make any tax withholdings from these payments. Contractor shall be solely responsible for the filing of his corporate tax return, and payment of all taxes owed with respect to these payments. Contractor shall be solely

Exhibit 2 - Page 55

responsible and liable for the payment of salary and other compensation to its employees and for all associated payroll and related taxes, including specifically W-2 payments. In addition, Contractor shall properly classify all of its employees, and appropriately pay such employees applicable overtime if required. Contractor agrees to defend, indemnify, and hold CIS and its Customers harmless from and against any and all claims by local, state, or federal government authorities for any taxes owed or claimed to be owed as a result of, or arising under this Agreement or the Services provided, as well for any claims for penalties, or attorney fees and costs that might be associated therewith. Further, Contractor agrees to defend, indemnify, and hold CIS and its Customers harmless for any claims for overtime from Contractor's employees or personnel, as a result of, or arising under this agreement or the services provided, as well as any claims for penalties or attorney fees, and costs that might be associated therewith, pursuant to overtime issues.

(e) Contractor warrants and represents to CIS that Contractor is fully compliant with the tax reporting requirements of all local, state and federal agencies, and that Contractor is timely filing and paying all associated such obligations as they are being accrued. In the event of an audit or any type of formal request or inquiry of CIS or its Customers by any local, state or federal agency, Contractor agrees to promptly provide, upon reasonable notice, all filings and documentation evidencing Contractor's compliance with any such filing and payment obligations. Contractor agrees to maintain all documentation associated with such filing and payment obligations for a period of not less than 7 (seven) years following the termination of this Agreement. All costs associated with the production of such documentation shall be the responsibility of Contractor.

(f) Contractor is responsible for maintaining and updating at Contractor's own cost any required licensure, continuing education, technical certification and training, safety training and other certifications for it and its employee(s) as may be required by federal, state or local law or by CIS Customers in order for the Contractor employee(s) to perform the Services. Upon request Contractor will provide CIS with documentation verifying that Contractor and/or its employee(s) are in compliance with any such required licensure, training or other certification requirements. If additional training is provided to Contractor or its employee(s) by CIS Customer and Contractor voluntarily terminates the its services or the services of a "trained" employee, within 90 days of receiving Customer training, Contractor will be responsible for such training fees if demand is made by CIS Customers.

(g) Neither Contractor nor its employee(s) shall be considered an agent of CIS or its Customers for any purpose whatsoever and has no authority to assume or create any obligation or liability on behalf of CIS or its Customers or to legally bind CIS or its Customers in any manner whatsoever.

## Requirements of Contractor

6.      Contractor is responsible, at its own expense, for providing its employee(s) any required life saving and personal protective equipment (PPE) required to perform the job.

## Compliance with HSE and Drug Testing Policies/Programs

Exhibit 2 - Page 56

7.      Contractor warrants that it and its employee(s) will comply with and perform the Services consistent with the health, safety and environment ("HSE") policies, procedures and requirements of the Customers. Contractor further warrants that prior to commencement of any Services it will obtain from the Customer all applicable health, safety and environment ("HSE") policies, procedures and requirements of the Customer, and familiarize itself and its employee(s) with them.

8.      Contractor warrants that it and its employees will comply with and perform the Services consistent with the drug, alcohol, drug/alcohol testing and worker search policies and procedures of the Customers ("Drug/Alcohol Program"). Contractor agrees to join, and to have its employees join, and shall at all times during the term of this Agreement remain enrolled in, CIS' drug and alcohol compliance program. By executing this Agreement, Contractor hereby agrees to require any of its employee(s) providing Services hereunder, to consent to any drug or alcohol testing and searches of his/her person and property as may be requested by CIS or its Customers from time to time pursuant to the applicable Alcohol and Controlled Substances and Customer Policy Drug/Alcohol Programs.

## Compliance with Law and Ethics Requirements

9.      Contractor warrants that it shall at all times perform the Services in accordance with state, federal and local laws, rules and regulations that are applicable or that may become applicable to the work being performed by Contractor, including, but not limited to, all laws pertaining to health, safety and environmental protection. Contractor further represents and warrants that Contractor has knowledge of and experience with such state, federal and local laws, rules and regulations applicable to taxation of Independent Contractors, and the filing and payment requirements associated therewith, as applicable to Independent Contractors providing similar services.

10.     Contractor acknowledges and agrees that Contractor shall be bound and abide by and strictly comply with both the letter and the spirit of the United States Foreign Corrupt Practices Act of 1977 and all amendments thereto as the same is from time to time in force in the United States of America; the Organization for Economic Cooperation and Development Anti-Bribery Convention and all other applicable anti-bribery and anti-corruption laws. Without limiting the foregoing, Contractor and its employee(s) shall at all times perform the Services in an ethical manner and shall not accept money, gifts, favor or any other compensation for personal or professional gain for performance of the Services other than the compensation provided for in Paragraphs 12-13 of this Agreement. Contractor further agrees to refrain from making any payments, commission or kickbacks or giving any thing of value to any representative of the Customers, government officials or any other person for the purpose of influencing any decision, determination or other matter related to the Services performed for the Customers of CIS, including, but not limited to assignment of work to CIS or Contractor or approval of the Services performed by Contractor.

## Data Privacy

11.     Contractor will comply with all reasonable requests of CIS and Customer with respect to protecting personal data of  Customer employees, customers, and suppliers it receives in connection with its performance of the Services, including following Customer's instructions in

Exhibit 2 - Page 57

connection with processing such personal data; implementing adequate security measures to protect such personal data; not disclosing such personal data to any third party without Customer's written permission; and complying with all applicable data privacy laws.

## Confidential Information

12.    In the course of performing Services under this Agreement, Contractor will become knowledgeable with respect to confidential information regarding the operations, processes and procedures of CIS and its Customers which if revealed to the competitors of CIS and its Customers would cause irreparable harm.  Accordingly, Contractor hereby agrees as follows:

(a)    **Trade Secrets and Confidential Information**.  Contractor hereby agrees not to disclose to anyone the trade secrets and/or confidential information of CIS or the Customers which are learned or acquired as a result of engagement of Contractor pursuant to this Agreement.  Such trade secrets and/or confidential information include, but is not limited to, technical and design information regarding any Services or Customer project, Customer information (e.g., customer names, contact persons, addresses, requirements, credit information, pricing information and purchasing histories), customer lists, market studies and research, logs, well reports, seismic data, business opportunities and transactions, materials, drawings, designs, photographs, processes of manufacture, financial data, information regarding any CIS or Customer employees, marketing techniques, marketing strategies, business plans, sales methods, operating methods and techniques, operating and pricing policies, supplier information (e.g., supplier names, contact persons, addresses, pricing and supply histories), information regarding personnel and equipment used, business records of any type and any other information regarding CIS or Customer business or the Customer project or Services which is not known to the general public.  Such confidential information or trade secrets may be written or unwritten and may be in electronic format and specifically includes, but is not limited to, any writings, reports or memoranda or documents of any kind prepared or received by Contractor in connection with his engagement to perform the Services.

(b)    **Obligation to Maintain Confidentiality of Information**.  Contractor will not at any time, both during and after the term of this Agreement, publish or disclose to any person, firm, corporation or other entity or use for Contractor's or its employees own benefit or that of any other person, firm or corporation or other entity, any trade secret or confidential information of CIS or the Customers and shall return to CIS and/or the Customers all such confidential information in its or its employees possession immediately upon the termination of the engagement by the Customer.  If at any time Contractor or one or more of its employees is served with any subpoena or other legal demand or request to produce documents or testimony relating to any such trade secrets or confidential information, Contractor shall immediately notify CIS of such demand or request. Upon termination of this Agreement, all confidential information regarding CIS or its Customers held by the Contractor must be collected and returned to CIS. This includes all electronic and print versions of confidential information.

Exhibit 2 - Page 58

(c)      **Intellectual Property Rights.**   Unless otherwise expressly agreed by and between Contractor and the CIS Customer for whom the Services shall be provided, all ideas, improvements, new uses, know-how and inventions, whether patentable or un-patentable, that Contractor or its employee(s) may make, conceive, invent or produce or reduce to practice while engaged in performing Services for the Customers ("Inventions") shall be the sole and exclusive property of the CIS Customer for whom the Services shall be provided. Contractor and its employees will sign and execute all papers and do all acts necessary to assign and transfer to the CIS customer all rights, title and interest to said Inventions applications for patents or copyrights in the United States or in foreign countries and thereafter Contractor will do all things necessary to sustain such applications, patents and assignments as may be directed by the CIS Customer.

(d)      **Individual Pay Rates are Confidential.**   Contractor agrees to hold in confidence all information related to compensation rates including allowances, premiums, and compensation packages. Contractor agrees not to share such information with anyone except employee(s) assigned to administer the applicable work order.

(e)      **Remedies.**   Contractor acknowledges and agrees that any breach of the obligations set forth in this Paragraph 12 will cause CIS and its Customers to suffer irreparable harm not compensable through monetary damages alone and that CIS and its Customers may seek and obtain a temporary restraining order, preliminary and/or permanent injunction from a court requiring Contractor to abide by the terms of this Agreement, in addition to recovery of any monetary damages caused by any such breach. Contractor also agrees to pay the litigation costs, including reasonable attorney fees, incurred by CIS or its Customer in enforcing a breach of such proprietary information obligations in the event that any court or arbitrator determines that Contractor has breached these obligations.

(f)      **Confidentiality of Contract Information.**   Contractor shall treat Contract Information as valuable, proprietary and confidential information and shall not disclose, and shall ensure that all employees of Contractor do not disclose, any Contract Information to any other Person without the prior written consent of CIS.

### Contractor Compensation and Expenses

**CONTRACTOR ACKNOWLEDGES AND AGREES THAT INVOICES SUBMITTED TO CENERGY FOR TIME MORE THAN 85 DAYS AFTER THE SERVICES WERE RENDERED FOR WHATEVER REASON WILL NOT BE PAID UNDER ANY CIRCUMSTANCES.**

13.      Subject to the terms and conditions of this Contract, CIS shall pay Contractor as full compensation for the Services performed by Contractor in accordance with Exhibit A and the applicable Service Order. Contractor shall only be paid for actual hours worked by Contractor employee(s) and for Services that produce results that are satisfactory to the Customer, as verified by timesheets signed by an authorized representative of the Customer. Payment for actual Services performed by Contractor employees and approved by the Customer shall be the sole and exclusive compensation owed to Contractor and no other compensation of any kind shall be owed to Contractor. CIS will not withhold or pay any federal, state or local income or

Exhibit 2 - Page 59

payroll tax of any kind on the Contractor payments. In order to receive payment for Services performed Contractor must submit approved field service tickets timely.

(a) **Contractor's Invoices.** Contractor shall deliver paper invoices to the address set out in a Service Order or as otherwise provided by CIS Electronic invoices shall be submitted by Contractor, if requested by CIS, in accordance with CIS' electronic invoicing process and include the required information necessary for processing and payment of each invoice.

To the extent requested by CIS (subject to applicable laws and regulations), Contractor shall separately state, re-phrase, combine or separately invoice items in order to minimize the amount of value-added tax, goods and services tax, sales tax     or     other     taxes     which Contractor is required by law to collect or for which it will seek reimbursement from CIS (including any tax that may be assessed against CIS but collected by Contractor) applicable to any transaction under this Contract.

Contractor, by delivering an invoice, represents and warrants that its invoice and all documents submitted in support of its invoice (including third party invoices, vouchers, financial settlements, billings and reports) are true and correct.

(b) **Invoices Shall Include.**

    (i).    The title and number of this Contract and/or the applicable Service Order.

    (ii).    The amount due.

    (iii).    Contractor's work ticket signed by a Customer Representative evidencing performance of the Services.

    (iv).    Contractor's tax registration number.

    (v).    If applicable, Contractor shall provide to CIS' satisfaction a detailed explanation to support its charges, including hours worked, itemized expense accounts (with support vouchers), third party invoices, specific details of all other reimbursable costs incurred and any other requested information.

(c) **Payment Timing.** CIS shall pay undisputed invoice amounts within thirty days from CIS, receipt of the invoice.  Additional terms concerning an accelerated payment program may be set out in Exhibit "A".

(d) **Right to Withhold Payments.** If CIS disputes all or part of an invoice, CIS shall notify Contractor of the Dispute and pay the undisputed portion. If CIS notifies Contractor of a Dispute in relation to part of an invoice, CIS may withhold the disputed portion until the Dispute is resolved.

(e) **No Waiver of CIS' Rights**. The payment of, objection to or failure to object to any invoice, or any payment or settlement in resolution of any Dispute, or any combination of these matters does not constitute acceptance by CIS of the accuracy or justification of Contractor's

Exhibit 2 - Page 60

invoices. Any payment by CIS is made on the condition that CIS reserves the right to challenge, at a later time, the validity of any invoiced amount.

(f) **Expenses and overpayment.** CIS shall reimburse Contractor for expenses incurred by Contractor in the performance of the Services as authorized by the Customer under the terms of the attached Exhibit "A" for each Customer (hereinafter "Authorized Expenses"). Notwithstanding the foregoing, Contractor expressly acknowledges and agrees that Contractor is solely responsible for all expenses incurred during performance of the Services except as set forth above. If inadvertent overpayment to Contractor occurs by CIS, Contractor agrees to notify CIS and promptly arrange to repay CIS the overage.

## Insurance

14.     CIS will be responsible for carrying insurance coverages that may be required by the Customer pursuant to the terms of the MSA covering the Services performed by Contractor pursuant to this Agreement, including worker's compensation, and agrees to name and waive Contractor as an additional insured under these policies of insurance. Contractor agrees to carry automobile liability insurance in the minimum amount of $25,000/$50,000/$25,000 and to furnish a certificate to CIS evidencing such insurance coverage.

## Indemnity

15.     Contractor shall be liable for any claim arising out of any illness, injury or death to Contractor employees, agents or vendors, or for any claim arising out of any loss or damage to the property of Contractor, its employees agents or vendors arising out of or relating to the Agreement or the performance of the Services under this Agreement and **REGARDLESS OF WHETHER CAUSED OR BROUGHT ABOUT BY CIS or CIS CUSTOMER's NEGLIGENCE OR FAULT (INCLUDING ACTIVE, PASSIVE, SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, INCLUDING BREACH OF WARRANTY, BREACH OF AGREEMENT, STATUTE OR STRICT LIABILITY** and Contractor shall defend, protect, indemnify and hold harmless CIS, its parent, subsidiary and affiliated companies and all of their officers, directors, employees and representatives and Customers from and against any loss, cost, claim, obligation to indemnify another, suit, judgment, award or damage (including reasonable attorney's fees and costs) on account of such illness, injury, death, loss or damage.

## Merger of Negotiations

16. **Entire Agreement.** This Agreement and its attachments constitute the entire agreement between Contractor and CIS. There is no statement, promise, agreement or obligation in existence that may conflict with the terms of this Agreement or may modify, enlarge, or invalidate this Agreement or any provisions hereof.

## Assignment

Exhibit 2 - Page 61

17.    **Assignment by Contractor.**  The parties agree that this Agreement cannot be assigned by Contractor without the written consent of CIS.

18.    **Assignment by CIS.**  CIS may assign this Agreement to any of its affiliated companies without the consent of Contractor.  CIS shall provide written notice to Contractor advising of any such assignment.

### Amendment and Waiver

19.    **General Amendment.**  The provisions of this Agreement may be amended only by a written document signed by both Contractor and an authorized representative of CIS setting forth such alteration or amendment.

20.    **Waiver of Breach.**  CIS and Contractor agree that the failure to enforce any provision or obligation under this Agreement shall not constitute a waiver thereof or serve as a bar to the subsequent enforcement of such provision or obligation under this Agreement.

### Dispute Resolution

21.    **Arbitration.**  All claims, disputes or controversies arising out of, in connection with or in relation to this Agreement or the Services, including any and all issues of arbitration of such claim, dispute or controversy (hereinafter "Dispute"), and regardless of whether the Dispute is based or claimed to be based in whole or in part on a claim by either Party of breach of this Agreement shall be subject to the following dispute resolution procedure:

   (a) Notice.  In the event that a Dispute arises between Contractor and CIS, and/or between Contractor and a CIS Customer, Contractor shall immediately notify CIS of such Dispute in writing in order to provide CIS an opportunity to informally resolve the Dispute.

   (b) Mediation.  In the event that the informal dispute resolution efforts set out in 21 (a) above fail to settle the Dispute between Contractor and CIS within 30-days of such written notice the parties shall submit the Dispute to formal mediation which shall be conducted by the American Arbitration Association ("AAA") in Houston, Texas in accordance with the AAA Energy Industry Rules for Mediation then in effect.

   (c) Arbitration.  In the event that the mediation fails to settle the Dispute, then, subject to Article 20 (d) below, the Dispute shall be submitted to mandatory and binding arbitration conducted by the AAA in accordance with its Construction Industry Rules then in effect. Such arbitration shall be conducted before a single arbitrator in Houston, Texas.  The arbitrator shall apply Texas law, exclusive of its principles of conflicts of laws for the determination of the rights and remedies under the Agreement and for all aspects of the award hereunder, except to the extent that United States General Maritime law, exclusive of its principles of conflicts of laws governs the Dispute at issue.  The Arbitrator shall have the power to award reasonable attorneys fees, costs and expenses to the prevailing party in any such arbitration proceeding.

Exhibit 2 - Page 62

(d) <u>Joinder</u>. Contractor expressly agrees to be joined as a party in any arbitration between CIS and a CIS Customer or to have any arbitration between Contractor and CIS consolidated with any arbitration between CIS and a CIS Customer that arises out of, relates to or is in connection with any Services provided by Contractor and Contractor hereby waives any objection to such joinder or consolidation. In the event of such consolidation or joinder, the parties agree that such arbitration shall be conducted in accordance with the arbitration rules set forth in the applicable MSA and shall be governed by the choice of law set forth in the applicable MSA.

### Survival of Covenants

22.     This Agreement shall be binding upon any successors or heirs or representatives of the parties hereto. The covenants and promises of the Contractor contained in this Agreement shall survive any termination of this Agreement by either party regardless of whether such termination is with or without cause.

### Governing Law

23.     To the extent that maritime activities are involved in the performance of this Agreement, then this Agreement shall be interpreted and construed in accordance with United States General Maritime law excluding any conflicts of laws principles which would direct the substantive law of another jurisdiction to apply. To the extent that Maritime Law is inapplicable, the laws of the State of Texas, exclusive of its principles of conflicts of laws, shall control the validity, construction and interpretation of this Agreement.

### Severability

24.     If any provision of this Agreement is determined to be invalid by any court or arbitrator in a final decision from which no appeal is or can be taken such provision shall be deemed modified to eliminate the invalid element, and as so modified such provision shall be deemed a part of this Agreement. If it is not possible to modify any such provision to eliminate the invalid element, such provision shall be deemed eliminated from this Agreement. The invalidity of any provision of the Agreement shall not affect the force and effect of the remaining provisions.

### Notices and Written Consents

25.     All written notices and consents to be given by CIS to Contractor pursuant to this Agreement may be made either by personal delivery, by registered or certified mail, express mail delivery, facsimile or e-mail using the information provided by Contractor below. All written notice to CIS shall be made either by personal delivery, registered, certified or express mail, or facsimile as follows:

**Cenergy International Services**
**Attn: June Ressler**

Exhibit 2 - Page 63

12650 Crossroads Park Drive
Houston, TX 77065
Fax: 713-965-6204

Notice shall be considered communicated as of the date it is actually received. Contractor shall be responsible for providing CIS with current address and other contact information. By signing below, Contractor admits that he/she is free to enter into this contract.

Agreed to this __28th__ day of ___April___ , 2014

IN WITNESSES WHEREOF, the undersigned parties have executed this Cenergy International Services Contractor Agreement on the date first written above.

_____    Drilling Consultants, Inc.
**CONTRACTOR SIGNATURE**      **LLC or CORP NAME**

**Charles Patrick Beaty**
**BY: Print Name    ITS**      **Date**

_____    ████████
     **EIN#**

_____    _____
**Contractor License# (If Applicable)**      **State of Issuance**

**23081 Dart Drive**      **Bear Valley Springs, CA 93561**
**LLC or CORP Address**      **City, State, Zip**

████████
**Home # of Contractor Representative**      **Mobile # of Contractor Representative**

████████
**Contractor's Email Address**

**CENERGY INTERNATIONAL SERVICES,**

Exhibit 2 - Page 64

BY: June Ressler, President                    Date

Exhibit 2 - Page 65

EXHIBIT 3

# ARTICLES OF INCORPORATION

## OF

## SKAI CONSULTING, INC.

F I L E D
In the Office of the
Secretary of State of Texas

AUG 0 3 2012

**Corporations Section**

## ARTICLE I

The name of the Corporation is **SKAI CONSULTING, INC.**

## ARTICLE II

### DURATION

The period of its duration is perpetual.

## ARTICLE III

### PURPOSE

The purpose of the Corporation is to engage in any lawful act or activity for which a Corporation may be organized under the Texas Business Corporation Law of the State of Texas other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the State of Texas Corporations Code.

## ARTICLE IV

### AUTHORIZED CAPITAL STOCK

The total number of shares of which the Corporation shall have the authority to issue are one thousand (1,000) and the par value of each share shall be one dollar ($1.00).

## ARTICLE V

### ISSUANCE OF SHARES

The Corporation will not commence business until it has received for the issuance of share consideration of the value of a stated sum, which shall be at least one thousand dollars ($1,000.00).

1

Exhibit 3 - Page 66

## ARTICLE VI

### REGISTERED OFFICE/AGENT

The street address of the Corporation's initial registered office in the State of Texas is 2004 ACR 436, Frankston, Texas 75763 and the name of its initial registered agent at such address is: James O'Neal

## ARTICLE VII

### BOARD OF DIRECTORS

The number of directors constituting the initial Board of Directors of the Corporation is (2).

The name and address of each person who is to serve as members of the initial Board of Directors of the Corporation are as follows:

    President:  James O'Neal
                2004 ACR 436
                Frankston, Texas 75763

    Secretary/Treasurer: Rebecca O'Neal
                     2004 ACR 436
                     Frankston, Texas 75763

## ARTICLE VIII

### PROVISIONS

The provisions for the regulations of the internal affairs of the Corporation shall be as set forth in the bylaws.

IN WITNESS THEREOF, the undersigned incorporator has executed these Articles of Incorporation on this, the 24th of July, 2012.

Incorporator
Carmela Davis, CPA
714 N. High Street
Longview, Texas 75601

Exhibit 3 - Page 67

8/25/2016                          BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

# TEXAS SECRETARY of STATE
## CARLOS H. CASCOS

UCC |  Business Organizations |  Trademarks |  Notary |  Account |  Help/Fees |  Briefcase |  Logout

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 801635847 | **Entity Type:** | Domestic For-Profit Corporation |
| **Original Date of Filing:** | August 3, 2012 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | SKAI CONSULTING, INC. | | |
| **Address:** | 2004 AN COUNTY ROAD 436 | | |
| | FRANKSTON, TX 75763 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| **Name** | | **Address** | | **Inactive Date** | |
| James O'Neal | | ▆▆▆▆▆▆▆ | | | |
| | | Frankston, TX 75763 USA | | | |

[ Order ]  [ Return to Search ]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

Exhibit 3 - Page 68

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

UCC | **Business Organizations** | **Trademarks** | **Notary** | **Account** | **Help/Fees** | **Briefcase** | **Logout**

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 801635847 | **Entity Type:** | Domestic For-Profit Corporation |
| **Original Date of Filing:** | August 3, 2012 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | SKAI CONSULTING, INC. | | |
| **Address:** | 2004 AN COUNTY ROAD 436 | | |
| | FRANKSTON, TX 75763 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| **Last Update** | **Name** | **Title** | | **Address** | |
| December 25, 2015 | JAMES ONEAL | PRESIDENT | | 2004 AN COUNTY RD 436 FRANKSTON, TX 75763 USA | |
| December 25, 2015 | JAMES ONEAL | DIRECTOR | | 2004 AN COUNTY RD 436 FRANKSTON, TX 75763 USA | |
| December 25, 2015 | REBECCA ONEAL | SECRETARY | | 2004 AN COUNTY RD 436 FRANKSTON, TX 75763 USA | |
| December 25, 2015 | REBECCA ONEAL | DIRECTOR | | 2004 AN COUNTY RD 436 FRANKSTON, TX 75763 USA | |

[ Order ]   [ Return to Search ]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

Exhibit 3 - Page 69

# TEXAS SECRETARY of STATE
# CARLOS H. CASCOS

UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 801635847 | **Entity Type:** | Domestic For-Profit Corporation |
| **Original Date of Filing:** | August 3, 2012 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Duration:** | Perpetual | | |
| | | | |
| **Name:** | SKAI CONSULTING, INC. | | |
| **Address:** | 2004 AN COUNTY ROAD 436 | | |
| | FRANKSTON, TX 75763 USA | | |

REGISTERED AGENT    FILING HISTORY    NAMES    MANAGEMENT    ASSUMED NAMES    ASSOCIATED ENTITIES

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| | 435186460002 | Certificate of Formation | August 3, 2012 | August 3, 2012 | No | 2 |
| | 501073720001 | Public Information Report (PIR) | December 31, 2013 | September 7, 2013 | No | 1 |
| | 560696440001 | Public Information Report (PIR) | December 31, 2014 | August 12, 2014 | No | 1 |
| | 598976610002 | Change of Registered Agent/Office | March 27, 2015 | March 27, 2015 | No | 2 |
| | 646560420001 | Public Information Report (PIR) | December 31, 2015 | December 25, 2015 | No | 1 |

Order    Return to Search

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

Exhibit 3 - Page 70

SKACON 05/11/2015 7:55 PM

00027225243          **Filing Number: 801635847**

TX 2015      05-102
Ver. 6.0     (Rev.9-13/32)

# Texas Franchise Tax Public Information Report
To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions
**This report MUST be signed and filed to satisfy franchise tax requirements**

■ **Tcode 13196**

| ■ Taxpayer number | ■ Report year | You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381. |
|---|---|---|
| 32048665965 | 2015 | |

Taxpayer name
**SKAI CONSULTING, INC**                    ■ ☐ Check box if the mailing address has changed.

| Mailing address | Secretary of State (SOS) file number or Comptroller file number |
|---|---|
| **2004 AN COUNTY ROAD 436** | |

| City | State | ZIP Code | Plus 4 | |
|---|---|---|---|---|
| **FRANKSTON** | **TX** | **75763** | | 080165847 |

☐ Check box if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office | | |
|---|---|---|
| **2004 AN COUNTY ROAD 436** | **FRANKSTON** | **TX 75763** |

| Principal place of business | | |
|---|---|---|
| **2004 AN COUNTY ROAD 436** | **FRANKSTON** | **TX 75763** |

<u>Please sign below!</u>

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

3204866596515

### SECTION A  Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | m m d d y y |
|---|---|---|---|
| JAMES ONEAL | PRESIDENT | ☒ YES | Term expiration |

| Mailing address | City | State | ZIP Code |
|---|---|---|---|
| 2004 AN COUNTY RD 436 | FRANKSTON | TX | 75763 |

| Name | Title | Director | m m d d y y |
|---|---|---|---|
| REBECCA ONEAL | SECRETARY | ☒ YES | Term expiration |

| Mailing address | City | State | ZIP Code |
|---|---|---|---|
| 2004 AN COUNTY RD 436 | FRANKSTON | TX | 75763 |

| Name | Title | Director | m m d d y y |
|---|---|---|---|
| | | ☐ YES | Term expiration |

| Mailing address | City | State | ZIP Code |
|---|---|---|---|
| | | | |

### SECTION B  Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| NONE | | | |
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
| | | | |

### SECTION C  Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| NONE | | | |

| Registered agent and registered office currently on file (see instructions if you need to make changes) | ☐ Check box if you need forms to change the registered agent or registered office information. |
|---|---|
| Agent: | |
| Office: | City | State | ZIP Code |

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▶ *Rebecca Oneal* | Title Secretary | Date 05/11/2015 | Area code and phone number (903) 331-6034 |

**Texas Comptroller Official Use Only**

| VE/DE ☐ | PIR IND ☐ |
|---|---|

1022

Exhibit 3 - Page 71