1  Matthew C. Helland, CA SBN 250451
   helland@nka.com
2  Daniel S. Brome, CA SBN 278915
   dbrome@nka.com
3  NICHOLS KASTER, LLP
   One Embarcadero Center
4  Suite 720
   San Francisco, CA 94111
5  Telephone: (415) 277-7235
   Facsimile: (415) 277-7238
6

7  Attorneys for Plaintiffs and Others
   Similarly Situated
8

9              **IN THE UNITED STATES DISTRICT COURT**
10             **NORTHERN DISTRICT OF CALIFORNIA**

11 Christopher McQueen, James O'Neal, and     **Case No. 4:16-cv-02089-JSW**
   Donnie Cummings, on behalf of themselves and
12 others similarly situated, and on behalf of the   **PLAINTIFFS' MEMORANDUM IN**
   general public,                            **OPPOSITION TO DEFENDANTS'**
13                                            **MOTION TO COMPEL ARBITRATION,**
                        Plaintiffs,           **OR IN THE ALTERNATIVE, TO DISMISS**
14                                            **PLAINTIFF BOBBY RICHARDSON'S**
                                              **CLAIMS**
15         v.

16 Chevron Corporation, Chevron U.S.A., Inc.,
   and DOES 1-50, inclusive,
17                                            Date:        September 1, 2017
                        Defendants.           Time:        9:00 a.m.
18                                            Courtroom:   5, 2nd Floor

19                                            Action Filed: April 20, 2016

20

21

22

23

24

25

26

27

28

---

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This case has been conditionally certified and currently involves close to fifty[1] Plaintiffs. In three motions, Chevron seeks to compel 19 plaintiffs to arbitrate claims based on agreements with three third-party companies and stay their claims for the duration of arbitration. The Court should deny this request. The arbitration agreements are unconscionable and thus unenforceable under California law. Chevron was not a party to any of the arbitration agreements, and failed to establish that it has standing to enforce the agreements. These agreements (26 with Cenergy, 2 with EEP, 1 with Fircroft) vary widely and contain a variety of unconscionable terms.

In the instant motion, Chevron seeks to compel Opt-in Plaintiff Richardson to arbitrate his claims based on two agreements[2] with the third-party contracting company ExPert E & P Consultants, LLC ("EEP"). These contracts are unconscionable and unenforceable, in that they seek to limit Plaintiffs' substantive and procedural rights, potentially impose liability for attorneys' fees, and operate under a set of rules that is incompatible with employment claims.

At the least, to the extent this Court finds that Plaintiff Richardson is subject to enforceable arbitration agreements, the Court must sever the unconscionable provisions of those agreements, and should allow class or collective arbitration as permitted by those agreements.

**II.    ARGUMENT**

**A. Chevron Has Not Established That it Can Compel Arbitration Under the Agreements**

Chevron's Motion is replete with generic policy statements—the Federal Arbitration Act applies to employment disputes, and generally favors enforcing arbitration agreements—while presenting minimal evidence that there are enforceable agreements here. In fact, a careful reading of the contracts at issue shows that Chevron cannot enforce arbitration against Plaintiff

---

[1] Several Opt-in Plaintiffs will be filing withdrawal forms within the week.

[2] Chevron includes two agreements, one from 2008 between Plaintiff Richardson and EEP, and one from 2012 between Plaintiff Richardson's corporate entity and EEP, which is not signed by Plaintiff Richardson. (Agreements, ECF No. 106-2 at 14, 34.) The agreements contain identical arbitration policies (*Id.* at 11, 31.)

-1-

1    Richardson. First, Chevron is not a party to the agreements; second, Chevron has not established

2    that the claims here fall under the arbitration policies.

3         Chevron argues that it may compel arbitration based on "equitable estoppel." However,

4    Chevron's own citation to authority illustrates why Plaintiffs' FLSA overtime claims against

5    Chevron are not covered by these arbitration agreements. As Chevron explained, equitable

6    estoppel requires that the Plaintiffs' claims "be dependent upon, or founded in and inextricably

7    intertwined with, the underlying contractual obligations of the agreement containing the

8    arbitration clause." (Chev. Mtn., ECF No. 106 at 15.) Here, Plaintiff's claims are statutory and

9    have nothing to do with the contractual obligations. Plaintiffs contend that Chevron was their

10   employer, and that they are therefore covered by the FLSA and owed overtime wages. Here, the

11   contracts containing arbitration policies not only do not require payment of overtime wages, they

12   state that Plaintiffs are independent contractors. Plaintiffs' claims here are not dependent upon,

13   founded in, or inextricably intertwined with the contracts—the claims are completely independent

14   of the contract. As a result, Plaintiffs are not equitably estopped from pursuing their claims

15   against Chevron in this Court.

16        Relatedly, the language of the dispute resolution procedure provided in the agreements

17   between Plaintiff Richardson and EEP does not clearly encompass the disputes here. The

18   arbitration policy only relates to a dispute "under this Agreement." (*See*, Agreement, ECF No.

19   106-2 at 11, 31.) But Plaintiff's claims here are statutory, and do not concern any contractual

20   claim against EEP. Moreover, the agreements only state that "the Parties" agree to participate in

21   arbitration to resolve disputes. (*Id.*) Chevron, as a non-signatory, is not one of "the Parties," and

22   so is not subject to the agreement to arbitrate. Chevron states that it is a third-party beneficiary of

23   the agreement, but offers no explanation for why the contractual arbitration policy encompasses

24   this dispute, and fails to show it would be obligated to participate in an arbitration proceeding

25   initiated by a Plaintiff pursuant to these agreements.

26        **B.  The Agreements Are Unconscionable and Unenforceable**

27         Arbitration will only be compelled where the parties are subject to an enforceable

28   arbitration agreement. Arbitration agreements that are unconscionable under state law will not be

-2-

enforced. Unconscionability remains as a valid defense to attempts to compel arbitration because California's unconscionability standard is the same for arbitration and non-arbitration contracts. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1142–43 (2013); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 911 (2015). For a contract to be unconscionable under California law, both procedural and substantive unconscionability must be present, though not necessarily to the same degree. *Mohamed v. Uber Techs., Inc.,* 848 F. 3d 1201, 1210 (9th Cir. 2016). Courts determine unconscionability of arbitration agreements at the time they were entered into; retroactive changes to the agreement do not alter unconscionability analysis. *Capili v. Finish Line, Inc.*, 2017 WL 2839504, at *1 (9th Cir. July 3, 2017). A court may sever unconscionable arbitration contract clauses, but should declare the contract unenforceable rather than redline specific clauses if "an insidious pattern exists in [the employer's] arbitration agreement that functions as a thumb on [the employer's] side of the scale should an employment dispute ever arise", such that "any earnest attempt to ameliorate the unconscionable aspects of [the] arbitration agreement would require [the] court to assume the role of contract author rather than interpreter." *Ingle v. Circuit City Stores, Inc.,* 328 F. 3d 1165, 1180 (9th Cir. 2003). Such is the case here. The agreements are both substantively and procedurally unconscionable.

### 1. Unconscionable Costs and Fee Shifting Provisions

The agreement provides that, if a dispute arises, the Parties will first attempt to resolve the dispute through mediation, and that "Any costs and fees other than attorney fees associated with the mediation shall be shared equally by the Parties." (Agreement, ECF No. 106-2 at 11, 31.) This language attempts to force Plaintiff to pay for mediation before being able to pursue arbitration (and arguably seeks to impose costs of arbitration on Plaintiff as well). This is contrary to California law.[3] *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110–11

---

[3] Imposing arbitration expenses beyond those required to pursue the same claim in court is impermissible even if the Court has not yet determined whether workers are employees or independent contractors. In *Saravia*, the Northern District applied *Armendariz* and determined that certain arbitration clauses were unconscionable, even though the agreement purported to label the worker as an independent contractor; the court made this ruling *before* deciding whether the plaintiffs were independent contractors or employees. *Saravia*, 310 F.R.D. 412, 421 (N.D. Cal. 2015).

(2000) (holding that the employer must bear the costs of mandatory arbitration, because an arbitration agreement may not impose "any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court"); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) (requiring that plaintiff split the costs of arbitration "would render an arbitration agreement unenforceable"). The cost of mediation greatly exceeds the $400 filing fee in this Court.

Additionally, this language arguably limits Plaintiff's ability to recover attorneys' fees incurred in pursuing mediation, in that it requires Plaintiff to split all expenses except "attorney fees associated with the mediation." Alternately, that ambiguous language could be read to permit an award of attorneys' fees *against* a plaintiff. Costs-and-fee-shifting clauses are substantively unconscionable because they contradict federal statutory cost-shifting regimes, which entitle only prevailing plaintiffs to costs and fee awards. *Zaborowski v. MHN Gov't Servs., Inc.*, 601 F. App'x 461, 463 (9th Cir. 2014). "There is no justification to ignore a [statutory] cost-and-fee-shifting provision, except to impose upon the employee a potentially prohibitive obstacle to having her claim heard." *Id.*, quoting *Chavarria v. Ralphs Grocery Co.,* 733 F. 3d 916, 925 (9th Cir. 2013). The costs imposed by this agreement and the limitation on attorneys' fees are substantively unconscionable.

The agreements provide that the American Arbitration Rules will apply to any arbitration, but do not specify what set of AAA rules. Because this dispute concerns Plaintiff's FLSA rights, the AAA's Employment Rules should apply to any arbitration proceeding.

### 2.   The Agreements Are Procedurally Unconscionable

Under California law, contracts of adhesion are "at least minimally procedurally unconscionable." *Capili*, 2017 WL 2839504 at *1. Contracts are adhesive, especially within the employment context, when they are offered on a "take it or leave it basis." *Id.* (citing *Victoria v. Superior Court*, 40 Cal.3d 734, 742–43 (Cal. 1985) (*en banc*)). Here, it is obvious that the contracts here were offered to plaintiffs on a take it or leave it basis; the two agreements, signed four years apart, contain the same arbitration language. Plaintiff did not have the opportunity to negotiate the terms of the arbitration agreements.

-4-

3. <u>The Agreements Are Unconscionably One-Sided</u>

While the logistical aspects of the arbitration provisions are unconscionable, other provisions of the contract also indicate an "insidious pattern" of one-sidedness that acts "as a thumb" on the employer's side of the scale in an employment dispute. *Ingle*, 328 F. 3d at 1180. These are further evidence that "the central purpose of the contract is tainted with illegality" or "the illegality is collateral to [its] main purpose." *Id.* (citing *Circuit City Stores, Inc., v. Adams*, 279 F. 3d 889, 895 (9th Cir. 2002)).

For example, the contracts purport to require Plaintiff to indemnify EEP for any costs, claims, or suits against EEP arising out of the agreement, even if those losses were EEP's fault. (Agreement, ECF 106-2 p. 30). If anything goes wrong while Plaintiff is working, the contracts would arguably hold the Plaintiff responsible for all costs and damages, even if it is EEP's fault. A different third-party contracting company, Cenergy, is currently attempting to use similar indemnification clauses to force several Plaintiffs[4] (nominally through their corporate entities) to pay Chevron's cost of defending this case, and to pay any wages that are owed *to themselves*. However, employers may not seek indemnification from workers for the obligation to pay wages required by the FLSA. *See Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (no right of indemnification under the FLSA, and "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law" that might create indemnification claim); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1407–08 (10th Cir. 1992) ("Indemnity actions against employees work against the purposes of the FLSA. . . . Compliance with the FLSA will not be furthered if employees must defend against indemnity actions."); *Lyle v. Food Lion, Inc.,* 954 F.2d 984, 987 (4th Cir.1992) ("In effect, [the employer] sought to indemnify itself . . . for its own violation of FLSA, which . . . is something the FLSA simply will not allow."); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) ("[A]n employer who believed that any violation of the . . . provisions could be recovered from its employees would have a diminished incentive to comply with the statute."). District courts have consistently rejected

---

[4] Cenergy has filed numerous arbitrations with the American Arbitration Association. *See, e.g.*, *Cenergy v. Cummings Consulting, LLC*, AAA Case No. 01-17-0002-1411.

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION - RICHARDSON

1   attempts by employers seeking indemnity for FLSA violations. *Emanuel v. Rolling in the Dough,*

2   *Inc.*, 2010 WL 4627661, at *4 (N.D. Ill. Nov. 2, 2010); *McDougal v. G & S Tobacco Dealers,*

3   *L.L.C.*, 712 F. Supp. 2d 488, 497 (N.D.W. Va. 2010); *Quintana v. Explorer Enters., Inc.*, 2010

4   WL 2220310 (S.D. Fla. June 3, 2010); *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011, 1014–17

5   (N.D. Ill. 2009); *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311 (S.D.N.Y. 2001); *Local 1035,*

6   *Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc.*, 99 F. Supp. 2d 219, 221–22 (D. Conn. 2000).

7          In sum, the agreements are substantively unconscionable because of the additional filing

8   fees and vague fee sharing risks or limitations; they are adhesive and procedurally

9   unconscionable; and they contain additional unlawful provisions, demonstrating the agreements

10  are permeated by an unlawful purpose. The impermissible provisions constitute the bulk of the

11  contracts' arbitration clauses, to strike them would require the court to rewrite the contracts. *See*

12  *Armendariz*, 24 Cal.4th at 124. The contracts are both procedurally and substantively

13  unconscionable and should not be enforced.

14          **C.  The Agreements Permit Class or Collective Arbitration**

15          To the extent the Court orders arbitration, the Court must deny Chevron's request for an

16  order compelling individual arbitration. Chevron's motion gives short treatment to this question,

17  and in so doing misrepresents the United States Supreme Court's holding in *Stolt-Nielsen*. Indeed,

18  "*Stolt–Nielsen* did not hold that the intent to agree to [class] arbitration must be stated expressly

19  in an arbitration agreement." *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 125-26 (2d Cir. 2011).

20  Rather, the Supreme Court held "a party may not be compelled under the FAA to submit to class

21  arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-*

22  *Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). As the United States Supreme

23  Court has recognized, *Stolt-Nielsen* rests entirely on the parties' "unusual stipulation that they had

24  never reached an agreement on class arbitration." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct.

25  2064, 2069 (2013).[5] The "silence" referenced in *Stolt-Nielsen* was the stipulated lack of

26  ─────────────
    [5] *Oxford Health* was decided after *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011) and

27  therefore undercuts any argument that *Concepcion* invalidated all class arbitration. *See Yahoo!*
    *Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1013 (N.D. Cal. 2011) ("nothing in *Concepcion* forecloses

28  a decisionmaker, whether it be the arbitrator or the subsequent reviewing court, from finding that

                                    -6-

agreement, not the mere absence of an express provision regarding class arbitration. As other Courts in this district have recognized, "[t]he Supreme Court has never held that a class arbitration clause must explicitly mention that the parties agree to class arbitration in order for a decision maker to conclude that the parties *consented* to class arbitration. . . . [T]he failure to mention class arbitration in the arbitration clause itself does not necessarily equate with the 'silence' discussed in *Stolt–Nielsen.*" *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1011 (N.D. Cal. 2011) (citing *Vazquez v. ServiceMaster Glob. Holding Inc.*, 2011 WL 2565574, at *3 (N.D. Cal. 2011)).

Here, the plain language of the contracts shows that the contracting parties did not intend to exclude class claims. The covered claims are in no way limited to individual, non-class claims; instead, the arbitration policy concerns any "dispute under this Agreement," broad language that indicates the contracting parties' intent to allow class arbitration. Indeed, Chevron's argument that it may compel arbitration as a third-party indicates that Chevron recognizes this broad language could encompass claims beyond pure bilateral arbitration.

Even if the Court found that the parties intended to include a class waiver, the Court should strike that inferred waiver as being inconsistent with Section 7 of the National Labor Relations Act. *Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016), *cert granted* 137 S.Ct. 809 (Jan. 13, 2017). The fact that the Supreme Court has granted *certiorari* does not change the conclusion that class action waivers are impermissible. *Rodriguez v. Jerome's Furniture Warehouse*, 2017 WL 3131845, at *2 (S.D. Cal. July 24, 2017) (striking class action waiver, denying motion to compel arbitration and noting "this Court is bound by a published Ninth Circuit decision unless and until it is overturned by Congress, the Ninth Circuit, or the Supreme Court.").

To the extent the Court orders arbitration, it should deny Chevron's request to compel individual arbitration, and not limit Plaintiff's ability to bring claims as class or collective proceedings in arbitration.

---

the parties consented to submit class claims to arbitration even in the absence of any explicit discussion of class arbitration within the four corners of the agreement itself.")

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION - RICHARDSON

**D.  If the Court Orders Arbitration, it Must Sever the Unenforceable Terms**

As described above, the agreements provide that the parties will share costs of arbitration, arguably limit Plaintiff's ability to recover fees, and arguably impose defense fees on Plaintiff. (Agreement, ECF No. 106-2 at 31.) The Court must sever these provisions if it compels arbitration. *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1159 (N.D. Cal. 2015) (court may sever unconscionable term from the arbitration agreement and enforce the remainder of the agreement).

These provisions are contrary to California law. Therefore, if the Court orders arbitration, it should specify that the AAA Employment Law Rules apply, and strike the impermissible provisions. *See Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1256 (2016) (vacating arbitrator's award of attorneys' fees to prevailing defendant, because California law "unequivocally prohibits an employer from recovering attorney's fees for defending a wage and hour claim"); *see also Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015) (two-way fee shifting in arbitration agreement is contrary to public policy under the FLSA).

While Plaintiff contends striking these rules leaves the parties without any enforceable arbitration agreement, if the Court finds there is still an enforceable arbitration agreement, it must sever these offending provisions.  *See*, *e.g.*, *McIntosh v. Adventist Health/W. St. Helena Hosp.*, 2013 WL 968293, at *8 (N.D. Cal. 2013); *Laughlin v. VMware, Inc.*, 2012 WL 298230, at *6 (N.D. Cal. 2012).

**III.    CONCLUSION**

Chevron seeks to compel arbitration even though it was not a party to the arbitration policies at issue, and failed to show that it has standing to compel arbitration. Additionally, these arbitration policies are procedurally and substantively unconscionable, and the Court should deny Chevron's motion on that basis as well. Finally, if the Court does order arbitration, it should permit class or collective arbitration and strike the illegal fee and cost provisions.

1    Dated: August 7, 2017                **NICHOLS KASTER, LLP**

2                                         By:      s/Matthew C. Helland
3                                                  Matthew C. Helland
                                                   Daniel S. Brome
4                                                  Attorneys for Plaintiff and Others Similarly
                                                   Situated
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION - RICHARDSON