GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., SBN 132099
　tboutrous@gibsondunn.com
CATHERINE A. CONWAY, SBN 98366
　cconway@gibsondunn.com
JESSE A. CRIPPS, SBN 222285
　jcripps@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:　213.229.7000
Facsimile:　213.229.7520

MICHELE L. MARYOTT, SBN 191993
　mmaryott@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:　949.451.3800
Facsimile:　949.451.4220

Attorneys for Defendants CHEVRON CORPORATION
and CHEVRON U.S.A. INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher McQueen, James O'Neal, and Donnie Cummings on behalf of themselves and others similarly situated and on behalf of the general public,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>Chevron Corporation, Chevron U.S.A., Inc., and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | CASE NO. 4:16-cv-02089-JSW<br><br>**DEFENDANTS CHEVRON CORPORATION AND CHEVRON U.S.A. INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SALARY BASIS TEST (FIRST CLAIM FOR RELIEF)**<br><br>Date:　　　　January 19, 2018<br>Time:　　　　9:00 a.m.<br>Location:　　Courtroom 5<br><br>Action Filed: April 20, 2016 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on January 19, 2018 at 9:00 a.m., in Courtroom 5 of the United States Courthouse at 1301 Clay Street, Oakland, California, Defendants Chevron Corporation and Chevron U.S.A. Inc. (together, "Defendants") will and hereby do move the Court for partial summary judgment in favor of Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Issue Presented:  Plaintiffs McQueen and O'Neal were paid a predetermined rate of more than ▓▓▓▓ per day for the services they provided to Chevron.  And yet, they claim that they should have been paid overtime under the Fair Labor Standards Act ("FLSA").  The gravamen of their claim is that they were paid a "day rate" and that the FLSA necessarily "*requires* . . . employees paid on a day rate basis receive overtime pay."  ECF No. 58 ¶ 55 (emphasis added).  Plaintiffs are wrong as a matter of law, and this discrete and dispositive legal issue should be resolved now.

Summary of Argument:  Under the FLSA's salary test, an employee must be compensated at a rate of not less than $455 per week to qualify for an overtime exemption.  29 C.F.R. §§ 541.600, 541.602.  "An employee is compensated on a salary basis only if his compensation is not subject to reduction based on the 'quality or quantity of the work performed.'"  *Hurley v. Oregon*, 27 F.3d 392, 394 (9th Cir. 1994).  The undisputed facts here establish that the salary basis test was met for both McQueen and O'Neal:  their own admissions demonstrate that Plaintiffs were guaranteed to earn at least one day rate in any workweek in which they performed work, no matter the "quantity of the work performed," and that day rate exceeded the minimum compensation requirement of $455 in a workweek.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Jesse A. Cripps ("Cripps Decl."), and all papers and pleadings from this case on file with the Court, all other matters of which the Court may take judicial notice, any further evidence or argument offered to the Court at the hearing on this Motion, and any other matters that the Court may consider.

Dated:  December 1, 2017

                                        GIBSON, DUNN & CRUTCHER LLP

                        By:  */s/ Catherine A. Conway*
                                  Catherine A. Conway

Attorneys for Defendants CHEVRON CORPORATION and CHEVRON U.S.A. INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs Christopher McQueen and James O'Neal are well site managers who previously provided independent contractor consulting services to Chevron at several of its oil well sites in Texas, New Mexico and Louisiana. They provided those services to Chevron through a third-party service provider, Eagle Consulting, LLC.—a company that paid them more than ▇▇▇▇ per day and more than $320,000 annually for this work. Despite having earned substantial amounts as independent contractors (and also benefitting handsomely by taking substantial tax deductions for their consulting businesses), Plaintiffs now claim that they were actually Chevron employees. And they contend that they should have been paid overtime under the FLSA because their pay was called a "day rate" and not a "salary." Under Plaintiffs' theory, the "day rate" label permits the two of them to recover more than $1.2 million in unpaid overtime and liquidated damages from Chevron as their putative employer. They also seek unpaid overtime on behalf of approximately 31 other individuals currently in the conditionally certified collective. Even if they could at some later point convince this Court that they were not independent contractors (they cannot), Chevron would still prevail against their overtime claims because they both meet the exemption test under the FLSA.

The gravamen of Plaintiffs' unpaid overtime claim is that the FLSA "*requires* that non-exempt employees paid on a day rate basis receive overtime pay"—the theory is that day rate payments cannot qualify as a "salary" under the FLSA's overtime exemptions. ECF No. 58 ¶ 55 (emphasis added). Plaintiffs are wrong as a matter of law. The proper inquiry to determine whether the pay satisfies the salary basis test is whether the pay "actually received" meets the threshold amount, how it is labeled. *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 848 (6th Cir. 2012). And what the Plaintiffs actually received qualifies as a salary under the FLSA: it was a "predetermined amount" of compensation of at least $455 per week—one that was "not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. §§ 541.600, 541.602(a). No matter what label one attaches to it, Plaintiffs' day rate payments meet that test.

This discrete and dispositive legal issue is not a matter of factual dispute. McQueen and O'Neal readily admit that they were paid a predetermined day rate for their work—amounting to more than

1 ▮ per day—by Eagle Consulting.[1]  And they admit that, in any work week, they were always
2 guaranteed to receive the $455/week minimum under the FLSA.  That is true whether they worked one
3 day or seven days in a week.  The amount they received was predetermined:  it was not subject to
4 reduction for the quality or quantity of work.  Because these payments satisfy the FLSA's salary test
5 and Plaintiffs concede the duties test, the Court should hold that the salary basis test is met for purposes
6 of the Fair Labor Standards Act (Plaintiffs' First Claim for Relief).

## STATEMENT OF UNDISPUTED FACTS

**A.    As Well Site Manager Consultants, Plaintiffs McQueen and O'Neal Received a Day Rate For Their Work Performed for Chevron**

Plaintiffs McQueen and O'Neal each worked as well site managers for Eagle Consulting, LLC, performing work for Chevron in Texas, New Mexico and Oklahoma.  ECF No. 58 ¶¶ 6, 7, Cripps Decl., Ex. C at 4, Ex. D at 4.  O'Neal and McQueen performed work for Chevron from November 2013 until February 2016, and O'Neal performed work for Chevron from August 2012 to early February 2016.  *Id.*, Cripps Decl., Ex. C at 3, Ex. D at 3.

When McQueen first began performing services for Chevron, Eagle Consulting paid him a day rate of ▮   The day rate later increased to ▮, and then decreased to ▮ towards the end of his service.  Cripps Decl., Ex. A (Transcript of October 13, 2017 Deposition of Christopher McQueen ("McQueen Tr.")) 73:13-74:04; 133:02-:07; *see also* Cripps Decl., Ex. E (Plaintiffs' Verified Initial Disclosures at Ex. A, pp. 7-21 (reflecting day rates paid to McQueen)).  The day rate was a predetermined amount, set at the outset of his engagement with Eagle, that covered all time worked in day, regardless of whether it was one hour or 24 hours.  McQueen Tr. 74:14-75:10; 130:13-:17; 130:21-:22; 131:10-17 (day rate set by Eagle prior to starting with Chevron).  As McQueen confirmed, that meant that he was always guaranteed to earn at least $1,000 in any week that he performed work for Chevron:

> Q.    All right.  So if you worked as little as one day in a week at Chevron, would it be fair to say that you were guaranteed to make at least a thousand dollars for that week?

---

[1]  For purposes of this motion only, Defendants do not dispute that Plaintiffs were paid a "day rate" during the relevant period.

| | | |
|---|---|---|
| A. | | If I worked one day, whatever my day rate was is what I got for that day. |
| Q. | | So it's fair to say that you were guaranteed to make at least a thousand dollars for that week if you worked even a single day, correct? |
| A. | | Yes. |
| Q. | | Okay. And that was true whether – whether you worked an hour in that day or 24 hours in that day, right? |
| A. | | Yes, it was a day rate for that day. |

McQueen Tr. 75:11-76:02 (objections omitted).  As a result of these high day rates, McQueen was compensated at a rate higher than $100,000 per year.  McQueen Tr. 100:21-101:17; *see also* McQueen Tr. 141:03-:05 (confirming income of $323,435 in 2014); *see also* McQueen Tr. 167:12-17; *see also* Cripps Decl., Ex. E (Plaintiffs' Verified Initial Disclosures at Ex. A, pp. 2-6 (detailing "consultant fees" received by date)).

The situation was the same for O'Neal.  Eagle paid him at a day rate that covered all hours that he worked in a day, no matter how many or how few, and he never made less than $1,000 in any week he performed work for Chevron:

| | | |
|---|---|---|
| Q. | | Did you ever make less than a ▬▬▬▬▬ a day as a day rate for Chevron? |
| A. | | No, ma'am. |
| Q. | | And did you ever work less than a 12-hour day when working at Chevron at the site? |
| A. | | I think there -- there were a few times where we put in a eight- or six-hour day on location, that I can recall, and -- and we'd be done with the task. |
| Q. | | So if you got done with a task early and it was only a six- or eight-hour day, you still got your day rate; is that correct? |
| A. | | Yes. |
| Q. | | You got your day rate no matter how many hours it was; is that correct? |
| A. | | Yes. |
| Q. | | And the entire time that you worked for Eagle and worked at Chevron's premises, you were never docked from the day rate for half a day or anything else like that?  No matter what, you got the full day rate pay; is that correct? |
| A. | | Yes. |

Cripps Decl., Ex. B (Transcript of October 12, 2017 Deposition of James "Tim" O'Neal ("O'Neal Tr.")) 123:01-25 (objections omitted); *see also* O'Neal Tr. 45:14-46:8 (day rate was to cover "all the

work that [he] did during that day"); *see also* Cripps Decl., Ex. E (Plaintiffs' Verified Initial Disclosures at Ex. A, pp. 7-21 (reflecting fixed day rates paid to O'Neal)).

That day rate was predetermined, before O'Neal began providing services to Chevron. O'Neal Tr. 53:05-:20 (setting day rate with Eagle Consulting before starting at Chevron); O'Neal Tr. 45:14-46:8 (same). Through this arrangement, O'Neal was compensated at a rate higher than $100,000 per year. O'Neal Tr. 74:05-:21, 136:01-:19 (confirming $298,699 in compensation in 2013); 122:21-:25 (recalling compensation of "close to $300,000" in 2014); 161:03-:05 (confirming $354,189 in compensation in 2015); 182:08-:10 (confirming $15,280 in compensation in 2016 for approximately one month of work); *see also* Cripps Decl., Ex. E (Plaintiffs' Verified Initial Disclosures at Ex. A, pp. 2-6 (detailing "consultant fees" received by date)).

**B.     Plaintiffs Initiated this Collective Action and Challenge the Day Rate Payments Received by Chevron's Consultant Well Site and Drill Site Managers**

Plaintiffs filed this action on April 20, 2016, alleging a single collective action claim for unpaid overtime under the FLSA. ECF No. 1. The operative Complaint in this action—and all versions preceding it—are based on an incorrect legal premise: that "[t]he FLSA specifically requires that employees paid on a day rate basis receive overtime pay." ECF No. 1 ¶ 33, ECF No. 26 ¶ 51, ECF No. 38 ¶ 54, ECF No. 58 ¶ 55.

Plaintiffs' overtime case is entirely predicated on that theory. The FLSA collective is made up of "independent contractors or consultants who were paid *a day rate*." ECF No. 58 ¶¶ 3, 40 (emphasis added). When seeking FLSA conditional certification from this Court, Plaintiffs argued that "Plaintiffs and other Consultant Site Managers were consistently paid a day rate" and that this practice was "consistent across locations and business units." ECF No. 46 at 3-4; *see also id.* at 5 ("Chevron uniformly classified Consultant Site Managers as independent contractors, and paid them a day rate with no overtime premiums."). Indeed, Plaintiffs argued that "[p]ayment of a day rate will be significant on the merits of Plaintiffs' claims. If Chevron was Plaintiffs [sic] employer, as Plaintiffs contend, Chevron will owe overtime wages unless it can show Plaintiffs were exempt." *Id*. at 9. They have also argued that this dispositive legal issue is "suitable for collective treatment." ECF No. 52; *see also* ECF No. 148 ("A day rate does not satisfy the salary basis requirement[.]"). On February 21,

2017, the Court took Plaintiffs at their word and granted Plaintiffs' motion for conditional certification, stating "Plaintiffs have made allegations and proffered evidence that all proposed class members . . . were paid a day rate with no overtime premiums." ECF No. 76 at 3.

McQueen and O'Neal's verified written discovery responses confirm that their day rate payments provide the sole basis for their challenge to the FLSA's overtime exemptions. In response to an interrogatory requesting *all* facts that support their contention that they should have been classified as non-exempt employees, both responded, "Plaintiff performed work for Defendants and worked over 40 hours in a workweek on multiple occasions but was not paid overtime premium pay, and was instead paid only a daily rate for each day worked." Cripps Decl., Exs. C at 12-13 (Interrogatory No. 6) and D at 12-13 (Interrogatory No. 6). Plaintiffs did not raise any other facts or theories in response to this interrogatory. *Id*.

## LEGAL STANDARD

Partial summary judgment "or the part of [a] claim" is proper when there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a), (c); *see also*, *e.g.*, *United States v. Myers*, 38 F.R.D. 194, 196-97 (N.D. Cal. 1964) (utilizing partial summary judgment to dispose of discrete issues "which shall be deemed established for purposes of the trial herein"). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases added). No genuine issue of material fact exists with respect to a claim or claims "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 599 (1986) (internal quotations omitted). Movants need not necessarily put on evidence to negate their opponents' claims; they "may simply point to portions of the pleadings, admissions, answers to interrogatories, and depositions which, along with any affidavits, show the absence of a genuine issue of material fact." *Bhan v. NME Hospitals*, 929 F.2d 1404, 1409 (9th Cir. 1991). Where the moving party demonstrates the absence of genuine issues of material fact, the opposing party "must produce *specific evidence*, through affidavits or admissible discovery material, to show that the dispute exists." *Id.* (emphasis added). Only "rational" or "reasonable" inferences are drawn in favor of the non-moving

party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987); *Sedell v. Wells Fargo of Cal. Ins. Servs., Inc.*, 2012 WL 3017541, at *4 (N.D. Cal. July 23, 2012).

## ARGUMENT

Plaintiffs McQueen and O'Neal contend that they cannot qualify for the FLSA's overtime exemptions because they were paid a day rate and that Chevron should bear the responsibility for unpaid overtime as Plaintiffs' putative employer. ECF No. 58 ¶¶ 3, 14, 21, 55. Chevron does not concede that it was Plaintiffs' employer, but the Court need not reach that inquiry in this motion. The only issue presented here is whether, as a matter of law, the payments received by Plaintiffs meet the salary basis test. They do.

The FLSA's overtime exemptions for administrative, executive, professional and highly-compensated employees are based on a two-part test: a "duties test" and a "salary test." *Barner v. City of Novato*, 17 F.3d 1256, 1259-60 (9th Cir. 1994). Here, Plaintiffs specifically take issue with the label placed on their payments: they argue that their "day rate" payments do not, and cannot, meet the FLSA's salary test.[2] *See supra* Statement of Undisputed Facts, subsection A.

Under the FLSA's salary test, an employee must be compensated at a rate of not less than $455 per week to qualify for an overtime exemption. 29 C.F.R. §§ 541.600, 541.602. "An employee is compensated on a salary basis only if his compensation is not subject to reduction based on the 'quality or quantity of the work performed.'" *Hurley v. Oregon*, 27 F.3d 392, 394 (9th Cir. 1994). Salary basis is broadly defined to include any predetermined amount, paid regularly, regardless of the quality or quantity of the work performed:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly *receives* each pay period on a weekly, or less frequent basis, *a predetermined amount* constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality *or quantity of the work performed*.

---

[2] Although Defendants would have the burden to prove that both the duties and salary tests are met in the event that Plaintiffs demonstrate that they were employees of Chevron, *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983), Plaintiffs have never disputed their exemption status on the basis of their job duties. *See* Cripps Decl., Exs. C at 12-13 (Interrogatory No. 6) and D at 12-13 (Interrogatory No. 6). The purpose of this motion is solely to resolve the salary issue and does not seek a determination regarding Plaintiffs' duties. However, because Plaintiffs have not put their duties in dispute, Chevron believes that resolution of the salary issue may ultimately be dispositive of the entirety of Plaintiffs' unpaid overtime claims.

29 C.F.R. § 541.602(a) (emphasis added).  In other words, "[t]he regulations specify that a salaried employee must be paid a fixed and predetermined amount, but do not prescribe when or how frequently this fixed element of compensation may be determined."  *See Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163-64 (2d Cir. 2008) (internal citations omitted) (holding that a compensation system that guaranteed a base salary of $48,000 met the salary-basis test even though the total compensation fluctuated).  To be "predetermined," the fixed salary amount to be paid merely needs to be set in advance.  *See id*. ("[T]he agency's use of the word 'predetermined' to describe the salary requirement indicates only that this element of an employee's compensation must be both fixed and determined prior to the period in which it would apply."); *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.3d 800, 805 (11th Cir. 1991) (holding that salary was "predetermined" where employees knew the amount of pay they would receive for nine-day and ten-day work cycles in advance).  That test is plainly met where an employee is paid a predetermined and guaranteed day rate of more than the statutory minimum of $455 in any week in which he performs work, regardless of the number of hours worked.

The regulations only require a fixed and predetermined amount above $455 to meet the salary basis test—they do not require that *all* compensation paid be on a salary basis.  As such, any amounts paid over and above the predetermined, guaranteed amount do not serve to defeat the salary basis test.  *Havey*, 547 F.3d at 165 ("[T]he fact that [the plaintiff's] overall compensation for that quarter could be decreased due to quality errors does not render [the plaintiff] a non-salaried employee if, under the employer's policy, the adjustments do not affect a 'predetermined amount' portion of salary exceeding the regulatory threshold rate and only impacts the size of the increase above this amount."); *see also Boykin v. Boeing Co.*, 128 F.3d 1279, 1281 (9th Cir. 1997) ("The DOL has unequivocally and consistently declared that additional compensation in the form of hourly overtime payment does not defeat exempt status under the salary-basis test.").  The same is true of someone who receives more than one day rate payment in a workweek:  additional day rate payments above $455 do not transform the employee into a non-salaried employee if he is otherwise receiving a fixed, predetermined, guaranteed salary amount above $455.  Any amounts above that are additional non-salary compensation.

Notably, the Department of Labor's regulations expressly contemplate the use of a day rate to calculate salary for exempt employees, and provides an example of how that would work in practice:

> An exempt employee's earnings may be computed on an hourly, *a daily or a shift basis, without losing the exemption or violating the salary basis requirement*, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

29 C.F.R. § 541.604(b) (emphasis added); *see also Akins v. Worley Catastrophe Response, LLC*, 2013 WL 1907486, at *4 (E.D. La. May 8, 2013) ("[M]erely because an employee's earnings are computed on a daily rate basis does not mean that the employee is not paid on a salary basis[.]"). The use and acceptance of day rates is unsurprising given that "it has long been clear that an employer may satisfy the salary-basis test even though it chooses to pay salaried employees on an hourly basis." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006) (citing *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997)).

Defendants have not located any authority in the Ninth Circuit that addresses day rates in connection with the salary-basis test, but the Southern District of Ohio recently confronted the issue, ultimately finding that day rate payments satisfied the test. In *Hughes v. Gulf Interstate Field Services, Inc.*, the plaintiffs were employees for a construction management, pipeline and facility inspection, materials management and other services provider for energy transportation products. 2016 WL 4197596, at *1 (S.D. Oh. Aug. 8, 2016). Similar to Plaintiffs here, the *Hughes* plaintiffs alleged that they were entitled to overtime because they were paid on a day rate system, "receiv[ing] a flat amount for each day worked but do not receive any premium pay for hours worked in excess forty hours a week." *Id.* One of the named plaintiffs was paid at a rate of $500 per day and the other at a rate of $525 per day, and their time sheets showed that they were paid six times their day rates each week, well in excess of the $455 per week required to meet the salary-basis test. *Id.* Relying on the Sixth Circuit's guidance in *Orton v. Johnny's Lunch Franchise, LLC* that "*the focus is on pay received*, rather than the terms of the employment agreement," the Southern District of Ohio held that the salary-basis test was met. *Id.* at *3 (quotations omitted). As the Court explained, "[i]t is not written descriptors of the payment policies that are relevant to the salary-basis test inquiry, but rather the actual payment practice." *Id.* at *3-4 (quoting *Orton*, 668 F.3d at 848) (quotations omitted).

Focusing on the pay received, rather than the "day rate" label, the salary-basis test is satisfied here. Plaintiffs admit that the day rate covered any and all hours worked in a workday, meaning the day rates were not subject to reduction for the quantity or quality of work performed. McQueen Tr. 75:11-76:07, O'Neal Tr. 123:01-25. And because the day rates were in excess of ▮, Plaintiffs were guaranteed to earn more than the $455 minimum by performing any amount of work in a workweek. In practice, this works as follows:

- If McQueen's day rate is set at ▮ per day and in workweek #1 McQueen works just one hour on one day in that workweek, he is guaranteed to receive ▮ for that workweek.
- If in workweek #2 McQueen works 12.5 hours in one day, he is guaranteed to receive ▮ for that workweek.
- If in workweek #3 McQueen works 70 hours over 5 days, he is guaranteed to receive ▮ and an additional ▮ for that workweek.[3]

Indeed, this guaranteed, predetermined salary is reflected in Plaintiffs' own disclosures—Plaintiffs did not receive less than ▮ in any workweek. Cripps Decl., Ex. E (Plaintiffs' Verified Initial Disclosures at Ex. A, pp. 2-6 (detailing "consultant fees" received by date).[4]

In sum, because Plaintiffs were guaranteed to at least one day rate—a predetermined amount—in any workweek in which they performed work, no matter the "quantity of the work performed," and that day rate exceeded the minimum requirement of $455 in a workweek, the salary-basis test is met here. 29 C.F.R. §§ 541.602.

---

[3] The same practice and analysis applies to O'Neal, who has admitted he never earned a day rate less than ▮ for services performed for Chevron. *See* Cripps Decl., Ex. E (Plaintiffs' Verified Initial Disclosures at Ex. A, pp. 21-42 (detailing "consultant fees" in form of day rate received for each day O'Neal provided services to Chevron)).

[4] Plaintiffs verified the compensation details stated in their Supplemental Initial Disclosures in their verified interrogatory responses. *See* Cripps Decl., Ex. C at 20-21 (Interrogatory No. 16), Ex. D at 20 (Interrogatory No. 16).

## CONCLUSION

For the foregoing reasons, this Court should enter partial summary judgment in favor of Defendants and hold that the salary basis test is met for purposes of Plaintiffs' claim for unpaid overtime under the Fair Labor Standards Act (First Claim for Relief).

Dated: December 1, 2017

                          GIBSON, DUNN & CRUTCHER LLP

                          By: */s/ Catherine A. Conway*
                                      Catherine A. Conway

                          Attorneys for Defendant CHEVRON CORPORATION and CHEVRON U.S.A. INC.