1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER McQUEEN, JAMES O'NEAL, and DONNIE CUMMINGS, on behalf of themselves and other similarly situated, and on behalf of the general public,

        Plaintiffs,

  v.

CHEVRON CORPORATION, CHEVRON U.S.A., INC. and DOES 1-50, inclusive,

        Defendants.

_____/

No. C 16-02089 JSW

**ORDER RE MOTIONS TO COMPEL ARBITRATION**

Now before the Court are four motions filed by Defendants Chevron Corporation and Chevron U.S.A. Inc. ("Chevron") to compel arbitration or, in the alternative, to dismiss (1) Plaintiff Bobby Richardson's claims; (2) the claims of opt-in plaintiffs Charles Beaty, Kevin Caudill, Bennie Joe Gipson, Scott Mathis, Armando Medina, William Perry, Michael Roberts, and Bryan Wood (collectively, the "Cenergy Opt-In Plaintiffs"); (3) Plaintiff Charles E. Coleman, Jr.'s claims; and (4) Plaintiff Ted Nunnery's claims.  Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS the motions to compel arbitration and STAYS the matter pending the resolution of arbitration.

## BACKGROUND

Plaintiffs sought and were granted preliminary certification of a collective action for their claim under the Fair Labor Standards Act ("FLSA") on behalf of well site/drill site managers ("Site Managers") who were allegedly denied proper compensation as required by federal wage and hour

United States District Court

For the Northern District of California

laws.  The Court granted preliminary certification of all persons who have worked for Defendants

Chevron Corporation and Chevron U.S.A., Inc. as Site Managers who were classified as

independent contractors or consultants and were paid a day rate at any time within three years of the

filing of this  action through the trial.  (*See* Second Amended Complaint at ¶ 3.)

The Court shall address other, relevant facts in the remainder of this order.

**ANALYSIS**

Chevron moves to compel arbitration and to stay the various plaintiffs' claims in favor of

arbitration on the grounds that these plaintiffs should be compelled by contract to submit their

claims to arbitration.

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid,

irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation

of any contract."  9 U.S.C. § 2.  The FAA represents the "liberal federal policy favoring arbitration

agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25

(1983).  Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been

made and has not been honored," and the dispute falls within the scope of that agreement, the Court

must order arbitration.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are

enforced according to their terms."  *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514 U.S. 52, 53-

54 (1995).  The "preeminent concern of Congress in passing the [FAA] was to enforce private

agreements into which parties had entered, a concern which requires that [courts] rigorously enforce

agreements to arbitrate."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614,

625-26 (1985) (quotations omitted).  The FAA is "an expression of 'a strong federal policy favoring

arbitration as an alternative means of dispute resolution.'" *Ross v. American Express Co.*, 547 F.3d

137, 142 (2d Cir. 2008) (quoting *Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am.

Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)).  Notwithstanding the liberal policy favoring arbitration, by

entering into an arbitration agreement, two parties are entering into a contract.  *Volt Information

Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989)

1   (noting that arbitration "is a matter of consent, not coercion.").  Arbitration is a matter of contract,

2   and therefore a party cannot be required to submit to arbitration any dispute which is has not agree

3   so to submit.  *Vera v. Saks & Co.,* 335 F.3d 109, 116 (2d Cir. 2003) (citations omitted).

4   Accordingly, "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose

5   of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other

6   contracts, *but not more so.*"  *Cap Gemini Ernst & Young U.S., LLC v. Nackel,* 346 F.3d 360, 364 (2d

7   Cir. 2003) (quotations omitted).

8          **A.**        **Plaintiff Bobby Richardson's Claims.**

9          Chevron contends that Bobby Richardson, a drill site manager who performed services for

10  Chevron on behalf of ExPert E&P Consultants ("EEP") should be compelled to arbitrate his wage

11  and hour claims against them pursuant to a valid and enforceable arbitration agreement with EEP

12  with whom he entered a consultancy agreement on January 1, 2008.  (*See* Dkt. No. 106-2,

13  Declaration of Jesse Cripps ("Cripps Decl.") at Ex. A at § 12.2.)  The consultancy agreement

14  provides that "If a dispute arises under this Agreement . . . either Party may demand that the dispute

15  be submitted to binding arbitration."  Also, on February 23, 2912, Richardson's company, Bobby

16  Richardson Enterprises, Inc. agreed to the same arbitration provision.  (*Id.* at § 12.2.)

17         The arbitration provisions clearly indicate that the parties agreed to arbitrate any disputes

18  arising under the consultancy agreements.  The agreements require that arbitration of "any dispute"

19  that arises under the agreement of Richardson to perform services for EEP's clients, including the

20  dispute for unpaid overtime that arises out of his performance of services for Chevron.  Under these

21  circumstances, the Court must compel arbitration as agreed upon.  The scope of the arbitration, and

22  whether it will proceed as a bilateral or class-wide arbitration is within the determination of the

23  arbitrator.  *See Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452-53 (2003).

24         As an EEP customer, Chevron is entitled to enforce the arbitration agreements under the

25  doctrine of estoppel and by virtue of their standing as third-party beneficiaries.  *See Mundi v. Union

26  Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009).  General contract and agency principles

27  apply in determining the enforcement of an arbitration agreement by or against nonsignatories.  *Id.*

28  Among these principles, as applicable here, the Court finds Chevron is entitled to enforce the

**United States District Court**
For the Northern District of California

1  agreements pursuant to the equitable estoppel doctrine and as third-party beneficiaries of the

2  agreements.  The "equitable estoppel doctrine applies when a party has signed an agreement to

3  arbitrate but attempts to avoid arbitration by suing nonsignatory defendants for claims that are based

4  on the same facts and are inherently inseparable from arbitrable claims against signatory

5  defendants." *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1238 (2011) (internal

6  citations omitted).  The wage and hour claims are rooted in and inextricably intertwined with the

7  consultancy agreements because the agreements explicitly cover the services Richardson provided to

8  EEP's clients, including Chevron, as well as the payment for those services.  In addition, Chevron

9  stands to benefit from the consultancy contracts as a third party beneficiary because the consultancy

10  agreements were expressly entered into for the purpose of Richardson providing services for EEP's

11  oil and gas operator clients, including Chevron.  (*See* Cripps Decl., Ex. A § 5.)  Accordingly,

12  Chevron stands as a third-party beneficiary of the agreements and can enforce the arbitration

13  provisions on this independent basis as well.  *See Harris v. Superior Court*, 188 Cal. App. 3d 475,

14  478 (1986) ("It is well established that a non-signatory beneficiary of an arbitration is entitled to

15  require arbitration.")

16        In his opposition to the motion, Plaintiff Richardson contends that the arbitration agreements

17  are unenforceable for various reasons.  First, Richardson argues that his claims are "statutory and

18  have nothing to do with contractual obligations."  (Dkt. No. 112, Opp. Br. at 2.)  Although the

19  gravamen of the complaint is concerned with statutory rights under the FLSA of the drill site

20  managers, Plaintiff Richardson's unpaid overtime claim arises under the consultancy agreements as

21  it was pursuant to those agreements that he performed the work for Chevron, the contracts set out

22  the terms of compensation for that work, and it was under those contracts that Richardson agreed he

23  would perform his work as an independent contractor.  (*See* Dkt. No. 106-2 at §§ 3, 5.)

24        Second, Richardson argues that the arbitration agreements should not be enforced because

25  they are unconscionable.  Under either Texas law applicable to the contracts, or California law as

26  argued by Plaintiff, the party claiming unconscionability bears the burden of establishing procedural

27  and substantive unconscionability.  *See Elkjer v. Scheef & Stone, LLP*, 8 F. Supp. 3d 845, 856 (N.D.

28  Tex. 2014) (collecting cases); *see also Armendariz v. Found. Health Psychare Serv., Inc.*, 24 Cal.

4th 83, 114-15 (2000); *Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1561 (2014).  To support his contention that the contracts were procedurally unconscionable, Richardson merely argues, without citation to evidence, that he did not have the opportunity to negotiate the terms of the arbitration agreements and that they were offered on "a take it or leave it basis."  (Dkt. No. 112, Opp. Br. at 4.)  Under applicable Texas law, such a take it or leave basis would not indicate the contracts were procedurally unconscionable.  *See In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002).  Regardless, Plaintiff has not proffered any evidence here that the two consultancy agreements were offered on a take it or leave it basis.  Failing to establish any procedural unconscionability, Plaintiff Richardson has not met his burden to challenge the enforceability of the arbitration agreements.

Although this failure obviates the need to address Richardson's contentions regarding substantive unconscionability, the Court similarly finds Plaintiff has failed to meet his burden on this question as well.  Richardson's substantive challenge to his consultancy agreements pertain to terms other than the arbitration clause.  (*See* Dkt. No. 112 at 5.)  Unless "the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).  Richardson's attack is not on the arbitration provision, but rather is focused on the fee splitting related to the mediation provision of the contracts.  However, no party has sought to enforce the mediation provision, thereby rendering it irrelevant here.  Accordingly, Plaintiff Richardson has failed to sustain his burden to demonstrate that the applicable arbitration provisions are either procedurally or substantively unconscionable.

Lastly, Richardson contends that should the Court enforce the arbitration provisions of his consultancy agreements, the Court should find the agreements permits class or collective arbitration. The Court has not been presented with a putative class action claim and, in any event, this is a procedural question clearly delegated to the arbitrator to decide.  *See Green Tree Fin. Corp.*, 539 U.S. at 452-53.

**B.      Cenergy Opt-In Plaintiffs' Claims.**

United States District Court
For the Northern District of California

1    Chevron separately moves to compel arbitration of the Cenergy Opt-In Plaintiffs also on the

2    basis that these plaintiffs are bound to arbitrate their unpaid overtime claims against Chevron

3    pursuant to valid and enforceable arbitration agreements with Cenergy International Services, LLC

4    ("Cenergy"). The Cenergy Opt-In Plaintiffs entered into Contract Master Service Agreements and

5    Consultant Agreements with Cenergy, pursuant to which they agreed to perform services for

6    Cenergy's customers, including Chevron. (Declaration of Jess A. Cripps ("Cripps Decl."), Ex. A, ¶

7    30.) The agreements, with some minor variation, all include an agreement to arbitrate "All claims,

8    disputes or controversies arising out of, in connection with or in relation to this Agreement or the

9    Services, including any and all issues of arbitration of such claim, dispute or controversy

10   (hereinafter 'Dispute') . . . shall be submitted to a mandatory and binding arbitration conducted by

11   the AAA in accordance with its Construction Industry Rules then in effect." (*Id.* ¶¶ 4-29.)[1]

12   Again, the Court finds the Plaintiffs' claims are rooted in and inextricably intertwined with

13   the third party contracting agreements with Cenergy because, under those agreements, Plaintiffs and

14   Cenergy expressly govern the services Plaintiffs provided to Cenergy's clients, including Chevron,

15   and payment for those services. (*Id.* at ¶ 30.) For the same reasons as addressed in the Richardson

16   motion to compel, the Court finds Chevron is entitled to enforce the arbitration agreements under the

17   doctrine of estoppel and by virtue of their standing as third-party beneficiaries.[2]

18   The Cenergy Opt-In Plaintiffs similarly argue that their arbitration agreements should not be

19   enforced because they are unconscionable. Again, regardless whether California or Texas law

20   applies, the party alleging unconscionability has the burden to establish both procedural and

21   substantive unconscionability. *See Armendariz*, 24 Cal. 4th at 114; *Elkjer*, 8 F. Supp. 3d at 856.

22

23   [1]    Another Cenergy opt-in plaintiff, Donnie Cummings, agreed to the same arbitration
     provision. Instead of opposing the petition to compel arbitration, he stipulated to dismissal of his claims
24   and their submission to binding arbitration. (Dkt. Nos. 68, 69.) It is unclear on what basis the remaining
     Cenergy Opt-In Plaintiffs distinguish the same agreements they signed.

25   [2]    Plaintiffs mention that several of the arbitration agreements were not signed by Cenergy.
     (Dkt. No. 113, Opp. Br. at 4.) However, there is no denial that Plaintiffs executed the subject contracts
26   and that they received the benefits of the work done pursuant to those agreements. (Dkt. No. 118-1,
     Declaration of Eydie Eschete, ¶ 3.) Further, as the "signator[ies] resisting enforcement of the contract"
27   they "cannot escape liability unless [they] affirmatively establish[] that the signatures of all parties were
     contemplated as being a condition precedent to the validity of the contract." *Fagelbaum & Heller LLP
28   v. Smylie*, 174 Cal. App. 4th 1351, 1365 (2009) (quotations omitted). Plaintiffs do not attempt to meet
     that burden.

1  Plaintiffs conclusively assert the agreements are procedurally unconscionable because they were

2  offered on a take it or leave it basis.  There is, again, no evidence submitted to support this

3  contention and no authority that under Texas law, this would render the arbitration agreements

4  procedurally unconscionable.  *See In re Halliburton*, 80 S.W.3d at 572.

5          In addition, although the failure to establish procedural unconscionability renders the

6  discussion of substantive unconscionability unnecessary, the Court similarly finds Plaintiffs here

7  have failed to meet their burden on this element as well.  The Cenergy Opt-In Plaintiffs argue that

8  the agreements are substantively unconscionable because they allow the arbitrator the power to

9  award reasonable attorneys fees, costs, and expenses the prevailing party in arbitration.  Plaintiffs

10 cite authority for the proposition that fee-shifting clauses are substantively unconscionable.

11 However, the clause merely authorizes the arbitrator to award fees and costs and the AAA rules

12 cited indicate that the arbitrator may only exercise this authority "if it is authorized by law or [the

13 parties'] arbitration agreement."  (Dkt. No. 113-2, AAA Construction Rules, at 33.)  Because the

14 provision merely allows the arbitrator the authority to award fees and costs to the prevailing party if

15 otherwise allowed by law, and does not compel the shifting of fees, the Court finds this provision

16 does not violate either California or Texas law.  *See, e.g., Swallow v. Toll Bros., Inc.*, 2008 WL

17 4164773, at *7 (N.D. Cal. Sept. 8, 2008) (holding that the arbitration provision permitting the

18 arbitrator power to award fees did not violate the tenets of *Armendariz* to require that arbitration

19 agreements afford the same relief available in court); *see also Long v. BDP Int'l, Inc.*, 919 F. Supp.

20 2d 832, 846-47 (S.D. Texas 2013) (holding that an arbitration provision permitting the award of fees

21 and costs if afforded under an underlying statutory claim is not unconscionable).

22         The Cenergy Opt-In Plaintiffs also argue that the arbitrations provisions of their agreements

23 are substantively unconscionable on the basis that they require workers to arbitrate under the AAA's

24 construction industry rules which would impose improper and inordinate costs on Plaintiffs,

25 including the cost of the initial filing fee.  Plaintiffs instead contend that the AAA employment rules

26 should govern.  (Dkt. No. 113, Opp. Br. at 6-7.)  However, a comparison of the two sets of AAA

27 rules do not bear out the difference as both sets of rules require the parties to split the expenses of

28 the arbitrator.  (*Compare* Dkt. No. 113-2, Declaration of Daniel Brome, Ex. 1 at 35 (AAA

7

United States District Court

For the Northern District of California

1   Construction Rule 56) *with* Dkt. No. 119-2, Request for Judicial Notice, Ex. B at 41.)  It is

2   Plaintiffs' burden to demonstrate that they would have to bear prohibitive costs, which burden has

3   not been met by the request to sever the AAA construction rules in favor of the AAA employment

4   rules.  In either case, the arbitrator is empowered to determine the structure of repayment of

5   expenses in the arbitration decision.

6          Lastly, the Cenergy Opt-In Plaintiffs contend that the agreements are unconscionably one-

7   sided in that other provisions in the agreements beside the arbitration clauses indicate an insidious

8   pattern of one-sided benefits to the employer over the plaintiff workers.  Plaintiffs argue that the

9   contracts purport to require workers to indemnify Cenergy for any costs, claims, or suits against

10  Cenergy arising out of the agreement.  Plaintiffs also contend the agreements are unconscionable as

11  a result of a provision requiring plaintiffs to provide notice to Cenergy and to mediate in the first

12  instance in the event of a dispute with Cenergy or one of its customers.  Finally, Plaintiffs contend

13  the contracts are unconscionable based on a carve-out exception for Cenergy to pursue intellectual

14  property and privacy claims in court.  With regard to all of these arguments concerning clauses in

15  the contract aside from the arbitration provision, the law is clear: "unless the challenge is to the

16  arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first

17  instance."  *Buckeye Check Cashing*, 546 U.S. at 445-46.  Further, the indemnification clause is a

18  matter being addressed in a pending declaratory action filed by Cummings who stipulated to

19  dismissal of his claims and their submission to binding arbitration, the mediation provisions are not

20  invoked here, and the carve-out exception provides only an interim provisional remedy in

21  connection with an otherwise arbitrable controversy.  The Court does not find that Cenergy Opt-In

22  Plaintiffs have carried their burden to demonstrate the contracts are unconscionably one-sided and

23  any provision meeting with the arbitrator's disapproval may be severed according to the provisions

24  in the underlying contracts.

25         Again, just as in the case of Richardson's motion, the Cenergy Plaintiffs contend that should

26  the Court require them to arbitration, that it grant their request to arbitrate their request for class or

27  collective arbitration.  Again, the Court has not been presented with a putative class action claim

28  and, in any event, this is a procedural question clearly delegated to the arbitrator to decide.  *See*

1    *Green Tree Fin. Corp.*, 539 U.S. at 452-53.  Further, the determination of which set of AAA rules to

2    apply shall be delegated to the arbitrator to decide as well.

3              **C.     Plaintiff Charles E. Coleman, Jr.'s Claims.**

4              Chevron contends that Charles E. Coleman, Jr., a drill site manager who performed services

5    for Chevron on behalf of Fircroft should be compelled to arbitrate his wage and hour claims against

6    them pursuant to a valid and enforceable arbitration agreement with Fircroft with whom he entered

7    contract for services on October 2, 2013.  (*See* Dkt. No. 108-2, Declaration of Jesse Cripps ("Cripps

8    Decl.") at Ex. A at ¶ 2.)  The agreement provides that "CONSULTANT agrees that any dispute

9    related to, in connection with this Agreement or the work performed thereunder, shall be finally and

10   exclusively settled by binding arbitration."  (*Id.* at 4, § 11.)

11             For the same reasons explicated above, the Court finds Coleman must arbitrate his claims.

12   The Court is similarly unconvinced by Coleman's contentions that his claims sound in statutory

13   violation and therefore have nothing to do with his contractual obligations.  Here, Coleman's unpaid

14   overtime claim relates to and is in connection with his services agreement with Fircroft because it

15   was pursuant to that agreement that he performed work for Chevron and the contract set the terms of

16   his compensation for that work.  (*See* Dkt. No. 108-2, Cripps Decl., Ex. A at 1.)  Coleman's

17   contention that he was required first to notify Fircroft's Human Resources department before

18   submitting his claims to binding arbitration does not negate the requirement that the parties agreed

19   to arbitrate their disputes.

20             Coleman argues that the arbitration agreement is unconscionable but again fails to meet his

21   burden to demonstrate procedural or substantive unconscionability.  The only unique argument

22   raised by Coleman is his position that the arbitration agreement is unconscionable because it lacks

23   mutuality.  However, under Texas law, which applies to this agreement, "[a]rbitration clauses

24   generally do not require mutuality of obligation so long as adequate consideration supports the

25   underlying contract."  *In re Lyon*, 257 S.W.3d 228, 233 (Tex. 2008); *see also Hafer v. Vanderbuilt*

26   *Mortgage and Finance, Inc.*, 793 F. Supp. 2d 987, 1006-07 (S.D. Tex. 2011) (holding that a non-

27   mutual arbitration clause does not render it unconscionable under Texas law).

28

United States District Court
For the Northern District of California

9

Second, Coleman argues that the arbitration agreement is unconscionable because it does not specify which set of the AAA's rules should apply. Plaintiff contends, in the absence of a specific designation, that the AAA's Employment Rules should apply because the dispute arises from Plaintiff's employment. Although the agreement is silent as to which set of rules to apply, the Employment Arbitration Rules and Mediation Procedures would apply to an employment dispute where the contract does not specify the particular set of rules to apply. (*See* Dkt. No. 119-2, Request for Judicial Notice, Ex. B at 15.) The Court finds the lack of designation does not render the arbitration provision unenforceable. *See, e.g., Langston v. Premier Directional Drilling, LP*, 203 F. Supp. 3d 777, 788 (S.D. Tex. 2016) (holding that it is sufficient for an arbitration agreement to reference the AAA rules without specifying the subset of rules to apply).

Once again, Coleman requests that should the Court deem his claim arbitrable that the agreements permit class or collective arbitration. Again, the Court has not been presented with a putative class action claim and, in any event, this is a procedural question clearly delegated to the arbitrator to decide. *See Green Tree Fin. Corp.*, 539 U.S. at 452-53.

**D.      Plaintiff Ted Nunnery's Claims.**

Finally, Chevron moves to compel arbitration for the claims filed by Plaintiff Ted Nunnery, a well site manager who performed services for Chevron on behalf of New Tech Global Ventures, LLC ("New Tech"). Chevron argues Nunnery should be compelled to arbitrate his wage and hour claims against them pursuant to a valid and enforceable arbitration agreement with New Tech with whom he entered consultant contract for services on January 1, 2010. (*See* Dkt. No. 131-2, Declaration of Jesse Cripps ("Cripps Decl.") at Ex. A at ¶¶ 4, 13.) The agreement provides that "Any dispute that cannot be settled amicably shall be submitted to arbitration, the exclusive method of formal dispute resolution under the Texas General Arbitration Act." (*Id.* at ¶ 13.)

Again, Nunnery argues that the scope of his statutory employment claims do not sound in or relate to the contract. However, Nunnery's claims for unpaid overtime wages arises directly from the services he performed under the consultancy contract. It was pursuant to the agreement with New Tech that he performed the services for Chevron. The contract prescribed the compensation he

United States District Court

For the Northern District of California

1   was to be paid for providing professional consulting services and personnel for well site operations.

2   (*Id.* at ¶¶ 1, 5.)

3          Again and for the same reasons as addressed in Richardson's motion to compel, the Court

4   finds Chevron is entitled to enforce the arbitration agreements under the doctrine of estoppel and by

5   virtue of their standing as third-party beneficiaries. *See also In re Citgo Petroleum Corp.*, 248

6   S.W.3d 769, 777 (Tex. App. 2008) (finding, as here with a similar indemnification provision, that an

7   oil company was considered a third-party beneficiary to an arbitration agreement between contractor

8   and subcontractor where there was an indemnification agreement between the oil company and

9   contractor).

10          Lastly, Plaintiff Nunnery requests that the Court grant his request for class or collective

11   arbitration should the Court compel the parties to participate in arbitration to resolve their dispute.

12   Again, there is no class action claim and, in any event, this is a procedural question clearly delegated

13   to the arbitrator to decide. *See Green Tree Fin. Corp.*, 539 U.S. at 452-53.

**CONCLUSION**

15          For the foregoing reasons, the motions to compel arbitration are GRANTED.  The remaining

16   Plaintiffs shall continue to pursue their claims before this Court.

17

18          **IT IS SO ORDERED.**

19   Dated:   December 18, 2017

20                                                                          JEFFREY S. WHITE
                                                                            UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

11