Matthew C. Helland, CA SBN 250451
helland@nka.com
Daniel S. Brome, CA SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiffs and Others
Similarly Situated

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Christopher McQueen, James O'Neal, and Donnie Cummings, on behalf of themselves and others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>Chevron Corporation, Chevron U.S.A., Inc., and DOES 1-50, inclusive,<br><br>Defendants. | **Case No. 4:16-cv-02089-JSW**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO APPROVE INDIVIDUAL SETTLEMENTS; MEMORANDUM IN SUPPORT OF MOTION**<br><br>Date:     June 8, 2018<br>Time:     9:00 a.m.<br>Courtroom: 5, 2nd Floor<br><br>Action Filed: April 20, 2016 |

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. ii

**SUMMARY OF ARGUMENT** ............................................................................................. iv

**NOTICE OF MOTION AND MOTION** ............................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................................ 1

    I.    **INTRODUCTION** ............................................................................................ 1

    II.   **RELEVANT PROCEDURAL HISTORY** ........................................................ 1

        A.   **McQueen v. Chevron** ............................................................................ 1

        B.   **Cenergy's Indemnification Actions** ..................................................... 2

        C.   **Cummings v. Cenergy** ......................................................................... 3

    III.  **THE SETTLEMENT AGREEMENTS** ............................................................ 4

        A.   **Payment Terms** .................................................................................... 4

        B.   **Release Terms** ..................................................................................... 5

        C.   **Redacted Filing** ................................................................................... 6

    IV.  **ARGUMENT** .................................................................................................... 7

        A.   **The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute** .......... 7

            i.   **No absent class member concerns** ............................................ 7

            ii.  **Bona fide dispute** ....................................................................... 8

            iii. **Reasonable compromise** ............................................................ 10

            iv. **Attorneys' fees and costs** .......................................................... 12

    V.   **CONCLUSION** ................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 3924609 (S.D. Cal. Aug. 11, 2014) ............... 12

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)....................................... 11

*Bernstein v. Target Stores, Inc.*, 2013 WL 5807581 (N.D. Cal. Oct. 28, 2013).............................. 6

*Campanelli v. Hershey Co.*, 2011 WL 3583597 (N.D. Cal. May 4, 2011).................................... 12

*Cordero v. Lumenis Inc.*, 2016 WL 4529586 (N.D. Cal. Aug. 30, 2016)................................. 6, 12

*Cummings v. Cenergy Int'l Svcs., LLC*, 271 F.Supp.3d 1182 (E.D. Cal. 2017) ...................... 3, 4, 5

*Duran v. Hershey Co.*, 2015 WL 4945931 (N.D. Cal. Aug. 10 2015) ............................................ 6

*Files v. Federated Payment Sys. USA, Inc.*, 2013 WL 1874602 (E.D.N.Y. April 2, 2013) ............ 7

*Flores v. Velocity Express, LLC*, 250 F. Supp. 3d 468 (N.D. Cal. 2017) ....................................... 8

*Fonseka v. Alfredhouse Eldercare, Inc.*, 2015 WL 3457224 (D. Md. May 28, 2015) ................... 6

*Hogan v. Allstate Beverage Co.*, 821 F.Supp.2d 1274 (M.D. Ala. 2011)..................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).................................... 7

*Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015) ......................................... 7

*Luo v. Zynga Inc.*, 2013 WL 5814763 (N.D. Cal. Oct. 29, 2013).................................................... 6

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ....................................... 7, 8, 10

*Lyons v. Gerhard's Inc.*, 2015 WL 4378514 (E.D. Pa. July 16, 2015)........................................... 6

*Ma v. Covidien Holding*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014)........................................ 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)................... 10

*Nen Thio v. Genji, LL*, 14 F.Supp.3d 1324 (N.D. Cal. 2014) ......................................................... 7

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982)......................... 10

*Ostrander v. Customer Eng'g Servs., LLC*, 2018 WL 1152265 (D. Colo. Mar. 5, 2018) ............... 6

*Parker v. Encore Rehabilitation, Inc.*, 2012 WL 6680311 (S.D. Ala. Dec. 21, 2012) .................... 7

*Poulin v. Gen. Dynamics Shared Res., Inc.*, 2010 WL 1655962 (W.D. Va. April 23, 2010).......... 7

*Prater v. Commerce Equities Mgmt. Co.*, 2008 WL 5140045 (S.D. Tex. Dec. 8, 2008) ................ 7

*Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748 (9th Cir. 1979)................................................ 8

*Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164 (S.D. Cal. 2016) ................... 11

*Smith v. Golden Gate LLC*, 2015 WL 2340231 (E.D. Cal. May 13, 2015) ...................................... 6

*Smolinski v. Ruben & Michelle Enter. Inc.*, 2017 WL 835592 (E.D. Mich. Mar. 3, 2017) ............. 6

*Stanley v. Turner Oil & Gas Properties, Inc.*, 2017 WL 5068444 (S.D. Ohio July 24, 2017) ........ 6

*Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7308492 (N.D.Ga. Feb. 3, 2011) ......................... 7

*Yue Zhou v. Wang's Restaurant*, 2007 WL 2298046 (N.D. Cal. August 8, 2007) .......................... 7

**Statutes**

29 U.S.C. § 216(b) ......................................................................................................................... 11

29 U.S.C. § 255(a) ......................................................................................................................... 11

**Regulations**

29 C.F.R. § 541.100 ........................................................................................................................ 9

29 C.F.R. § 541.200(a) .................................................................................................................... 9

29 C.F.R. § 541.600(a) .................................................................................................................... 9

29 C.F.R. § 541.601(b)(1) ............................................................................................................... 9

## SUMMARY OF ARGUMENT

Five of the Opt-in Plaintiffs have reached agreements to settle their claims against Chevron. Because these settlements include releases of FLSA claims, the Settling Plaintiffs therefore seek Court approval of these settlements. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982). The Court should approve these settlements because they constitute a reasonable compromise of a bona fide dispute.

In addition to ███████████████, these settlements include ███████████ ██████████████ the third party company through which Plaintiffs were paid for their work for Chevron. Because of the risk that Plaintiffs would have to defend indemnification actions brought by Cenergy against Plaintiffs' companies, ████████████████ ██████████████████████████████████████████████████████████████ ███████

Settling Plaintiffs are receiving ████████████████████████████████ ████████████████ considering the real disputes about whether Plaintiffs were employees, whether Chevron can satisfy any exemptions, how many hours Plaintiffs worked, what statute of limitations should apply, whether Chevron can show good faith, and how to calculate damages. The settlements provide for ████████████████████████████, which each Settling Plaintiff specifically agreed to.

Chevron intends to request that the Agreements, and portions of this motion, be filed under seal, as discussed below in section III.C. Therefore, Plaintiffs have redacted portions of this filing in which the settlement terms are discussed. The Agreements themselves, and the un-redacted version of this filing, will be separately provided for the Court's review in conjunction with Chevron's request to seal.

**NOTICE OF MOTION AND MOTION**

Please take notice that on June 1, 2018, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the above-captioned Court, Plaintiffs will, and hereby do, move this Court to approve individual settlement agreements reached between Defendants and five of the Opt-in Plaintiffs.

This Motion is based on this Notice, the Memorandum of Points and Authorities, supporting evidence filed herewith, the Court's file in this matter, and such other arguments or evidence as may be presented at the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Five Opt-in Plaintiffs in this action—Kevin Caudill, Bennie Gipson, Armando Medina, Michael Roberts, and Bryan Wood (here, "Settling Plaintiffs")—have individually settled their claims against Defendants and seek court approval of their respective settlement agreements. The settlement agreements provide a considerable value for Plaintiffs' overtime claims and protect Plaintiffs from ███████████████████████████████████████████████████ ███████████████████. Absent settlement, Plaintiffs would face a drawn-out path to recovery involving extensive, highly contested litigation and arbitration. This Court should grant approval to the Plaintiffs' settlement agreements and dismiss Plaintiffs Caudill, Gipson, Medina, Roberts, and Wood from this action with prejudice.

**II.   RELEVANT PROCEDURAL HISTORY**

   **A. McQueen v. Chevron**

On April 20, 2016, Christopher McQueen and James O'Neal filed this action on behalf of themselves and other similarly situated, seeking unpaid overtime under the Fair Labor Standards Act (FLSA). (ECF No. 1.) Plaintiffs filed a First Amended Complaint on June 9, 2016 adding Donnie Cummings as a Named Plaintiff; Mr. Cummings also asserted individual and class claims under California law based on the same factual allegations. (ECF No. 26.)

On June 30, 2016, Defendants moved to dismiss the First Amended Complaint; in response, Plaintiffs filed a Second Amended Complaint on July 11, 2016. (ECF Nos. 31, 38.)

-1-

Pursuant to stipulation, Plaintiffs filed a Third Amended Complaint, adding claims under the Private Attorney General Act ("PAGA"). (ECF No. 58.) Defendants filed an Answer on September 27, 2016. (ECF No. 62.) Plaintiffs also moved for leave to file a Fourth Amended Complaint; that motion is pending. (ECF No. 175.)

On August 12, 2016, Plaintiffs filed a motion for conditional certification of the FLSA claims. (ECF No. 46.) On February 21, 2017, the Court granted Plaintiffs' motion for FLSA Conditional Certification. (ECF No. 76.) Notice was distributed, and individuals—including the Settling Plaintiffs—opted in to the case through the summer of 2017.

On January 10, 2017, Chevron filed a motion to compel Plaintiff Cummings to pursue his claims in arbitration. (ECF No. 65.) The parties resolved this motion by stipulation (ECF Nos. 68), and Mr. Cummings' claims were ordered to arbitration. (ECF No. 69.) Mr. Cummings's claims were heard December 6–8, 2017, and the arbitrator issued an interim arbitration award on January 4, 2018, finding that Mr. Cummings was misclassified as an independent contractor, and was owed overtime wages under state and federal law, liquidated damages under the FLSA, and meal and rest period premium payments. (ECF No. 160.)

One July 24, 2017, Defendants moved to compel all Plaintiffs who worked for Chevron through Cenergy to individually arbitrate their claims against Defendants and either stay this action pending arbitration, or dismiss the Cenergy Opt-ins' claims. (ECF No. 107). On December 1, 2017, Defendants moved for partial summary judgment on the salary basis test; this motion is still pending. (ECF No. 155). On December 18, 2017 this Court granted Defendants' motion to compel arbitration. (ECF No. 157.)

The parties have attempted mediation twice: first on August 9, 2017 with Mark Rudy, and again with Justice Edward Panelli on March 20, 2018. Both mediations were unsuccessful. (ECF Nos. 109, 174.)

**B. Cenergy's Indemnification Actions**

In the spring and summer of 2017, Cenergy filed over a dozen demands for arbitration against *McQueen* Plaintiffs' corporate entities, which Plaintiffs would have had to defend, and which risked exposing Plaintiffs to individual liability to repay the very wages they were seeking.

-2-

*See Cummings v. Cenergy Int'l Svcs., LLC*, 271 F.Supp.3d 1182, 1187 (E.D. Cal. 2017). Cenergy demanded that Plaintiffs' corporate entities—even if those entities were dissolved and had no assets—"reimburse [Cenergy] for any and all costs that it incurs or owes as a result of the [*McQueen*] Lawsuit, including attorneys' fees, amounts reimbursed to Chevron, costs, penalties, damages, or any other losses." *Id.* (citing Cenergy's March 21, 2017 demand letter to Plaintiff Cummings). Cenergy filed demands against four out of the five Settling Plaintiffs' companies with the American Arbitration Association (AAA).[1]

Cenergy demanded arbitration under AAA's construction industry rules, which require parties to split the costs of arbitration, including a ▮▮▮▮ filing fee, a ▮▮▮▮ "Final Fee" for cases that proceed to hearing, and payment for the arbitrator's time. (ECF No. 113 at 10-11.) The corporate entities of Settling Plaintiffs Gipson, Medina, Roberts, and Wood answered Cenergy's demands and objected to use of the construction industry rules. Their arbitrations remain on file with the AAA as of this date, but are in abatement pending approval of the settlement agreements here.

**C.   Cummings v. Cenergy**

On April 5, 2017, Plaintiffs Cummings, Jones, and Beaty filed a collective action complaint in the Eastern District of California seeking a declaratory judgment preventing Cenergy from seeking indemnification from plaintiffs. *See Cummings*, 271 F.Supp.3d at 1187. On May 5, 2017, plaintiffs filed a motion for a preliminary ▮▮▮▮n enjoining Cenergy from any attempts to collect indemnification from plaintiffs. The court granted Cenergy's motion to dismiss plaintiffs' first complaint and denied plaintiffs motion for preliminary injunction but instructed Plaintiffs to refile.

Plaintiffs filed a first amended complaint on June 29, 2017. Cenergy moved to dismiss the first amended complaint for failure to state a claim. On September 20, 2017 the court denied

---

[1] Gipson: *Cenergy International Services, LLC V. BJG Consulting, LLC* - Case 01-17-0003-7435; Medina: *Cenergy International Services, LLC v. Nation Consulting, LLC* - Case No. 01-17-0003-7441; Roberts: *Cenergy International Services, LLC V. Roberts Consulting, Inc.* - Case 01-17-0003-8352; Wood: *Cenergy International Services LLC v. Wood Drilling Consultants, LLC* - Case No.: 01-17-0003-7467

Cenergy's motion to dismiss, finding that plaintiffs had standing because of the threat of suits by Cenergy against Plaintiffs in their individual capacities, and that plaintiffs' claim for declaratory relief was ripe for adjudication. *Id.* at 1195.

## III. THE SETTLEMENT AGREEMENTS

In March and April 2018, Defendants and Cenergy International Services signed individual settlement agreements with the Settling Plaintiffs. Plaintiffs now seek approval of these agreements, which are largely consistent and will be submitted by Chevron in conjunction with its request to seal.

### A. Payment Terms

The settlement agreements ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[2] (Caudill ¶ 3, Gipson ¶ 4, Medina ¶ 4, Roberts ¶ 4, Wood ¶ 4.) The settlements provide for Cenergy to pay amounts ranging from $10,994.81 to $32,601.16. (Caudill ¶¶ 6-7, Gipson ¶¶ 7-8, Medina ¶¶ 7-8, Roberts ¶¶ 7-8, Wood ¶¶ 7-8.) The individual settlement amounts were calculated based on Plaintiffs' damage calculations, based on the each individual's overtime wages assuming a three-year statute of limitations, and twelve hours of work per shift. Using those assumptions, the settlement amounts are equal to approximately ▮▮▮ of each Settling Plaintiff's lost overtime wages. (Brome Decl. ¶ 2.) The agreements provide that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Caudill ¶¶ 7, 12; Gipson ¶¶ 8, 13; Medina ¶¶ 8, 13; Roberts ¶¶ 8, 13; Wood ¶¶ 8, 13).

---

[2] Caudill's agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

-4-

The agreements provide for ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Costs were assessed on a pro rata basis according to the costs Plaintiffs' Counsel incurred in the relevant matters up to the point of settlement. The attorneys' fees and costs and Settling Plaintiffs' free and clear settlement amounts are as follows:

| Plaintiff | Total Settlement | Attorneys' Fees | Costs | Free and Clear Amount |
|---|---|---|---|---|
| Caudill | ■ | ■ | ■ | ■ |
| Gipson | ■ | ■ | ■ | ■ |
| Medina | ■ | ■ | ■ | ■ |
| Roberts | ■ | ■ | ■ | ■ |
| Wood | ■ | ■ | ■ | ■ |

**B.  Release Terms**

The releases in these agreements are intended to ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ The releases are ■■■■■■■■■■■■■■■■■■■■■■■■■■■ Unlike most FLSA actions, this case involves third-party companies, multiple layers of indemnification agreements, and workers who were paid through their own separate corporate entities. While Plaintiffs maintain that indemnification and threatened indemnification of Plaintiffs, through their corporate entities, contravenes the FLSA, no court has yet resolved that issue in this matter. *See Cummings*, 271 F.Supp.3d at 1194. Accordingly, resolution of all issues related to Plaintiffs' FLSA overtime claims requires a settlement as to the potential indemnification of Defendants' and Cenergy's legal fees and damages by Settling Plaintiffs' corporate entities.

The settlement agreements ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Settling Plaintiffs and Settling Plaintiffs' respective corporate entities ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (Caudill ¶¶ 8-11; Gipson ¶¶ 9-12; Medina ¶¶ 9-12; Roberts ¶¶ 9-12; Wood ¶¶ 9-12). In other words, as a result of these agreements, Settling Plaintiffs and their respective corporate entities ■■■■■

This ███████████████ provides a very real value to Settling Plaintiffs who, █████████████████████████████████████████████████████████████████████████████████. Even though Plaintiffs view those claims skeptically, there is a burden to defend even frivolous claims. Plaintiffs, on behalf of their corporate entities, might have had to ████████████ ███████████████████████████████████████████████████████████████████ In order to ███████ ███████████████████████████████████████████████████████████████████████████████████ ████████.[3]

### C. Redacted Filing

While the agreements do not contain any ████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ██████████████████████████████ (Caudill ¶¶ 5, 22, Gipson ¶¶ 6, 23, Medina ¶¶ 6, 23, Roberts ¶¶ 6, 23, Wood ¶¶ 6, 23.) The Parties agreed that ██████████████████████████████ ████████████████████████████████████████████████████████████████████████████ (*Id.*) Accordingly, Plaintiffs alert the Court to the following recent authority from California district courts: *Cordero v. Lumenis*, 2016 WL 4529586, at **3–5 (N.D. Cal. Aug. 30, 2016); *Duran v. Hershey Co.*, 2015 WL 4945931, *1 (N.D. Cal. Aug. 10 2015); *Smith v. Golden Gate LLC*, 2015 WL 2340231, at *2 (E.D. Cal. May 13, 2015); *Luo v. Zynga Inc.*, 2013 WL 5814763, at *2 (N.D. Cal. Oct. 29, 2013); *Bernstein v. Target Stores, Inc.*, 2013 WL 5807581, at *3 (N.D. Cal. Oct. 28, 2013).

Additionally, Plaintiffs alert the Court to the following authority from outside California: *Ostrander v. Customer Eng'g Servs., LLC*, 2018 WL 1152265, at *5 (D. Colo. Mar. 5, 2018); *Stanley v. Turner Oil & Gas Properties, Inc.*, 2017 WL 5068444, at *2 (S.D. Ohio July 24, 2017); *Smolinski v. Ruben & Michelle Enter. Inc.*, 2017 WL 835592, at *3 (E.D. Mich. Mar. 3, 2017); *Lyons v. Gerhard's Inc.,* 2015 WL 4378514, at *3 (E.D. Pa. July 16, 2015); *Fonseka v. Alfredhouse Eldercare, Inc.*, 2015 WL 3457224, at *2-3 (D. Md. May 28, 2015); *Lopez v. Nights*

---

[3] The settlement agreements do not constitute a release or waiver of claims between Defendants and Cenergy. *See e.g.* Caudill ¶ 10.

*of Cabiria, LLC*, 96 F. Supp. 3d 170, 177 (S.D.N.Y. 2015); *Files v. Federated Payment Sys. USA, Inc.*, 2013 WL 1874602, at *3 (E.D.N.Y. April 2, 2013); *Parker v. Encore Rehabilitation, Inc.*, 2012 WL 6680311, at *4 (S.D. Ala. Dec. 21, 2012); *Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7308492, *2 (N.D.Ga. Feb. 3, 2011); *Poulin v. Gen. Dynamics Shared Res., Inc.*, 2010 WL 1655962, at *5 (W.D. Va. April 23, 2010); *Prater v. Commerce Equities Mgmt. Co.*, 2008 WL 5140045, at *10 (S.D. Tex. Dec. 8, 2008).

## IV.    ARGUMENT

### A. The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute

Settlements of FLSA claims are subject to court approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982). District courts review FLSA settlements to ensure each settlement is a "fair and reasonable resolution of a bona fide dispute." *Nen Thio v. Genji, LL*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Yue Zhou v. Wang's Restaurant*, 2007 WL 2298046 at *1 (N.D. Cal. August 8, 2007) (citing *Lynn's Food*).

#### i. No absent class member concerns

The Settling Plaintiffs negotiated the proposed settlements of their individual claims only. While the Settling Plaintiffs are members of the *McQueen* FLSA collective, they are not named plaintiffs or representative plaintiffs for state law claims. The Settling Plaintiffs will, upon this Court's approval of their settlements, withdraw from the collective action and seek dismissal of their individual claims with prejudice. Remaining plaintiffs and putative class members in the *McQueen* action will be unaffected by the five proposed settlement agreements at hand. Accordingly, there are no "absent class member" concerns regarding approval of these five individual settlement agreements. *See generally In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Nonetheless, because FLSA rights generally cannot be waived, settlement of private actions for back wages pursuant to 29 U.S.C. § 216(b) must be approved by the district court. *Lynn's Food Stores*, 679 F.2d at 1353.

-7-

### ii. Bona fide dispute

To evaluate a proposed FLSA settlement, courts first determine whether the settlement constitutes a "fair and reasonable resolution of a bona fide dispute." *Id.* at 1355. Here, the Parties dispute Plaintiffs' employee status, whether Defendants' day rate compensation plan constituted a salary, as well as whether a two- or three- year statute of limitations is applicable under the Fair Labor Standards Act, and the amount of overtime hours worked and method of calculating damages.

### 1. Independent contractor status

Plaintiffs contend that Defendants misclassified consultant well site and drill site managers ("consultant site managers"), including Plaintiffs, as independent contractors. (ECF No. 58, ¶ 19-20.) Because Defendants classified consultant site managers as independent contractors, Defendants did not pay Plaintiffs overtime premiums for hours worked over forty in a week. (*Id.* at ¶ 21.) Defendants scheduled Plaintiffs for 12-hour shifts on site, and Plaintiffs regularly worked more than 12 hours per shift. (*Id.* at ¶ 26-27.)

Plaintiffs believe that the weight of the evidence, particularly evidence regarding Defendants' control of Plaintiffs' work, weighs strongly in favor of a finding that Plaintiffs are employees and not independent contractors under federal and state law. Defendants disagree, arguing that Plaintiffs were in business for themselves. Defendants also argue that Chevron did not employ Plaintiffs but rather contracted with third party companies to provide services at well- and drill-sites, and these third parties contracted with Plaintiffs as appropriate subcontractors. (*See e.g.* ECF No. 48 at 8.)

Plaintiffs' ability to recover any back pay or penalties hinges on a finding that they were employees, not independent contractors. While Plaintiffs maintain that Chevron's control over their work will mandate a finding of employee status, the independent contractor analysis considers a variety of factors. *See Flores v. Velocity Express, LLC*, 250 F.Supp.3d 468, 478 (N.D. Cal. 2017) (quoting *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754(9th Cir. 1979). There is a bona fide dispute over employee status, which favors settlement approval.

### 2. Payment on a salary basis

Defendants argued that if this Court finds Plaintiffs are employees rather than independent contractors, Plaintiffs are nonetheless exempt from overtime pay under the administrative, executive, and/or highly compensated exemptions to the FLSA. (ECF No. 62 at ¶ 20.) All three exemptions require employees to be compensated on a salary basis. 29 C.F.R. § 541.200(a) (administrative exemption applies to employees "Compensated on a salary or fee basis at a rate of not less than $455 per week); 29 C.F.R. § 541.601(b)(1) (highly compensated exemption requires employee to receive "at least a weekly amount equal to the required salary amount required by § 541.600(a) paid on a salary or fee basis"); 29 C.F.R. § 541.100 (executive exemption applies to employees "compensated on a salary basis at a rate of not less than $455 per week).

Defendants previously moved for summary judgment on the issue of whether their day rate payments qualify as a salary under the FLSA, requesting that this Court "hold that the salary basis test is met for purposes of Plaintiffs' claim for unpaid overtime." (ECF No. 155 at 13.) The Court recently denied Chevron's motion (ECF No. 177), but the Settling Plaintiffs were all ordered to pursue their claims in arbitration (ECF No. 157), and face risk that an arbitrator might not follow this Court's ruling. This issue presents a bona fide dispute, which supports settlement approval.

### 3. Statute of limitations, amount of hours

Even if Plaintiffs prevail on liability by defeating Defendants' independent contractor and exemption defenses, they must still prove damages. The FLSA provides a default two-year statute of limitations, which can be extended to three-years for willful violations. Without the third year, Plaintiffs' damages would be dramatically reduced. Importantly, while Chevron disputes that a three-year statute should apply, these agreements consider the full three years equally. Plaintiffs would also have to prove the amount of their overtime. Plaintiffs contend they regularly worked more than 12 hours per shift; Chevron contends that Plaintiffs were often not required to work for the entire shift. This issue presents a bona fide dispute, which supports approval.

-9-

### iii. Reasonable compromise

Under *Lynn's Food* Stores, the existence of an underlying filed suit "provides some assurance of an adversarial context" for the settlement; this in turn supports a finding that a settlement is not "a waiver of statutory rights brought about by an employer's overreaching." 679 F.2d at 1354. Here, Settling Plaintiffs reached the proposed settlement agreements with Defendants and Cenergy in the highly adversarial context of an ongoing lawsuit, and a broad array of related litigation. The dispute over Plaintiffs' overtime claims has been heavily contested from the beginning with Defendants, Plaintiffs, and third-party companies like Cenergy aggressively pursuing their respective positions. Given the heavily contested, complex nature of the litigation, the results obtained for the settling plaintiffs represent an excellent recovery and favor approval.

Given large number of disputed issues at hand, Settling Plaintiffs are receiving a very good value for their claims. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id*. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Settling Plaintiffs have been represented by Plaintiffs' Counsel in all relevant matters since each Plaintiff opted in to the *McQueen* case. Plaintiffs' Counsel advised Settling Plaintiffs as to the form and implications of the proposed settlement agreements. Plaintiffs' representation by capable counsel also weighs in favor of approval. *Lynn's Food Stores*, 679 F.2d at 1354. Plaintiffs' Counsel here has considerable experience litigating FLSA collective actions. (Brome Decl. ¶ 3).

The settlement amounts here also weigh in favor of approval because they are "fair and

1  reasonable under the circumstances presented." *Selk v. Pioneers Memorial Healthcare Dist.*, 159
2  F.Supp.3d 1164, 1174 (S.D. Cal. 2016). Here, Settling Plaintiffs will receive settlements
3  representing ■■■ of their unpaid overtime wages assuming a three year statute of limitations,
4  twelve hours worked per shift. The set of assumptions represents a compromise between
5  Defendants' and Plaintiffs' theory of possible damages. The parties have engaged in substantial
6  discovery in *McQueen* and are therefore positioned to make accurate assessments of the potential
7  liability. (Brome Decl. ¶ 4.) Plaintiffs argue that a three year (rather than a two year) statute of
8  limitations should apply to the FLSA claims, alleging Defendants willfully misclassified
9  Plaintiffs as independent contractors. (*See* 29 U.S.C. § 255(a)). Plaintiffs also allege they worked
10 more than twelve hours per shift, Defendants allege Plaintiffs only worked up twelve hours per
11 shift, and on some days less than twelve hours.  Defendants also argue that liquidated damages
12 are not appropriate because, if Plaintiffs were misclassified, any misclassification was in good
13 faith. (*See* 29 U.S.C. § 216(b)). These settlements are well within the range of reasonableness.
14 *See Selk*, 159 F.Supp.3d at 1175 (finding settlement fund representing "between 26% to 50% of
15 the best possible recovery". . . "to be in the range of reasonableness for wage and hour actions.");
16 *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving wage and
17 hour class settlement where the settlement fund represented between 9% and 27% of the total
18 potential recovery); *Ma v. Covidien Holding*, 2014 WL 360196, *5 (C.D. Cal. Jan. 31, 2014)
19 (settlement providing "9.1% of the total value of the action [was] 'within the range of
20 reasonableness.'").

21              **1.  ■■■■■■■■■■■■**
22     The fact that Defendants and Cenergy are ■■■■■■■■■■■■■■■ Settling Plaintiffs
23 also favors approval. These ■■■■■■■■■■■■ assure Settling Plaintiffs that they will not be
24 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ And
25 while courts often prefer FLSA settlements to contain ■■■■■■■■, "[t]his is not to say that
26 employees may never agree to ancillary terms when settling FLSA claims; but the court should
27 closely scrutinize the fairness of such 'side deals' because they do not directly relate to any bona
28 fide dispute over FLSA coverage or wages due." *Hogan v. Allstate Beverage Co.*, 821 F.Supp.2d

1274, 1282 (M.D. Ala. 2011). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 2016 WL 4529586 at *3. In *Cordero*, the Plaintiffs also faced potential liability via a countersuit, in that case for alleged breach of a severance agreement. *Id.* The Court found that ▮▮▮▮▮▮▮, plaintiffs "demonstrated that they were advised about what they were releasing and that they considered a mutual release to be adequate consideration for agreeing to a general release", the settlement ▮▮▮▮▮▮▮▮▮▮ constituted a "fair and reasonable resolution." *Id.* Here, Settling Plaintiffs faced a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The ▮▮▮▮▮▮▮▮ in these settlement agreements should not bar approval, because it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### iv. Attorneys' fees and costs

Plaintiffs' counsel has zealously represented Settling Plaintiffs on a contingency basis. (Brome Decl. ¶ 5.) As a result, Plaintiffs' Counsel has not yet received any compensation for their time spent litigating on behalf of Settling Plaintiffs, nor have they received reimbursement for their out-of-pocket costs during litigation. (*Id.*)

The proposed agreements here are "privately negotiated settlement[s]." *Campanelli v. Hershey Co.*, 2011 WL 3583597, *1 (N.D. Cal. May 4, 2011). Unlike a class-wide settlement, each Settling Plaintiff here personally signed off on their individualized settlement agreement containing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Ambrosino v. Home Depot U.S.A., Inc.,* 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Additionally, because this is not a class-wide settlement, the Ninth Circuit's 25% class action benchmark should not apply. Plaintiffs' counsel can provide additional briefing regarding ▮▮▮▮▮ should the Court require it.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the five individual settlements, including the requested attorneys' fees. Plaintiffs also request that, upon settlement approval, the Court dismiss with prejudice the five settling Plaintiffs' from this action.

Dated: April 10, 2017     **NICHOLS KASTER, LLP**

By:   s/Matthew C. Helland
      Matthew C. Helland
      Daniel S. Brome

      Attorneys for Plaintiff and Others Similarly Situated