Matthew C. Helland, CA SBN 250451
helland@nka.com
Daniel S. Brome, CA SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiffs and Others
Similarly Situated

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher McQueen, James O'Neal, Donnie Cummings, and Mike Dyer, on behalf of themselves and others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>Chevron Corporation, Chevron U.S.A., Inc., and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 4:16-cv-02089-JSW<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT**<br><br>Date:      March 15, 2019<br>Time:      9:00 a.m.<br>Courtroom: 5, 2nd Floor<br><br>Action Filed: April 20, 2016 |

1

## TABLE OF CONTENTS

2   TABLE OF AUTHORITIES ........................................................................................ iii

3   SUMMARY OF ARGUMENT ..................................................................................... vi

4   NOTICE OF MOTION AND MOTION .......................................................................... 1

5   MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

6   I.      INTRODUCTION ........................................................................................... 1

7   II.     RELEVANT PROCEDURAL HISTORY.......................................................... 1

8          A.   *McQueen v. Chevron*............................................................................ 1

9          B.   Cenergy's indemnification actions........................................................ 2

10  III.    PLAINTIFFS' CLAIMS ................................................................................... 2

11  IV.     THE SETTLEMENT AGREEMENT................................................................ 3

12  V.      ARGUMENT .................................................................................................. 7

13         A.   The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute ................ 7

14              i.    Bona fide dispute........................................................................ 8

15              ii.   Reasonable compromise ........................................................... 10

16         B.   The class action settlement warrants approval........................................... 12

17         C.   The proposed Settlement is fundamentally fair, adequate, and reasonable .................. 17

18         D.   The Court should approve the PAGA settlement......................................... 20

19         E.   The Court should approve the notice form ................................................ 21

20         F.   The Court should approve the requested attorneys' fees and costs, administration costs,

21              and enhancement awards....................................................................... 21

22  VI.     CONCLUSION ............................................................................................ 25

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Cases**

*Adoma v. University of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012)................................ 23

*Anchem Products v. Windsor*, 521 U.S. 591 (1997) .................................................................. 15

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................................. 14, 15

*Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ................................. passim

*Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822 (C.D. Cal. Jul. 14, 2014)...................... 24

*Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245 (N.D.Cal.2015)........................................ 11

*Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245 (N.D. Cal. 2015)............................ 16

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) ............................................................................. 22

*Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D 623 (N.D. Cal. 2005)............................ 13

*Burden v. SelectQuote Ins. Services*, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)...................... 22

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).................................................. 12

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ................................. 13

*Cummings v. Cenergy Int'l Svcs., LLC*, 271 F.Supp.3d 1182 (E.D. Cal. 2017) ............................. 2

*Deaver v. Compass Bank*, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015)........................ 12, 23, 25

*Duran v. U.S. Bank, NA*, 59 Cal. 4th 1 (2014) ........................................................................... 19

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F.Supp.3d 1074 (C.D. Cal. 2017).... 20

*Flores v. Velocity Express, LLC*, 250 F.Supp.3d 468 (N.D. Cal. 2017) ......................................... 8

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980)...................................................... 13

*Glass v. UBS Financial Services, Inc.,* 2007 WL 221862 (N.D. Cal. 2007) ................................. 22

*Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553 (2004)....................................................... 24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................................. 14, 15, 17

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....................................................... 13

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) .................................. 13

*Hendershot v. Ready to Roll Transportation, Inc.*, 228 Cal.App.4th 1214 (2014) ........................ 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................................... 23

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) .................... 21

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053 (N.D. Cal. 2007) 14, 16

*Johnson v. California*, 543 U.S. 499 (2005) ................................................................. 14

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) .......................................... 12

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................. 12, 21, 22

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, (2016) ................................................... 22

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) .................................................. 22

*Local Joint Executive Bd. of Culinary/Bartender trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) .................................................................................................. 16

*Lusby v. GameStop Inc.*, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ................................ 13, 25

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) .......................................... passim

*Ma v. Covidien Holding*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ..................................... 7, 11

*Multi-Ethnic Immigration Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) ............................................................................................................. 14

*Murillo v. Pac. Gas 7 Elec.*, 266 F.R.D. 468 (E.D. Cal. 2010) .................................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............. 10, 12

*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. 2014) .................................................... 7

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) ............... 10, 12, 17

*Ontiveros v. Zamora*, 2014 WL 3057506 (E.D. Cal. Jul 7, 2014) .................................................. 21

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ...................................... 22

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ................................................................. 21, 22

*Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748 (9th Cir. 1979) .................................................. 8

*Selk v. Pioneers Memorial Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016) ........... 10, 11

*Six Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301 (9th Cir.1990) ................................. 23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................... 13, 25

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................................................ 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................................... 22

*Yue Zhou v. Wang's Restaurant*, 2007 WL 2298046 (N.D. Cal. August 8, 2007) ......................... 7

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266

(9th Cir. 2001) .......................................................................................................... 17

**Statutes**

29 U.S.C. § 255(a) ........................................................................................................ 11

Cal. Lab. Code § 2699(l) ............................................................................................... 20

**Regulations**

29 C.F.R. § 541.100 ........................................................................................................ 9

29 C.F.R. § 541.200(a) .................................................................................................... 9

29 C.F.R. § 541.601(b)(1) ............................................................................................... 9

1

## SUMMARY OF ARGUMENT

2    During a settlement conference with Chief Magistrate Judge Spero on November 26,

3    2018, the parties reached an agreement to settle all the claims brought against Chevron in this

4    litigation. Plaintiffs seek Court approval of the settlement because this settlement includes release

5    of FLSA claims, PAGA claims, and putative class claims. Court approval is warranted because

6    this settlement provides very fair value to the Plaintiffs and class members, and will bring years of

7    litigation to a close. The settlement here calls for Chevron to pay a total of $3,200,000 to resolve

8    the claims of 16 Named and Opt-in Plaintiffs, a putative California class of 34 individuals, and a

9    PAGA representative group of 37 individuals. If the settlement and allocation are fully approved,

10   the members of the settlement group will receive an average of more than $29,406.25 *after*

11   attorneys' fees and costs. This is an excellent result and strongly favors approval, particularly

12   considering the real disputes about whether Plaintiffs were employees, whether Chevron can

13   satisfy any exemption defenses or other defenses, how many hours Plaintiffs worked, what statute

14   of limitations should apply, whether Chevron can show good faith, and how to calculate damages.

15   From its inception, this case has been vigorously contested. Within this case, the parties

16   have litigated a motion for conditional certification, a motion for summary judgment, motions to

17   compel arbitration, discovery disputes, and a contested motion to amend. There have also been

18   numerous other proceedings connected to this one, including multiple arbitrations, state court

19   confirmation proceedings, and a federal court case seeking declaratory relief against a third party.

20   Before reaching the global resolution at issue here, the parties participated in two unsuccessful

21   mediations, and negotiated several individual settlements. The current settlement constitutes a

22   reasonable compromise of a bona fide dispute, and is fundamentally fair and adequate. The Court

23   should grant approval so that close to three years of litigation can be closed.

24   As with the individual settlements the Court has previously approved, the settlement

25   attempts to provide a comprehensive resolution for the Named and Opt-in Plaintiffs by including

26   any Plaintiff corporate entities and the third-party contracting company through which Plaintiffs

27   worked for Chevron in separate mutual releases that all FLSA plaintiffs will execute.

28

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL                    Case No. 4:16-cv-02089-JSW

**NOTICE OF MOTION AND MOTION**

Please take notice that on March 15, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5, 2nd Floor, of the above-captioned Court, Plaintiffs will, and hereby do, move this Court to approve the settlement agreement reached on November 26, 2018.

This Motion is based on this Notice, the Memorandum of Points and Authorities, supporting evidence filed herewith, the Court's file in this matter, and such other arguments or evidence as may be presented at the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiffs Christopher McQueen, James O'Neal, Michael Dyer, and Donnie Cummings seek preliminary approval of a $3,200,000 class and collective settlement. The Settlement Agreement provides a considerable value for Plaintiffs' overtime claims. The settlement also protects the Opt-in Plaintiffs from any potential claims by Defendants and the third-party contracting companies by a mutual release of claims. This settlement provides excellent and substantial value for individuals with challenging claims, provides for prompt and certain payment, and avoids the need for drawn out litigation. The Court should grant preliminary approval so that notice of the settlement may be distributed to the Opt-in Plaintiffs and the Class Members (collectively, "Plaintiffs").

## II.    RELEVANT PROCEDURAL HISTORY

### A.  *McQueen v. Chevron*

On April 20, 2016, Christopher McQueen and James O'Neal filed an action on behalf of themselves and other similarly situated, seeking unpaid overtime under FLSA. (ECF No. 1.) Plaintiffs filed a First Amended Complaint on June 9, 2016 adding Donnie Cummings as a Named Plaintiff; Mr. Cummings also asserted individual and class claims under California law based on the same factual allegations. (ECF No. 26.)

On June 30, 2016, Defendants moved to dismiss the First Amended Complaint; in response, Plaintiffs filed a Second Amended Complaint on July 11, 2016. (ECF Nos. 31, 38.) Pursuant to stipulation, Plaintiffs filed a Third Amended Complaint, adding claims under the

-1-

Private Attorney General Act ("PAGA"). (ECF No. 58.) Defendants filed an Answer on September 27, 2016. (ECF No. 62.) On August 12, 2016, Plaintiffs filed a motion for conditional certification of the FLSA claims. (ECF No. 46.) On February 21, 2017, the Court granted Plaintiffs' motion for FLSA Conditional Certification. (ECF No. 76.) Notice was distributed, and individuals opted in to the case through the summer of 2017.

On January 10, 2017, Chevron filed a motion to compel Plaintiff Cummings to pursue his claims in arbitration. (ECF No. 65.) The parties resolved this motion by stipulation (ECF No. 68), and Mr. Cummings' claims were ordered to arbitration. (ECF No. 69.) Mr. Cummings's claims were heard December 6–8, 2017, and the arbitrator issued an interim arbitration award on January 4, 2018, finding that Mr. Cummings was misclassified as an independent contractor, and was owed overtime wages under state and federal law, liquidated damages under the FLSA, and meal and rest period premium payments. (ECF No. 160.) On December 1, 2017, Defendants moved for partial summary judgment on the salary basis test; this Court denied the motion on April 3, 2018. (ECF Nos. 155, 177.)

**B. Cenergy's indemnification actions**

In the spring and summer of 2017, Cenergy International Services, one of the third-party contracting companies through which plaintiffs worked for Chevron, filed over a dozen demands for arbitration against *McQueen* Plaintiffs' corporate entities. Cenergy Plaintiffs would have had to defend against these arbitrations, at the risk of exposing Plaintiffs to individual liability to repay the very wages they sought in *McQueen*. *See Cummings v. Cenergy Int'l Svcs., LLC*, 271 F.Supp.3d 1182, 1187 (E.D. Cal. 2017). Cenergy demanded that Plaintiffs' corporate entities— even if those entities were dissolved and had no assets—"reimburse [Cenergy] for any and all costs that it incurs or owes as a result of the [*McQueen*] Lawsuit, including attorneys' fees, amounts reimbursed to Chevron, costs, penalties, damages, or any other loses." *Id.* (citing Cenergy's March 21, 2017 demand letter to Plaintiff Cummings).

**III.   PLAINTIFFS' CLAIMS**

Plaintiffs performed work for Chevron as well site or drill site supervisors. Plaintiffs were not directly employed by Chevron, rather, they were paid through a variety of third-party staffing

-2-

companies. Plaintiffs worked 12-hour shifts that often lasted even longer, often for seven or fourteen days in a row. For this, Plaintiffs were paid a day rate, sometimes over $1,000 per day worked. Plaintiffs were not separately paid any overtime premiums. Plaintiffs seek unpaid overtime, arguing that a) they were misclassified as independent contractors, and should have been treated as employees of Chevron and protected by federal and state wage laws, and b) their day rate payments did not separately compensate for overtime, and did not meet the salary basis test that would be required for Chevron to claim an exemption defense.

## IV.    THE SETTLEMENT AGREEMENT

On November 26, 2018, the parties participated in a full-day settlement conference with Magistrate Judge Spero. At that conference, the parties agreed to the essential terms to resolve Plaintiffs' claims, as well as the related *Cummings* arbitration and confirmation litigation. The parties have continued to negotiate the terms of the final settlement agreement. Once the agreement is executed, Plaintiffs will supplement this filing.[1] Plaintiffs now seek preliminary approval of the Settlement Agreement.

The general structure and terms of the settlement are familiar: following preliminary approval, notice will be distributed. Opt-in Plaintiffs who accept their offer, and all PAGA representative group members, and all Rule 23 Class Members who do not opt-out of the settlement (collectively, "Settlement Group Members"), will receive their allocation following final approval. Several terms are explained in more detail:

Settlement Amount. Defendant will pay a total settlement amount of $3,200,000, which includes settlement payments to all Settlement Group Members, administrative costs, incentive awards, fees and costs award, and all Individual Settlement Payments. (Agreement §II.D.1.)

Scope of the Settlement Classes. This settlement includes all Opt-in Plaintiffs who have filed consent to join forms ("Collective Members") and have not withdrawn, been compelled to individual arbitration, or separately settled their claims, a PAGA group, and a Rule 23 settlement

---

[1] The Settlement Notice may be revised slightly while the agreement is being executed, and the parties will notify the Court if any changes are made to the Notice. Similarly, Because the settlement resolves the PAGA claims, Plaintiffs will also submit the finalize agreement to the Labor and Workforce Development Agency once it is fully executed.

class. The Settlement also includes Bobby Richardson, who filed an individual arbitration. The parties stipulate to the certification of the Rule 23 State Law Settlement Class for settlement purposes only (Agreement § II.G.):

- The California Class is defined as all Persons who have worked for Defendants in California as well site/drill site managers, who were classified as independent contractors or consultants and who were paid a day rate, at any time within four years prior to this action's filing date through the trial of this action, and who did not sign an arbitration agreement substantially the same as one of those under which this Court has compelled arbitration, and who do not communicate a timely written request for exclusion from the settlement.

Allocation. In consultation with Defendant's Counsel and with assistance from Magistrate Judge Spero, Plaintiffs' Counsel calculated a reasonable allocation of the settlement amounts for all Settlement Group Members. This allocation began with global damages, which were then weighted and allocated. (Brome Decl. ¶ 5.)

**1. Global damage calculations.** Using pay data and work history data provided by Defendants and the Third Party Service Companies, Class Counsel calculated potential damages for the Members of the FLSA Collective, the California Class, and the PAGA Group. Damages were calculated using the same methodology as was used in the *Cummings* arbitration, which was approved by the arbitrator with Chevron's agreement. Specifically, Class Counsel determined days worked and amounts paid using invoice/ time sheet records, where available. Days worked were then assigned a fixed number of hours (12.5 for the California Class and 14 for the FLSA group, to reflect evidence that work days were more likely to be longer in areas outside of California). The regular wage rate was calculated by dividing the weekly amount paid by the total number of hours worked in a workweek. The overtime wage rate was calculated by multiplying the regular wage rate by 0.5. Class Counsel applied a 3-year statute of limitations period for FLSA claims. Class Counsel applied a 4-year statute of limitations for California overtime claims and meal and rest period claims

-4-

(based on a California filing date of August 30, 2017, which accounts for limited tolling) for the 34 members of the California Class and Mike Dyer's California claims. Class Counsel applied the statutory double damages under the FLSA. PAGA penalties were calculated for the 38 individual members of the PAGA group for overtime penalties ($100 for the initial violation and $200 for subsequent violations), meal and rest penalties (each $100 for the initial violation and $200 for subsequent violations), and intentional independent contractor misclassification penalties ($25,000 per individual). No damages were assigned for waiting time or wage statement penalties because those claims were rejected in the *Cummings* arbitration. For some members of the California Class, detailed invoice records were not available so damages were calculated using dates of work and average damages amounts.

    **2.** **Weighted calculations for settlement subgroups.** The settlement allocation assigns a 75% chance of success to the FLSA claims, and to Mike Dyer's individual California state law claims. Bobby Richardson's claims are assigned a 65% chance of success because of the additional risks associated with proceeding in arbitration in the Fifth Circuit. The allocation assigns a 25% chance of success to the California Class, to reflect additional risk associated with class certification. The PAGA group is assigned a 5% chance of success to reflect the risk associated with discretionary penalty claims.

    **3.** **Proportionate allocation of weighted calculations.** The total value of the weighted calculations based on these inputs is $3,195,322.73 which closely tracks the amount of the Gross Settlement Fund. Payments for FLSA Collective Members, the California Class, and the PAGA group were then allocated proportionately to reflect anticipated attorneys' fees and costs and service awards.

    <u>Claims Administration.</u> The Parties have agreed that Rust Consulting, Inc. (the "Claims Administrator") will distribute notice of the settlement, and distribute settlement payments out of

a qualified settlement fund. (Agreement § II.H.) Rust distributed judicial notice after conditional certification and provided a very reasonable bid for this work.

Non-Reversionary Settlement. The settlement amount is non-revisionary. (*See* Agreement §§ II.E-G.) If any Rule 23 Class Members opt out of the settlement, amounts allocated to those individuals will not revert to Defendant but will be reallocated to participating Plaintiffs. (*Id.* § II.G.) If checks remain uncashed after 180 days, those amounts will be donated to Bet Tzedek as *cy pres* recipient, subject to Court approval. (*Id.* § II.I.3.)

Releases. The FLSA Opt-ins will execute mutual general releases, like the individuals who have previously reached individual settlement. (Agreement § II.J.2, Ex. A.) The release in this agreement is intended to resolve all claims between the Named and Opt-in Plaintiffs, their corporate entities, Chevron, and the third-party contracting companies. The release is therefore broad, and completely mutual. Unlike most wage and hour actions, this case involves third-party companies, multiple layers of contracts, some of which include indemnification agreements, and workers who were paid through their own separate corporate entities. While Plaintiffs maintain that indemnification claims against workers or their corporate entities would contravene the FLSA, no court has yet resolved that issue in this matter. *See Cummings*, 271 F.Supp.3d at 1194. Accordingly, resolution of all issues related to Plaintiffs' wage and hour claims appropriately includes a settlement of potential indemnification of Defendants' legal fees and damages by Plaintiffs' corporate entities. Like the individual agreements previously approved, the Settlement Agreement provides for a mutual release of claims. Plaintiffs and their companies release claims against Defendants and the third-party contracting companies, and, crucially, Defendants and the third-party contracting companies will release all claims against Plaintiffs and their companies. (Agreement § II.J.2, Ex. A.) In other words, as a result of this agreement, Plaintiffs will not face exposure through a potential indemnification action.

The Rule 23 Class Members will give up their state law wage claims related to their work as consultant site managers, but will not sign a general release.

This settlement represents an excellent result for Class and Collective Members, both in terms of monetary value, and the non-monetary terms. After deduction for attorneys' fees (25%)[2], litigation costs (up to $40,000) and administration costs (up to $7,500), the Settlement will pay $2,352,500 to fewer than 100 individuals.[3] Furthermore, the Settlement is non-revisionary, and the releases are reasonably tailored to the claims at issue. (Agreement § II.J.) As explained below, the settlement amount is reasonable in light of the damages calculated for Plaintiffs and the litigation risks. *Id.* The settlement amount strongly supports approval. *Compare with, e.g., Ma v. Covidien Holding*, 2014 WL 360196, \*5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'")

The Settlement is also reasonable considering the individual payments. After applying the agreed-upon calculations and the pro-rata distribution, Individual Settlement Amounts are substantial. After attorneys' fees and costs, the average PAGA payment is $1,026.60. Payments for Class Members range from $36.59 (for an individual with less than one covered week) up to $31,838.38, and average $17,936.62. (Brome Decl. ¶ 5.) Individual Settlement Amounts for FLSA Opt-ins average range from $2,558.20 to $277,626.75, and average $116,025.35.[4] *Id.*

<u>Payment Terms</u>. The agreements provide that the payments to Plaintiffs will be characterized as non-wages, reported on a 1099, divided between boxes 3 and 7.

## V.     ARGUMENT

### A.   The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute

Settlements of FLSA claims are subject to court approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982). District courts review FLSA settlements to ensure each settlement is a "fair and reasonable resolution of a bona fide dispute." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back

---

[2] Plaintiffs' Counsel has a one-third contingency agreement with their clients, but only seek 25% for this settlement.
[3] The data Chevron has provided to Plaintiffs' Counsel does not identify how much overlap exists between the California Class and the PAGA group.
[4] These numbers represent the total allocation, based on FLSA damages and state law damages. Some FLSA Opt-ins are also Class Members.

wages, that are actually in dispute . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Yue Zhou v. Wang's Restaurant*, 2007 WL 2298046 at *1 (N.D. Cal. August 8, 2007) (citing *Lynn's Food*).

### i. Bona fide dispute

To evaluate a proposed FLSA settlement, courts first determine whether the settlement constitutes a "fair and reasonable resolution of a bona fide dispute." *Id*. at 1355. Here, the primary issues in dispute are Plaintiff's employee status and Defendants' day rate compensation plan. The Parties also dispute whether a two- or three- year statute of limitations is applicable under the Fair Labor Standards Act, and the amount of overtime hours worked and method of calculating damages.

### 1. Independent contractor status

Plaintiffs contend that Defendants misclassified consultant well site and drill site managers ("consultant site managers") as independent contractors. (ECF No. 58, ¶ 19-20). Because Defendants classified consultant site managers as independent contractors, Defendants did not pay overtime premiums for hours worked over forty in a week. (*Id.* at ¶ 21). Defendants scheduled Plaintiffs for 12-hour shifts on site, and they regularly worked more than 12 hours on average per shift. (*Id.* at ¶ 26-27).

Plaintiffs believe that the weight of the evidence, particularly evidence regarding Defendants' control of Plaintiffs' work, weighs strongly in favor of a finding that Plaintiffs are employees and not independent contractors under federal law. Defendants disagree, arguing that Plaintiffs were in business for themselves. Defendants also argue that Chevron did not employ Plaintiffs but rather contracted with third party companies to provide services at well- and drill-sites, and these third parties contracted with Plaintiffs as appropriate subcontractors. (*See e.g.* ECF No. 48 at 8).

Plaintiffs' ability to recover any back pay or penalties hinges on a finding that they were employees, not independent contractors. While Plaintiffs maintain that Chevron's control over his work will mandate a finding of employee status, the independent contractor analysis considers a variety of factors. *See Flores v. Velocity Express, LLC*, 250 F.Supp.3d 468, 478 (N.D. Cal. 2017)

-8-

(quoting *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979)). There is a bona fide dispute over employee status, which favors settlement approval.

## 2.  Payment on a salary basis

Defendants argued that if this Court finds Plaintiffs are employees rather than independent contractors, Plaintiffs are nonetheless exempt from overtime pay under the administrative, executive, and/or highly compensated exemptions to the FLSA. (ECF No. 62 at ¶ 20). All three exemptions require employees to be compensated on a salary basis. 29 C.F.R. § 541.200(a) (administrative exemption applies to employees "Compensated on a salary or fee basis at a rate of not less than $455 per week); 29 C.F.R. § 541.601(b)(1) (highly compensated exemption requires employee to receive "at least a weekly amount equal to the required salary amount required by § 541.600(a) paid on a salary or fee basis"); 29 C.F.R. § 541.100 (executive exemption applies to employees "compensated on a salary basis at a rate of not less than $455 per week).

Defendants previously moved for summary judgment on the issue of whether their day rate payments qualify as a salary under the FLSA, requesting that this Court "hold that the salary basis test is met for purposes of Plaintiffs' claim for unpaid overtime." (ECF No. 155 at 13.) The Court denied Chevron's motion (ECF No. 177), but Chevron has indicated that it has considered filing an appeal, which could lead to significant delays and risk of reversal. This issue presents a bona fide dispute, which supports settlement approval.

## 3.  Statute of limitations, amount of hours

Even if Plaintiffs prevail on liability by defeating Defendants' independent contractor and exemption defenses, they must still prove damages. The FLSA provides a default two-year statute of limitations, which can be extended to three-years for willful violations. Without the third year, Plaintiffs' total FLSA damages would be cut almost in half, and four Opt-in Plaintiffs would have no damages at all. Because the Court is only charged with reviewing the FLSA settlement for fairness, the settlement gives great value considering the risks associated with Plaintiffs' FLSA claim. Plaintiffs would also have to prove the amount of his overtime. Plaintiffs contend they regularly worked more than 12 hours per shift; Chevron contends that Plaintiffs were often not required to work for the entire shift. This presents a bona fide dispute, and supports approval.

### ii.  Reasonable compromise

Under *Lynn's Food*, the existence of an underlying filed suit "provides some assurance of an adversarial context" for the settlement; this in turn supports a finding that a settlement is not "a waiver of statutory rights brought about by an employer's overreaching." 679 F.2d at 1354. Here, Plaintiffs reached the proposed settlement agreement with Defendants in the highly adversarial context of multiple overlapping lawsuits and arbitrations. The dispute over Plaintiffs' overtime claims has been heavily contested from the beginning with Defendants, Plaintiffs, and third-party companies aggressively pursuing their respective positions. Given the heavily contested, complex nature of the litigation in this action as well as a related Eastern District action and arbitrations, the results obtained for the Plaintiffs represent an excellent recovery.

Given large number of disputed issues at hand, Plaintiffs are receiving a very good value for their claims. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id.* Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Plaintiffs have been represented by Plaintiffs' Counsel in all relevant matters since each Plaintiff opted in to the *McQueen* case. Plaintiffs' Counsel advised each Plaintiff about the amount, form, and implications of the proposed settlement agreements. Plaintiffs' representation by capable counsel also weighs in favor of approval. *Lynn's Food Stores*, 679 F.2d at 1354. Plaintiffs' Counsel here has considerable experience litigating FLSA collective actions. (Brome Decl. ¶ 3, Exhibit B.).

The settlement amount here also weighs in favor of approval because it is "fair and reasonable under the circumstances presented." *Selk v. Pioneers Memorial Healthcare Dist.*, 159

-10-

F. Supp. 3d 1164, 1174 (S.D. Cal. 2016). Here, a total of $1,740,380.32 of the total settlement will go towards FLSA Opt-in payments (this amount includes allocation for California damages for the five Opt-ins who also have California claims). That amount is *more than* the total FLSA damages under the parameters of the Cummings arbitration result. (Brome Decl. ¶ 5.)

The parties have engaged in substantial discovery in *McQueen* and are therefore positioned to make accurate assessments of the potential liability. (*Id.* ¶ 4.) Plaintiffs argue that a three year (rather than a two year) statute of limitations should apply to the FLSA claims, alleging Defendants willfully misclassified Plaintiffs as independent contractors. (*See* 29 U.S.C. § 255(a)). Plaintiffs also allege they worked more than twelve hours per shift, while Defendants allege Plaintiffs only worked up twelve hours per shift, and on some days less than twelve hours. Defendants also argue that liquidated damages are not appropriate because, if Plaintiffs were misclassified, any misclassification was in good faith. (*See* 29 U.S.C. 216(b)). This settlement is well within the range of reasonableness. *See Selk*, 159 F. Supp. at 1175 (finding settlement fund representing "between 26% to 50% of the best possible recovery". . . "to be in the range of reasonableness for wage and hour actions."); *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 256 (N.D.Cal.2015) (approving wage and hour class settlement where the settlement fund represented between 9% and 27% of the total potential recovery); *Ma v. Covidien Holding*, 2014 WL 360196, *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'").

This settlement avoids expenditures of resources for all parties and the Court, and provides "significant benefit that [Plaintiffs] would not receive if the case proceeded— certain and prompt relief." *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). The settlement is also reasonable because the proposed releases are appropriate. Most importantly, the settlement provides very good value for Plaintiffs' claims. The total settlement amount of $3,200,000 is equal to the weighted value of the claims based on the assumptions explained above. (Assuming 75% chance of success on FLSA claims and Plaintiff Dyer's California claims, 65% chance of success for Mr. Richardson's individual arbitration, 25% chance of success on California class claims and 5% chance of success on PAGA claims, the total value is $3,195,322.73. The total

-11-

settlement amount also compares well to the total value of the claims if those discounts are removed. Assuming complete success on the FLSA claims (including liquidated damages and the third-year) and 12.5 hours per shift for California shifts and 14 hours per day outside of California, the maximum potential value is $7,434,468.63.[5] (Brome Decl. ¶ 5.) The amount of the settlement supports approval. *See Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (settlement that "constitutes between 30% to 60% of recoverable damages" supports approval); *Knight v. Red Door Salons, Inc*., 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages was substantial achievement and favored approval). Because the settlement represents a fair and reasonable resolution of a *bona fide* dispute over wages, as opposed to employer overreaching, the Court should approve the settlement.

## B. The class action settlement warrants approval

"Judicial policy strongly favors settlement of class actions." *Deaver v. Compass Bank*, 2015 WL 8526982, at *3 (N.D. Cal. Dec. 11, 2015) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id*. The Court should approve the Settlement because the payments to Plaintiffs are substantial, and they represent a reasonable compromise of Plaintiffs' state law wage and hour claims.

The settlement also reflects compromise in that it avoids the uncertainty of continued litigation. Even if Plaintiffs prevailed, that would take time and resources directed toward litigation. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are

---

[5] Alternatively, the minimum potential value—if Plaintiffs recovered FLSA overtime wages based on 12 hours per shift, under a two year statute of limitations, with no liquidated damages, and lost class certification and received no PAGA penalties—is $886,983.29. (Brome Decl. ¶ 5.)

-12-

preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). This settlement avoids expenditures of resources for all parties and the Court, and provides a significant benefit over continued litigation: "prompt, guaranteed recovery." *Lusby v. GameStop Inc.*, 2015 WL 1501095, at *6 (N.D. Cal. Mar. 31, 2015). The Court should grant approval.

### 1. The Proposed Class Satisfies the Requirements of Rule 23(a)

Where a class action is settled before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The court should address the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). Here, the California class satisfies these requirements, and so court approval of the class settlement is appropriate.

#### a. *Numerosity*

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute numerical threshold. *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D 623, 628 (N.D. Cal. 2005). Instead, numerosity demands "examination of the specific facts of each case." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (citing *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). "'[I]mpracticality' does not mean 'impossibility,' but only the difficult or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).

The numerosity requirement is satisfied here because joinder of all members of the proposed Rule 23 class is impracticable. The California Class covers 34 individuals. Furthermore, the employees in the proposed class are geographically dispersed throughout the country. Bringing all these individuals before the Court would be impractical. *See Hendershot v. Ready to Roll Transportation, Inc.*, 228 Cal.App.4th 1214, 1222-23 (2014) (applying federal standard and reversing trial court's denial of certification for a group of nine workers and rejecting a bright line

-13-

test that failed to address "the 'ultimate issue . . . [of] whether the class is too large to make joinder practicable'"). Further, judicial economy is served by resolving the class claims here. Particularly given the Parties have reached a settlement that provides substantial relief to class members while preserving their option to opt-out and pursue their claims individually, judicial economy is favored by certifying the claims for settlement purposes. These class members will benefit by receiving a settlement check without having to submit a claim form.

b. *Commonality*

In the Ninth Circuit, "Rule 23(a)(2) has been constructed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality is typically satisfied where plaintiffs challenge "a system-wide practice or policy that affects all the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). Whether class members were subject to a given compensation policy, and whether that policy was uniformly applied and unlawful are common questions of law and fact that satisfy Rule 23(a)(2). *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1065–68 (N.D. Cal. 2007) (finding predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members).

Here, the class is principally bound by the questions of whether Defendant improperly classified Plaintiffs as independent contractors and failed to pay overtime when paying on a day rate basis only. By virtue of these common practices, Plaintiffs were denied their right to overtime compensation. Plaintiffs' additional class claims are derivative of these common questions. The answers to these questions do not depend on an individualized analysis and will drive the outcome for all class members. Accordingly, the commonality requirement is satisfied.

c. *Typicality*

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially

-14-

identical." *Hanlon*, 150 F.3d at 1020; *Multi-Ethnic Immigration Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 631 (C.D. Cal. 2007). Typicality is satisfied where the class members' claims arise from the same course of events, and class members make similar legal arguments. *Armstrong*, 275 F.3d at 868.

Here, the Representative Plaintiff's claims are typical of members of the California class. Plaintiff Dyer[6] worked in California during the relevant time period, and so has the same state law claims as the rest of the class. Furthermore, Plaintiff Dyer routinely worked more than forty hours per week and more than eight hours per day during the class periods. Plaintiff Dyer worked as a consultant site manager and had the same work duties as class members. Finally, Plaintiff Dyer and the classes were subject to Defendants' policy and practice of improperly classifying consultant site managers as independent contractors and paying only on a day rate basis, thus failing to pay them appropriate overtime compensation, waiting penalties, and providing meal breaks. Plaintiff Dyer's claims are co-extensive with the class members' because Plaintiff and class members all allege they "were all Defendant's employees, working under the same pay practices and the same company-wide employment policies." *Barbosa*, 297 F.R.D. at 442. The claims are typical.

d.   <em>Adequacy</em>

The adequacy factor requires: (1) that the proposed representative Plaintiff does not have conflicts of interest with the proposed class; and (2) that Plaintiff and competent counsel will vigorously prosecute the action. *Hanlon*, 150 F.3d at 102-21; Fed R. Civ. P. 23(a)(4). Plaintiff Dyer is an adequate representative of the settlement classes. There are no conflicts of interest within the proposed settlement that would pit Plaintiff against one another or against the class members. Plaintiff Dyer is "part of the class and possess the same interest[s] and suffer the same injur[ies] as class members." *Anchem Products v. Windsor*, 521 U.S. 591, 625-26 (1997). Moreover, the settlement provides payment to the Plaintiff Dyer is on the same formula as class members. While the Settlement provides for a modest enhancement award for Plaintiff Dyer, that

---

[6] Plaintiff Dyer is the only class representative plaintiff. Plaintiffs McQueen and O'Neal did not work in California, and Plaintiff Cummings resolved his claims individually through arbitration.

-15-

1   does not defeat adequacy, and in this district "a $5,000 payment is presumptively reasonable."

2   *Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015).[7]

3      Plaintiff and Plaintiffs' counsel satisfy the requirement of vigorous prosecution because

4   competent counsel reached the decision to settle this matter after discovery and mediation with a

5   skilled mediator. (Brome Decl. ¶ 7.) The Court may properly conclude "that plaintiff's counsel

6   has vigorously sought to maximize the return on its labor and to vindicate the injuries of the entire

7   class." *Murillo v. Pac. Gas 7 Elec.*, 266 F.R.D. 468, 467 (E.D. Cal. 2010).

8      Finally, Plaintiffs' counsel is a qualified firm with extensive experience in class action and

9   wage and hour litigation. The Nichols Kaster Firm ("NK") has been in existence for over thirty

10  years, and is focused on advocating for employee and consumer rights. (Brome Decl. ¶ 3, Ex. B:

11  Nichols Kaster Firm Resume.) NK has represented thousands of employees in hundreds of cases.

12  (*Id*.) The Representative Plaintiff and Class Counsel satisfy the adequacy requirement of Rule 23.

13          **2.   The Proposed Classes Satisfy the Requirements of Rule 23(b)(3)**

14      In addition to satisfying the Rule 23(a) requirements, the proposed classes "must also meet

15  at least one of the requirements of Rule 23(b)." *Barbosa*, 279 F.R.D. at 443. The Rule 23(b)

16  requirements, known as predominance and superiority, focus on the relationship between the

17  common and individual issues. "When common questions present a significant aspect of the case

18  and they can be resolved for all members of the class in a single adjudication, there is clear

19  justification for handling the dispute on a representative rather than on an individual basis." *In re*

20  *Wells Fargo Home Mortg.*, 527 F.Supp.2d at 1064 (citing *Local Joint Executive Bd. of*

21  *Culinary/Bartender trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)).

22  Here, as noted above, common issues bind the proposed class—whether Defendants improperly

23  classified class members as independent contractors and paid them a day rate only. These

24  practices drove the filing of this case and form the basis of this settlement. They are a significant

25

26

27  [7] As discussed below, the Agreement provides for a larger enhancement for Named Plaintiffs
    McQueen and O'Neal, who were both deposed for a full day, and who came forward initially to
28  bring this case.

-16-

1    aspect of the case sufficient to find that common issues predominate over individual issues and

2    support certification of the settlement class.

3          Likewise, class-wide relief is a superior method of adjudicating this controversy. "Where

4    class-wide litigation of common issues will reduce litigation costs and promote greater efficiency,

5    a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*,

6    97 F.3d 1227, 1234 (9th Cir. 1996). In considering whether a class action is superior, the court

7    must focus on whether the interests of "efficiency and economy" would be advanced by class

8    treatment. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *amended by*

9    273 F.3d 1266 (9th Cir. 2001). Where, as here, a class settlement provides compensation to a

10   group, whose individual damages are modest, the superiority requirement is satisfied. *Barbosa*,

11   297 F.R.D. at 445. As illustrated above, this settlement provides significant monetary relief for

12   Plaintiffs and putative class members. It would be inefficient and uneconomical to abandon this

13   settlement and force class members to litigate their nearly identical cases individually.

14          **C.  The proposed Settlement is fundamentally fair, adequate, and reasonable**

15          While the final analysis of whether the proposed settlement is fair, reasonable, and

16   adequate is typically made after a hearing, Fed. R. Civ. P. 23(e)(1)©, Plaintiffs provide the Court

17   with an initial assessment of these factors in order to facilitate the approval process. The Ninth

18   Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement

19   requires this Court to balance several factors: the strength of plaintiffs' case; the risk, expense,

20   complexity, and likely duration of further litigation; the risk of maintaining class action status

21   throughout the trial' the amount offered in settlement; the extent of discovery completed, and the

22   stage of the proceedings; the experience and views of counsel; the presence of a governmental

23   participant; and the reaction of the class members to the proposed settlement. *Officers for Justice*,

24   688 F.2d at 625; *see also Hanlon*, 150 F.3d at 1026. These factors support preliminary approval

25   of the settlement. Plaintiffs also note that this settlement compares favorably with a recent case,

26   *McCulloch v. Baker Hughes*, in which the plaintiffs were represented by Plaintiffs' Counsel,

27   which dealt with workers in the oil and gas industry who were paid on a day rate basis. 2017 WL

28   5665848 (E.D. Cal. Nov. 27, 2017). That case resulted in a $3,000,000 settlement, and covered a

-17-

larger number of FLSA plaintiffs, and included California and Pennsylvania claims for a roughly similar total group size. (Brome Decl. ¶ 11.)

### 1.   The strengths of Plaintiffs' case

Plaintiffs contend that Defendants incorrectly classified consultant site managers as independent contractors, and improperly paid on them on a day rate basis, without overtime premiums. Plaintiffs previously defeated Defendants' partial summary judgment motion. However, there is no Ninth Circuit authority controlling whether a day rate payment can satisfy the salary basis test. As other circuits weigh in on this question, Plaintiffs' position could become weaker, and Chevron had previously expressed a willingness to pursue appellate challenges on this issue. And while Plaintiffs prevailed at one individual arbitration, the resolution of the independent contractor analysis is very fact-specific, so reaching the same outcome in subsequent proceedings is certainly not guaranteed. Further, the outcome of the *Cummings* arbitration illustrates how many variables are present in this litigation. In that case, the arbitrator approved payment of overtime and liquidated damages, and meal and rest period premiums. However, she rejected Claimant's request for a three-year statute of limitations, and rejected the request for wage statement and waiting time penalties. Given the risks inherent in litigation, both on the merits and damages, the Court should approve the settlement.

### 2.   The risk, expense, complexity, and duration of further litigation

This case has been expensive and complex. The case has been pending for more than two years, has seen numerous contested motions and numerous related cases. There is every reason to believe that further proceedings would have been similarly contentious and complicated. Without this settlement, the Parties would face additional discovery, contested class certification, decertification, and summary judgment motions. Because many of the contested issues are fact-intensive, it is very possible the case would not be resolved on summary judgment, meaning liability and damages would be resolved at trial. Wage and hour trials are complex, expensive, and unpredictable. If Plaintiffs were to prevail on liability, Defendants would likely appeal. Absent this settlement, payment for Plaintiffs would have been uncertain, and would have taken dramatically longer. By way of example, a wage and hour case against U.S. Bank, filed in

-18-

December 2001, resulted in a substantial verdict for the plaintiffs in September 2008, which was reversed almost six years later by the California Supreme Court. *See Duran v. U.S. Bank, NA*, 59 Cal. 4th 1, 14 (2014). There is no quick and easy route to payment for Class Members absent this settlement. This factor therefore supports approval of the settlement.

### 3. The risk of maintaining class action status through trial

As noted above, the Parties agree that this case is appropriate for settlement on a class-wide basis. However, Plaintiffs have not yet moved for class certification, and Defendants would have opposed Rule 23 certification.[8] This settlement provides substantial relief to class members which could otherwise be unavailable. Importantly, the Rule 23 Class Members received judicial notice at the time of conditional certification and had the opportunity to join the case to assert their FLSA claims. Subsequently pursuing a class action for individuals who did not opt-in will likely present additional challenges. The Court should approve the settlement.

### 4. The amount offered in settlement

The settlement amount, $3,200,000, will bring substantial relief to the class members. Settlement payments for Class Members range from $36.59 (for an individual with less than one covered week) up to $31,838.38, and average $17,936.62. (Brome Decl. ¶ 6.) Fourteen Class Members will receive over $20,000. (*Id.*) The settlement allocation reflects a very good result compared to possible results in litigation. The settlement allocation is fair and reasonable, because it is based on individual earnings and work history, meaning it gives the greatest payment to workers with the largest potential claims. To the extent possible, Class Counsel calculated damages for all class members based on Defendant's records, using individualized compensation records and a uniform hours assumption.

Importantly, Class Counsel reviewed and analyzed payroll data for Rule 23 Class Members and FLSA Opt-Ins prior to mediation. (Brome Decl. ¶ 7.) Armed with this data, Class Counsel was able to analyze potential damages in conjunction with the risk of loss to Class Members. As

---

[8] The settlement allocation recognizes the additional difficulty faced by Rule 23 class members by assuming a 25% risk of loss for state law claims as compared to the FLSA claims which have already been conditionally certified.

-19-

explained above the total settlement amount—$3,200,000—matches the weighted damages total (applying risk of loss reductions based on each group's unique risks), and compares favorably with the maximum potential value of $7,434,468.63. (Brome Decl. ¶ 6.)

### 5.   The extent of discovery completed and the stage of proceedings

The Parties have conducted ample written discovery and taken several depositions, and arbitrated one individual claim to a decision. Defendants provided substantial data regarding class members' work and pay history, which was used to calculate damages for all Opt-ins and Class Members. The parties engaged in arms-length negotiations with the benefit of plenty of evidence on which to weigh the strengths and weaknesses of the case, and with data necessary to calculate damages. This factor supports the finding that the Settlement is fair and reasonable.

### 6.   The experienced views of counsel

Class Counsel have extensive experience in nationwide wage and hour litigation. Counsel for all parties agrees that the settlement is fundamentally fair, adequate, and reasonable. This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of the Plaintiffs and Defendant, facilitated by a Magistrate Judge Spero, after thorough factual and legal investigation.

### 7.   The views of class members

This factor is best addressed following the distribution of the Notice, once the Class Members have received information about the settlement.

### D.   The Court should approve the PAGA settlement

Court approval is required for a PAGA settlement. Cal. Lab. Code § 2699(l). While there is no definitive standard for approval of a PAGA settlement, district courts often look to whether the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F.Supp.3d 1074, 1077 (C.D. Cal. 2017). Here, PAGA penalties were calculated as part of Class Counsel's global damage calculation and discounted to reflect the risk of loss and the discretionary nature of these penalties; the weighting was informed by confidential discussions during the settlement conference with Magistrate Spero. 25% of the PAGA allocation will be distributed to the workers,

-20-

and 75% will be distributed to the LWDA.

### E.  The Court should approve the notice form

The Court must also direct "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23©(2). Here, the Settlement Agreement provides for the settlement administrator to mail notice to all potential class members. (Agreement, Ex. B.) The Agreement also provides that, if a notice is returned, the Settlement Administrator will perform a skip trace and take any other reasonable steps ensure the notice is received. (Agreement § II.H.) This procedure has been found to satisfy the Rule 23 notice requirements. *Ontiveros v. Zamora*, 2014 WL 3057506, at *11 (E.D. Cal. Jul 7, 2014). The notice forms "clearly identif[y] the options available to putative class members . . . and comprehensively explain the nature and mechanics of the settlement." *Id.* Accordingly, Plaintiffs request that the Court approve the notice distribution procedures and the forms provided with the Settlement Agreement.

### F.  The Court should approve the requested attorneys' fees and costs, administration costs, and enhancement awards

In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund recovery is 20 to 33.3 percent, with 25 percent considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "[I]n most common fund cases, the award exceeds that benchmark." *Knight*, 2009 WL 248367, at *3. California courts routinely approve fee awards in common fund cases at or above 30%. *Barbosa*, 297 F.R.D. at 450 (approving fee award of 33%, and collecting nine recent wage and hour cases approving fee awards of 30-33.3%). Plaintiffs will provide detailed briefing on their request for attorneys' fees in a separate motion. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). Class Counsel seeks attorneys' fees at the benchmark amount of 25%, pursuant to the Parties' Settlement Agreement, and provide an initial summary of this analysis to facilitate approval.

#### 1.  The percentage-of-the-benefit method is warranted in this case.

The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created.

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016). In group litigation, many class members benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." *Id.* Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See, e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Trial courts have the discretion to conduct a lodestar cross-check on a percentage fee, but also retain the discretion to forego a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee. *Laffitte*, 1 Cal. 5th at 506; *see also Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 30 (2000). A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point. *See, e.g., Glass v. UBS Financial Services, Inc.,* 2007 WL 221862 at *16 (N.D. Cal. 2007). To date, Class Counsel has spent approximately 2,000 hours on this case across all timekeepers, and has incurred fees of over $700,000. (Brome Decl. ¶ 8.)

**2. The percentage requested by class counsel is fair and reasonable.**

While the Ninth Circuit endorsed a benchmark of 25 percent, *Powers*, 229 F.3d at 1256, the actual percentage of fees awarded varies depending on the facts of each case, and common fund cases often make an award that exceeds the 25 percent benchmark. *Knight*, 2009 WL 248367 at *3. Courts within this district regularly award common fund attorneys' fees above the 25% benchmark in wage and hour cases. *E.g.*, *Burden v. SelectQuote Ins. Services*, 2013 WL 3988771, at **4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of common fund in attorneys' fees in an overtime misclassification case). Courts consider several factors to determine whether to depart from this benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Six Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301 (9th Cir.1990). Here, these factors support an award of fees at the 25% benchmark.

a. *The Result Obtained for the Class and Similar Awards*

-22-

The result obtained for the class is a significant factor to be considered by the Court in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"). Even a limited comparison to other actions for unpaid overtime highlights the success achieved here. *See, e.g.*, *Deaver*, 2015 WL 8526982, at **7, 11 (approving 33% of the fund in attorneys' fees based on "very favorable" results where the total settlement fund equaled "10.7 percent of the total potential liability exposure, before any deductions for fees, costs, or incentive awards.") Here, the total settlement fund equals approximately 72.5% of the realistic value of the claims.

b.   *Class counsel's experience and skill and complexity of issues*

This case involved overlapping issues of overtime exemptions under state and federal law, and facts particular to the inside sales industry and startup employers. Counsel's experience in vigorously litigating class/collective wage and hour actions, plus their experience with this industry (Nichols Kaster previously represented ISRs working for a company called Zocdoc, and Velton Zegelman previously represented Revel ISRs in *Chatfield*) were essential in obtaining this favorable and efficient result. Counsel litigated the case efficiently, negotiating an agreement with Defendant to stipulate to conditional certification, and taking sufficient discovery to position the case for favorable settlement without delaying resolution on drawn out litigation. These factors favor approval. *See Adoma v. University of Phoenix, Inc*., 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) ("[T]he court believes that an award of 29% of the common fund . . . is appropriate. It is important that labor and employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts.").

c.   *Risk of litigation and contingent fees*

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822, at *13 (C.D. Cal. Jul. 14, 2014). The contingent nature of the work performed by class counsel and the risk taken in advancing costs, also weigh in favor of determining a higher percentage fee. *See Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 580

-23-

1   (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are

2   performed. The contingent fee compensates the lawyer not only for the legal services he renders

3   but for the loan of those services."). Plaintiffs' counsel handled this case on a contingency basis.

4   (Brome Decl. ¶ 8.) Plaintiffs' Counsel did not receive payment for the bulk their time spent

5   litigating the case, nor did they receive reimbursement for most out of pocket costs during the

6   litigation. (*Id.*) Plaintiffs' Counsel alone undertook the financial risk of unsuccessful litigation.

7   (*Id.*) This factor favors approval.

8                               d.      *Reaction of the Class*

9           This factor is best addressed following the distribution of the Notice, once the Class

10  Members have had an opportunity to review and join the settlement.

11          **3.   The Court should approve costs of up to $40,000**

12          Plaintiffs' Counsel also requests approval of up to $40,000 in costs. Payment of these costs

13  is already factored into the allocation. Plaintiffs' Counsel has already incurred a total of

14  $41,859.24 in costs during this litigation, which it advanced on behalf of Plaintiffs. (Brome Decl.

15  ¶ 9.) This amount has been partially reimbursed by payments from the individual settlements

16  reached to date; Counsel will provide a breakdown of costs in conjunction with the motion for

17  fees and costs. Plaintiffs' Counsel will likely incur additional costs in finalizing the settlement.

18  Plaintiffs' Counsel will provide details of these costs in subsequent briefing. Plaintiffs' Counsel

19  therefore requests, and Defendant does not oppose, reimbursement of up to $40,000 in costs. To

20  the extent total unreimbursed costs are less than $40,000, any unexpended costs will be included

21  in the settlement allocations for Accepting Plaintiffs. This amount is also appropriate because

22  Plaintiffs' Counsel's private agreements with their clients (the Opt-in Plaintiffs) provide for

23  reimbursements of litigation costs in addition to payment of attorneys' fees. (*Id.*) The Court

24  should approve reimbursement of costs.

25          **4.   The Court should approve costs of administration up to $7,500**

26          Plaintiffs request that the Court approve Rust Consulting, Inc. as the Claims Administrator,

27  and approve payment of up to $7,500 for costs of administration. This amount is reasonable in

28  light of the total settlement value. *Deaver*, 2015 WL 8526982, at *15 (approving $20,000 in

                                              -24-

administration costs out of $500,000 wage and hour settlement); *Lusby*, 2015 WL 1501095, at *5 (approving "$40,000 in administration costs, or approximately 5.3% of the Gross Settlement Amount.") Here, the requested $7,500 represents less than half of 1% of total amount.

### 5. The Court should approve Named Plaintiff service awards

The Named Plaintiffs brought this action on behalf of a group of workers so that all of Chevron's consultant site managers could benefit. They were actively involved in the litigation, providing information and assistance to counsel. (Brome Decl. 10.) The two initial Named Plaintiffs were each deposed for a full day; Named Plaintiff Dyer was not deposed. (*Id.*) The two initial Named Plaintiffs also provided personal tax information as part of discovery, which enabled other Plaintiffs to avoid producing taxes despite Defendants' request. (*Id., see* ECF Nos. 213, 204.) All Named Plaintiffs responded to multiple rounds of written discovery. (Brome Decl. 10.) The Named Plaintiffs took on this responsibility despite the risks of possible stigma and reputational harm. *Deaver*, 2015 WL 8526982, at *15 (enhancement award of $7,500 "is particularly appropriate in this wage and hour class action, where Plaintiff undertook a significant 'reputational risk' in bringing this action against her former employer."). All these facts support awarding incentive awards to the Named Plaintiffs. *See Staton*, 327 F.3d at 977. "In this district, a $5,000 payment is presumptively reasonable." *Deaver*, 2015 WL 8526982, at *15 (collecting cases). Here, Plaintiffs seek an award of $5,000—the presumptively reasonable amount—for Plaintiff Dyer and an award of $25,000 for Plaintiffs McQueen and O'Neal. If approved, these awards would amount to 1.7% of the total settlement amount. In other words, the awards "will not significantly reduce the amount of settlement funds available to the rest of the class." *Lusby*, 2015 WL 1501095, at *5 (approving a total of $30,000 in enhancement awards out of a $750,000 settlement, or 4% of the total.).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant preliminary approval and order the distribution of notice so that Class and Collective Members can learn about the settlement, and ultimately receive compensation for their claims.

1    Dated:   February 8, 2019                    **NICHOLS KASTER, LLP**

2                                        By:     s/Daniel S. Brome
3                                                Matthew C. Helland
                                                 Daniel S. Brome
4                                                Attorneys for Plaintiff and Others Similarly
                                                 Situated
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL                    Case No. 4:16-cv-02089-JSW